**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

## SUCV2005-01190
### Peguero v American Express Company Inc et al

| **File Date** | 03/28/2005 | **Status** | Disposed: transfered to other court (dtrans) | | |
|---|---|---|---|---|---|
| **Status Date** | 05/16/2005 | **Session** | D - Civil D, 3 Pemberton Square, Boston | | |
| **Origin** | 1 | **Case Type** | A02 - Goods sold/delivered under contract | | |
| **Lead Case** | | **Track** | F | | |

| **Service** | 06/26/2005 | **Answer** | 08/25/2005 | **Rule12/19/20** | 08/25/2005 |
|---|---|---|---|---|---|
| **Rule 15** | 08/25/2005 | **Discovery** | 01/22/2006 | **Rule 56** | 02/21/2006 |
| **Final PTC** | 03/23/2006 | **Disposition** | 05/22/2006 | **Jury Trial** | Yes |

### PARTIES

| | |
|---|---|
| **Plaintiff**<br>Altagracia J Peguero<br>Active 03/28/2005 | **Private Counsel 551298**<br>Kevin Donius<br>Corcoran, Fitzgerald & Hennessy,<br>500 Granite Street<br>Milton, MA 02186<br>Phone: 617-696-5700<br>Fax: 617-696-6704<br>Active 03/28/2005 Notify |
| **Defendant**<br>American Express Company Inc<br>Served: 04/26/2005<br>Served (answr pending) 05/06/2005 | **Private Counsel 568194**<br>John F Farraher Jr<br>Greenberg Traurig<br>1 International Place<br>3rd floor<br>Boston, MA 02110-<br>Phone: 617-310-6000<br>Fax: 617-310-6001<br>Active 05/16/2005 Notify |
| **Defendant**<br>Sklover Group Inc<br>Served: 04/21/2005<br>Served (answr pending) 05/06/2005 | **Private Counsel 641330**<br>Allison O'Neil<br>Craig & Macauley<br>600 Atlantic Avenue<br>Federal Reserve Plaza<br>Boston, MA 02210<br>Phone: 617-367-9500<br>Fax: 617-742-1788<br>Active 05/16/2005 Notify |
| **Defendant**<br>Federal Insurance Company<br>Served: 04/15/2005<br>Served (answr pending) 05/09/2005 | **Private Counsel 550156**<br>Mark W Corner<br>Riemer & Braunstein<br>3 Center Plaza<br>Boston, MA 02108<br>Phone: 617-523-9000<br>Fax: 617-880-3456<br>Active 05/16/2005 Notify |

### ENTRIES

MAS-20030912
guen

Case 1:05-cv-10995-WGY    Document 6    Filed 05/27/2005    Page 2 of 35

**Commonwealth of Massachusetts**
**SUFFOLK SUPERIOR COURT**
**Case Summary**
**Civil Docket**

05/16/2005
09:35 AM

## SUCV2005-01190
### Peguero v American Express Company Inc et al

| Date | Paper | Text |
|------|-------|------|
| 03/28/2005 | 1.0 | Complaint & jury demand on complaint (all issues) |
| 03/28/2005 | | Origin 1, Type A02, Track F. |
| 03/28/2005 | 2.0 | Civil action cover sheet filed |
| 04/19/2005 | 3.0 | Amended complaint of Altagracia J Peguero (jury reqstd) |
| 05/06/2005 | 4.0 | SERVICE RETURNED: Sklover Group Inc(Defendant) (via U.S. Mail) |
| 05/06/2005 | 5.0 | SERVICE RETURNED: American Express Company Inc(Defendant) (In hand to G. Brown) |
| 05/09/2005 | 6.0 | Affidavit & Return Receipt Returned re: (Proof of Service) re: Federal Insurance Company(Defendant) (Certified Mail 4/19/05) |
| 05/13/2005 | | Certified copy of petition for removal to U. S. Dist. Court of Defts. American Express Company, Inc., The Sklover Group, Inc., and Federal Insurance Company U. D. Dist.#(05-10995RCL). |
| 05/16/2005 | | Case REMOVED this date to US District Court of Massachusetts |

**EVENTS**

I HEREBY ATTEST AND CERTIFY ON

<u>MAY 16, 2005</u>  , THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK

COMMONWEALTH OF MASSACHUSETTS
MASSACHUSETTS TRIAL COURT

SUFFOLK, ss.                    SUFFOLK SUPERIOR COURT
                                CIVIL ACTION NO. 05-1190D

_____
ALTAGRACIA J. PEGUERO,        )
        Plaintiff,            )
                              )
        v.                    )
                              )    **COMPLAINT AND**
AMERICAN EXPRESS COMPANY,     )    **JURY DEMAND**
INC., THE SKLOVER GROUP, INC. )
and  FEDERAL INSURANCE        )
COMPANY,                      )
        Defendants.           )
_____)

## I.    **PARTIES**

1.  The Plaintiff, Altagracia J. Peguero, is an individual

    who at all times material hereto has resided at 1

    Shandon Road, Apartment 215, Dorchester,

    Massachusetts.

2.  The Defendant, American Express Company ("American

    Express"), is a corporation duly organized and

    existing under the laws of the State of New York,

    which has at all times material hereto maintained its

    principal place of business at 200 Vesey Street, New

    York, New York.  At all times material hereto,

    American Express has conducted business in the

    Commonwealth of Massachusetts.

3.    The Defendant, The Sklover Group, Inc. ("Sklover"), is
      a corporation duly organized and existing under the
      laws of the State of New York,  which has at all times
      material hereto maintained its principal place of
      business at 400 Post Avenue, Suite 103, Westbury, New
      York.  At all times material hereto, The Sklover Group
      has conducted business in the Commonwealth of
      Massachusetts.

4.    The Defendant, Federal Insurance Company ("Federal
      Insurance"), is a corporation duly organized and
      existing, upon information and belief, under the laws
      of the State of New Jersey, which has at all times
      material hereto maintained its principal place of
      business at 15 Mountain View Road, Warren, New Jersey.
      At all times material hereto, Federal Insurance
      Company has conducted business in the Commonwealth of
      Massachusetts.

                    GENERAL FACTUAL ALLEGATIONS

5.    American Express, Sklover and Federal Insurance
      (collectively, "the Defendants") devised a scheme
      pursuant to which American Express and Sklover would
      market a so-called Accident Disability Policy (the
      "Policy"), underwritten by Federal Insurance, to

                                2

American Express customers.   Upon information and belief, Sklover as an insurance broker arranged this joint undertaking.

6.   The Policy, arranged by Sklover, marketed by the Defendants, and underwritten by Federal Insurance, provides coverage, as interpreted by the Defendants, so minimal as to be illusory and unconscionable.

7.   As part of the scheme devised by the Defendants, the Policy was to be advertised and marketed in a manner intended to deceive customers regarding the coverage provided.

8.   In or around August 2002, the Plaintiff received solicitations and promotional materials by mail from American Express regarding the Policy.

9.   The solicitations and promotional materials the Plaintiff received contained misrepresentations and were misleading, unfair, and deceptive in that they falsely led the Plaintiff to believe she would be entitled to a payment of $1.5 Million dollars if she were to become disabled.

10.   The solicitations and promotional materials were false, misleading, unfair and deceptive, in violation

3

of M.G.L. c.93A and M.G.L. c.175, §110E, because,

among other things they:

a)    utilized a misleading policy name;

b)    emphasized in oversized, bold letters "Financial
      Security" and stated "You're covered with up to
      $1.5 Million if an accident leaves you
      permanently disabled";

c)    stated, without qualification or further
      definition, that "This plan will pay you a $1.5
      Million lump sum benefit in the event a
      catastrophic accident leaves you totally and
      permanently disabled, and unable to work";

d)    minimized and obscured exceptions, reductions,
      and the limitations of the policy by listing them
      in small print on the back of the solicitation;

e)    failed to provide a conspicuous, unambiguous
      definition of disability; and

f)    promoted for sale an unconscionable insurance
      policy with illusory coverage of no real economic
      value.

11.   In reliance upon the false, misleading, unfair and

      deceptive representations contained in the

      solicitations and promotional materials, the Plaintiff

      purchased the Policy and paid the premiums therefor.

12.   The Plaintiff was never provided a plan summary or the

      Accident Disability Policy by the Defendants.

4

13. On December 25, 2002, the Plaintiff became permanently and totally disabled when her right dominant arm was amputated in a motor vehicle rollover accident.

14. Following her accident, the Plaintiff applied to Federal Insurance for the total disability benefits payable under the Policy.

15. In response to her application, Federal Insurance informed the Plaintiff that she was entitled to $500.00 under the Policy and that under the Policy she would not be deemed "permanently and totally disabled" unless she had lost the use of one hand and one foot, both hands, sight in both eyes, hearing in both ears, or the ability to speak.

16. Had the Plaintiff been aware of this definition of total and permanent disability, she would not have purchased the Policy.

17. On June 8, 2004, the Plaintiff's attorney served the Defendants by certified mail with a Demand for Relief Pursuant to Massachusetts General Laws Chapter 93A, §§2 and 9, (the "First Demand Letter"). A copy of the First Demand Letter dated June 8, 2004 is attached as Exhibit A.

5

18. American Express made no written offer of settlement in response to the First Demand Letter.

19. Sklover made no written offer of settlement in response to the First Demand Letter.

20. Plaintiff's attorney granted Federal Insurance an extension to respond to the First Demand Letter until August 4, 2004.

21. On August 4, 2004, Federal Insurance responded to the First Demand Letter, which response contained no offer of settlement. A copy of Federal Insurance's August 4, 2004 response letter is attached as Exhibit B.

22. On November 10, 2004, the Plaintiff's attorney served American Express by certified mail with a Second Demand for Relief Pursuant to Massachusetts General Laws Chapter 93A §§2 and 9 (the "Second Demand Letter") by certified mail. A copy of the Second Demand Letter is attached as Exhibit C.

23. American Express made no written offer of settlement in response to the Second Demand Letter.

6

## **CAUSES OF ACTION**

FIRST CAUSE OF ACTION
(Against American Express, Federal Insurance
and Sklover for Fraud/Deceit)

24.  The Plaintiff re-alleges and incorporates herein by

reference the factual allegations contained in

Paragraphs one through twenty-three above.

25.  The Defendants knowingly misrepresented the provisions

of the Policy to the Plaintiff by, among other things,

sending her solicitations and promotional materials

that:

a)  utilized a misleading policy name;

b)  emphasized in oversized, bold letters "Financial
Security" and stated "You're covered with up to
$1.5 Million if an accident leaves you
permanently disabled";

c)  stated, without qualification or further
definition, that "This plan will pay you a $1.5
Million lump sum benefit in the event a
catastrophic accident leaves you totally and
permanently disabled, and unable to work";

d)  minimized and obscured exceptions, reductions,
and the limitations of the policy by listing them
in small print on the back of the solicitation;

e)  failed to provide a conspicuous, unambiguous
definition of disability; and

f)  promoted for sale an unconscionable insurance
policy with illusory coverage of no real economic
value.

7

26. The Defendants knowingly misrepresented the provision of the Policy to the Plaintiff for the purpose of inducing her to purchase it.

27. In reasonable reliance upon the Defendants' misrepresentations of the Policy provisions, the Plaintiff purchased the Policy.

28. As a direct and proximate result of her reliance upon the Defendants' misrepresentations, the Plaintiff did not purchase other disability insurance which would have provided benefits to her when she became disabled by the loss of her arm.

29. As a direct and proximate result of her reliance upon the Defendants' misrepresentations, the Plaintiff paid premiums for illusory insurance coverage.

WHEREFORE, the Plaintiff, Altagracia J. Peguero, demands judgment against the Defendants, American Express Company, Federal Insurance Company, and The Sklover Group, Inc. in an amount to be determined by a jury at trial, plus, costs, interest, and all other relief the Court deems just and appropriate.

## SECOND CAUSE OF ACTION

(Against American Express, Federal Insurance and Sklover
For Violation of M.G.L. c.175, §110E)

8

30. The Plaintiff re-alleges and incorporates herein by reference the factual allegations contained in paragraph one through twenty-three above.

31. By knowingly misrepresenting the provisions of the Policy as set forth above, and by minimizing, obscuring, and rendering ambiguous the definitions of disability and the amounts payable under the Policy in its advertisements, the Defendants violated M.G.L. c.175, §110E, and the regulations promulgated thereunder.

32. As a consequence of the Defendants' breach of M.G.L. c.175, §110E, pursuant to that statute, the Plaintiff is entitled to $1.5 Million, the amount she reasonably anticipated she would have recovered had she not been deceived, plus reasonable costs and attorney fees.

    WHEREFORE, the Plaintiff, Altagracia J. Peguero, demands judgment against the Defendants, American Express Company, Federal Insurance Company, and The Sklover Group, Inc. in an amount to be determined by a jury at trial, plus costs, interest, attorney fees and all other relief the Court deems just and appropriate.

### THIRD CAUSE OF ACTION

(Against American Express, Federal Insurance and Sklover
For Violation of M.G.L. c.93A, §§2 and 9)

9

33.  The Plaintiff re-alleges and incorporates herein by
     reference the factual allegations contained in
     paragraph one through twenty-three above.

34.  By knowingly misrepresenting the Policy provisions as
     set forth above and by minimizing, obscuring, and
     rendering ambiguous the definition of disability and
     the amounts payable under the Policy, the Defendants
     falsely, deceptively, and unfairly advertised the
     Policy in violation of M.G.L. c.93A, §§ 2 and 9, and
     the regulations promulgated thereunder.

35.  As set forth above, in Paragraphs 17 through 23, the
     Defendants were served with proper and legally
     sufficient demands for relief under M.G.L. c.93A.

36.  The Defendants failed to make timely, reasonable,
     written offers of settlement in response to the
     demands for relief.

37.  By virtue of the Defendants' breach of M.G.L. c.93A,
     §§2 and 9, the Plaintiff is entitled compensatory
     damages, treble damages, attorney fees, costs,
     interest, and such other relief as the Court deems
     just and appropriate.

     WHEREFORE, the Plaintiff, Altagracia J. Peguero,
demands judgment against the Defendants, American Express

10

Company, Federal Insurance Company, and The Sklover Group, Inc. in an amount to be determined by a jury at trial, plus costs, interest, treble damages, attorney fees and all other relief the Court deems just and appropriate.

## FOURTH CAUSE OF ACTION

(Against American Express, Federal Insurance and Sklover For Breach of Contract)

38. The Plaintiff re-alleges and incorporates herein by reference the factual allegations contained in paragraphs one through twenty-three above.

39. Pursuant to the contract for insurance entered into between American Express, Federal Insurance, Sklover, and the Plaintiff, the Plaintiff was entitled to a payment of a $1.5 Million lump sum if she became permanently and totally disabled.

40. The Plaintiff became disabled on or about December 25, 2002.

41. The Defendants breached the contract between them and the Plaintiff by refusing to pay her the $1.5 Million lump sum benefit after she became disabled.

WHEREFORE, the Plaintiff, Altagracia J. Peguero, demands judgment against the Defendants, American Express Company, Federal Insurance Company, and The Sklover Group, Inc. in an amount to be determined by a jury at trial,

11

plus, costs, interest, attorney fees, and all other relief
the Court deems just and appropriate.

## FIFTH CAUSE OF ACTION

(Against American Express, Federal Insurance and Sklover
For Promissory Estoppel)

42. The Plaintiff re-alleges and incorporates herein by
reference the factual allegations contained in
paragraphs one through twenty-three above.

43. The Defendants knowingly misrepresented the Policy
provisions as set forth above.

44. In reasonable reliance upon the Defendants'
representations, the Plaintiff purchased the Policy
and was led to believe she would be entitled to $1.5
Million under the Policy if she became disabled.

45. In reasonable reliance upon her belief that she had
purchased insurance which would cover her if she were
to become disabled, the Plaintiff did not purchase
other disability insurance.

46. The Plaintiff became disabled on or about December 25,
2002.

47. Having induced the Plaintiff to purchase the Policy
with their misrepresentations, the Defendants are
estopped from denying that the Plaintiff was entitled

12

to $1.5 Million under the Policy when she became
disabled.

WHEREFORE, the Plaintiff, Altagracia J. Peguero,
demands judgment against the Defendants, American Express
Company, Federal Insurance Company, and The Sklover Group,
Inc. in an amount to be determined by a jury at trial,
plus, costs, interest, attorney fees, and all other relief
the Court deems just and appropriate.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,
THE PLAINTIFF,
By his Attorney,

Kevin Donius, Esquire
Corcoran, FitzGerald
& Hennessy
500 Granite Avenue
Milton, MA  02186
TEL  (617) 696-5700
FAX  (617) 696-6704
BBO#:  551298

Date:   March 24, 2005

I HEREBY ATTEST AND CERTIFY ON

MAY 16, 2005 , THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK

13

EX A

## CORCORAN, FITZGERALD & HENNESSY, LLC
### COUNSELORS AT LAW
### 500 GRANITE AVENUE
### MILTON, MASSACHUSETTS 02186
### (617) 696-5700
### FAX: (617) 696-6704

TIMOTHY M. CORCORAN, P.C.
DAVID M. FITZGERALD
GARY CASHAVELLY
ROBERT M. HYNES
KEVIN DONIUS

BRIAN J. LENFEST
SETH J. ROBBINS
MARINA M. TRAMONTOZZI
PAUL F. DEGNAN

OF COUNSEL
DAVID C. CAMPBELL
PAUL A. KELLEY

June 8, 2004

**VIA CERTIFIED MAIL R/R/R**
**NO. 7003 1680 0006 6025 8462**

Kenneth I. Chenault, President
American Express Company
200 Vesey Street
New York, NY  10285

**VIA CERTIFIED MAIL R/R/R**
**NO. 7003 1680 0006 6025 8561**

Andrew Sklover, President
The Sklover Group, Inc.
400 Post Avenue, Suite 103
Westbury, NY  11590-2226

**VIA CERTIFIED MAIL R/R/R**
**NO. 7003 1680 0006 6025 8578**

John D. Finnegan, Chairman
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ  07059

> RE:  Demand for Relief Pursuant to Massachusetts
> General Laws Chapter 93A §§ 2 and 9

Dear Sirs:

Please be advised that this law firm represents Altagracia
Pequero of 1 Shandon Road, Apartment 215, Dorchester,
Massachusetts in connection with her claims against American
Express Company ("American Express"), The Sklover Group, Inc.
("Sklover"), and Federal Insurance Co. ("Federal Insurance")
(collectively, "the Defendants"), for damages for violation of
Massachusetts General Laws Chapter 93A (the "Consumer Protection
Act") arising out of the false, misleading, unfair and deceptive
marketing and sales of the so-called "Accidental Disability Plan"
arranged by Sklover, marketed by American Express, and
underwritten by Federal Insurance.   Please be advised that this
letter constitutes a formal demand under the Consumer Protection
Act on behalf of Ms. Pequero and a class of similarly situated
and injured consumers for compensation for damages sustained as a

direct and proximate result of the Defendants' unfair and
deceptive practices. Under Massachusetts law, the failure to
respond to this demand for relief with a reasonable, written
offer of settlement within 30 days may entitle Ms. Pequero to,
among other forms of relief, treble damages. Please govern
yourself accordingly.

## I. Background

Ms. Pequero is 42 years old (D.O.B. 6/20/61) and the single
mother of two teenagers. Born and raised in the Dominican
Republic, Ms. Pequero was there trained and licensed in
dentistry. In order to provide a better future for herself and
her children and to seek greater financial security, Ms. Pequero
and her children came to America. Despite her training and
experience as a dentist in the Dominican Republic, Ms. Pequero
was not licensed and could not practice as a dentist in the
United States. She worked for several years cleaning office
buildings before securing a position as a dental assistant. In
2002, by working six days a week and 228 hours of overtime, Ms.
Pequero earned $35,275.54.

As a single mother, Ms. Pequero was concerned about the financial
security of her family if she became disabled. She wanted to
purchase disability insurance that would provide financial
support for her family if she became unable to work.
Accordingly, in response to a solicitation from American Express
and in reliance upon representations regarding financial security
and the promise of the payment of $1.5 million in the event she
became permanently disabled, Ms. Pequero purchased the
Defendants' Accidental Disability Policy. In reliance upon her
belief that the disability policy she purchased would provide her
and her family with financial security, Ms. Pequero did not
purchase additional disability insurance.

On December 25, 2002, Ms. Pequero became permanently and totally
disabled when her right arm was amputated in a motor vehicle
rollover accident. Ms. Pequero, who was right hand dominant and
whose primary language is Spanish, lost not only her arm and her
career, but her ability to provide any economic support for her
family. Due to the loss of her arm, Ms. Pequero can never return
to work as a dentist or dental assistant. Given her limited
ability to speak English, the only other types of jobs Ms.
Pequero could reasonably be expected to obtain involve manual
labor, such as office cleaning, from which the loss of her arm
precludes her. In recognition of her inability to perform any
substantial form of gainful employment, Ms. Pequero has been
awarded Social Security Disability Benefits. A Vocational
Assessment report of Ms. Pequero is attached as Exhibit A.

Page Three of Six
June 8, 2004

Devastated by the loss of her arm and the loss of her ability to
work, Ms. Pequero was initially comforted by the fact that she
had had the foresight to purchase disability insurance.
Regrettably, to her disbelief, Ms. Pequero learned that Federal
Insurance would agree to pay her only $500.00 for the loss of her
arm and that it would not deem her permanently and totally
disabled unless she had lost the use of one hand and one foot,
both hands and both feet, sight in both eyes, hearing in both
ears, or the ability to speak. This was the first time Ms.
Pequero ever learned about the severe limitations on when claims
would be paid and she knew that she had been duped. Had Ms.
Pequero believed the insurance provided such limited, illusory
coverage, she would not have purchased the insurance and she
would have purchased other insurance which would in fact have
provided some financial protection for her.

That Ms. Pequero was unaware of the extraordinarily limited
circumstances in which she would be paid under the policy is not
at all surprising. To the contrary, given the unfair and
deceptive manner in which the policy was advertised, marketed and
sold, as set forth below, it is clear that the Defendants
intended to deceive Ms. Pequero and consumers like her regarding
the protection afforded by the coverage. And, given the
restricted definition of total disability, it is equally clear
that any one informed of such definition would have no interest
in purchasing the policy. Accordingly, it is evident that
deception was the cornerstone of the Defendants' marketing
strategy.

## II. Violations of The Consumer Protection Act

Under the Consumer Protection Act a material misrepresentation or
omission which is likely to mislead constitutes actionable
deception. Moreover, pursuant to M.G.L. c.175, §110E, which sets
forth the standards for disclosure of contents and for
advertising of accident and sickness insurance . . .

(1) Words, phrases or illustrations shall not be used in a
manner which misleads or has the capacity and tendency to
deceive as to the extent of any policy benefit payable,
loss covered or premium payable. An advertisement
relating to any policy benefit payable, loss covered or
premium payable shall be sufficiently complete and clear
as to avoid deception or the capacity and tendency to
deceive.

Page Four of Six
June 8, 2004

    (2)   When an advertisement refers to any dollar amount, period
        of time for which any benefit is payable, cost of policy,
        or specific policy benefit or the loss for which such
        benefit is payable, it shall also disclose those
        exceptions, reductions and limitations affecting the
        basic provisions of the policy without which the
        advertisement would have the capacity and tendency to
        mislead or deceive.

    (3)   All information required to be disclosed shall be set out
        conspicuously and in close conjunction with the
        statements to which such information relates or under
        appropriate captions of such prominence that it shall not
        be minimized, rendered obscure or presented in an
        ambiguous fashion or intermingled with the context of the
        advertisements so as to be confusing or misleading. . . .

M.G.L. c.175, §110E further provides that in actions for
violations of the applicable standards "[t]he measure of damages
. . . shall be the amount the person damaged could reasonably
have anticipated he would have recovered had the advertising or
the policy provisions not been contrary to the regulations, plus
reasonable costs and attorney's fees."

The Defendants have violated the Consumer Protection Act and
M.G.L. c. 175, §110E by minimizing, obscuring, and rendering
ambiguous the definition of disability, by falsely, deceptively,
and unfairly advertising and marketing its policy and by
intentionally and/or negligently misleading Ms. Pequero and other
consumers to believe that the policy provided them with financial
security in the amount of $1.5 million if they became disabled.

More specifically, by, among other things,

    1) the use of a misleading policy name;

    2) emphasizing in oversized, bold letters "Financial
       Security" and stating "You're covered with up to $1.5
       MILLION if an accident leaves you permanently disabled"
       and disclosing the limitations on the back of the
       solicitation in small print;

    3) failing to provide a conspicuous, unambiguous definition
       of disability;

    4) failing to provide a Plan Summary and Policy to Ms.
       Pequero and, upon information and belief, other
       Massachusetts consumers;

Page Five of Six
June 8, 2004

> 5) stating in promotional materials, without qualification
> or further definition, that "This plan will pay you a
> $1.5 million lump sum benefit in the event that a
> catastrophic accident leaves you totally and permanently
> disabled, and unable to work";
>
> 6) use of other false and misleading statements in
> promotional materials; and
>
> 7) selling an insurance policy with illusory coverage,

the Defendants unfairly and deceptively induced Ms. Pequero and
other consumers to purchase the policy and to continue to pay for
it each month. Further, any benefit to Ms. Pequero and other
consumers under the policy is so minimal as to render it
unconscionable.

### III. Demand For Relief

By virtue of the false, misleading, unfair and deceptive
promotion of the Accidental Disability Policy, Ms. Pequero and
the class of similarly situated consumers who have also purchased
the policy, have been severely harmed. Such harm includes the
loss of the amounts paid for premiums, the loss of benefits
reasonably expected to be paid, and the loss of the opportunity
to purchase disability insurance which would in fact provide
coverage in the event of disability. Accordingly, on behalf of
Ms. Pequero and the class of similarly situated and injured
consumers, demand is herby made that:

> (1) the Defendants make payment to Ms. Pequero in the
> amount of $1.5 million to fulfill her reasonable
> expectations of the coverage provided by the policy in
> question;
>
> (2) the Defendants pay interest to Ms. Pequero at the legal
> rate of twelve (12%) percent per annum on the sum
> of $1.5 million, said interest commencing on December
> 25, 2003;
>
> (3) the Defendants pay a sum to reasonably and fairly
> reimburse Massachusetts consumers for premiums
> collected under false pretenses and paid for illusory
> coverage; and
>
> (4) The Defendants pay all reasonable costs and attorney's
> fees incurred as a result of its unfair and deceptive
> practices.

Page Six of Six
June 8, 2004

If no written response accompanied by a reasonable offer of
settlement is received by me within thirty (30) days, Ms. Pequero
and the claim of similarly situated individual consumers shall
seek treble damages and all other relief as provided by
applicable law.

Very truly yours,

Kevin Donius

KD/kc

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

J. OWEN TODD
Email: jotodd@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

August 4, 2004

**VIA TELECOPY AND**
**CERTIFIED MAIL RETURN RECEIPT REQUESTED**

Kevin Donius, Esq.
Corcoran, Fitzgerald & Hennessy, LLC
500 Granite Avenue
Milton, MA 02186

              Re:    Claim of Altagracia Pequero

Dear Mr. Donius:

        This letter is the statutory response by Federal Insurance Company ("Federal") to
your Chapter 93A §§ 2 and 9 demand letter on behalf of your client, Ms. Pequero.

        Let me begin by thanking you for your courtesy in agreeing to extend the time
within which our response is due until today.

        As you indicate in your demand letter, Federal is the underwriting insurer of the
Voluntary Accident Insurance Policy No. 6475-22-11 (the "Policy"), marketed by
American Express in conjunction with HealthExtras and The Sklover Group. As the
underwriter, Federal's responsibility is to insure that members of the program are paid the
benefits to which they are entitled under the terms of the Policy. Federal believes that it
has totally fulfilled its responsibility in the case of your client, Altagracia Pequero.

        The allegations set out in your demand letter, particularly those concerning
alleged violations of Chapter 93A, are so general that it is difficult for us to respond. We
read your letter generally, however, to complain that Federal "fail[ed] to provide a Plan
Summary and Policy to Ms. Pequero," and that to the extent Federal did provide written
material, that material was misleading. To the extent your demand is premised on a
belief that Ms. Pequero did not receive a Benefit Plan Description, we believe that
allegation to be incorrect. Ms. Pequero was sent a Benefit Plan Description — which
fully disclosed the precise benefits and terms of coverage under the Policy — by mail.
The written materials which Ms. Pequero was sent set out clearly and in simple terms the

Kevin Donius, Esq.
August 4, 2004
Page 2

circumstances under which an insured is eligible to receive the $1.5 million benefit.[1] Ms.
Pequero had the opportunity to carefully review the Policy's coverage terms, and if she
was in any way unsatisfied with those terms, she could have notified Federal to cancel
coverage. Ms. Pequero never notified Federal that the coverage she purchased was
inadequate, however. Instead, she continued to pay the Policy premiums on a monthly
basis.

To the extent your demand is premised on the language and disclosures found in
other written materials received by Ms. Pequero, we are unable to respond without
reviewing the written materials you describe as misleading. Suffice it to say, however,
Federal believes the benefits are clearly and adequately described so that a member could
make an informed decision whether to continue with or leave the Program.

Given the above, Federal must respectfully disagree with your assertion that
Federal violated, in any manner, the provisions of the Massachusetts Consumer
Protection Act and therefore denies your demand for relief on behalf of your client. Your
client's injury did not, by the terms of the Benefit Plan Description, qualify for the $1.5
million benefit. Ms. Pequero has received the benefit for which she was eligible under
the Accidental Dismemberment portion of the Policy.

---

[1]    The Benefit Plan Description clearly and plainly defines "Permanent Total Disability" as follows:

Permanent Total Disability means Accidental Bodily Injuries that solely and directly cause the
Primary Insured Person's:

Loss of:

Use of One Hand and One Foot; or
Use of Both Hands or Both Feet; or
Sight of Both Eyes; or
Hearing of Both Ears; or
Speech,

which solely and directly:

1)    prevent the Primary Insured Person from engaging in any gainful occupation for which
the Primary Insured Person is qualified, by reason of education, training, experience, or
skill; and

2)    cause a condition which is medically determined by a Physician, approved by [Federal],
to be of continuous and infinite duration; and

3)    require the continuous care of a Physician, unless the Primary Insured Person has reached
his/her maximum point of recovery.

(Emphasis omitted)

Kevin Donius, Esq.
August 4, 2004
Page 3

Federal is prepared to accommodate your client by engaging in an expeditious resolution of the dispute pursuant to the mandatory arbitration provision in the Benefit Plan Description and to consider any alternative dispute resolution approach you suggest prior to the hearing before the Arbitrator(s).

Cordially,

J. Owen Todd
Counsel to Federal Insurance Company

JOT:lmb
Cc:    Linda F. Walker, Esq.
       H. Christopher Boehning, Esq.
       Timothy S. Martin, Esq.

$E \times C$

**CORCORAN, FITZGERALD & HENNESSY, LLC**
COUNSELORS AT LAW
500 GRANITE AVENUE
MILTON, MASSACHUSETTS 02186
(617) 696-5700
FAX: (617) 696-6704

TIMOTHY M. CORCORAN, P.C.
DAVID M. FITZGERALD
ROBERT M. HYNES
KEVIN DONIUS

BRIAN J. LENFEST
SETH J. ROBBINS
MARINA M. TRAMONTOZZI
PAUL F. DEGNAN

OF COUNSEL
DAVID C. CAMPBELL
PAUL A. KELLEY

November 10, 2004

**VIA CERTIFIED MAIL R/R/R**
**NO. 7004 0750 0002 6877 8102**

Kenneth I. Chenault, President
American Express Company
200 Vesey Street
New York, NY 10285-5005

> **RE: Demand for Relief Pursuant to Massachusetts**
> **General Laws Chapter 93A §§ 2 and 9**

Dear Mr. Chenault:

Please be advised that this law firm represents Altagracia
Pequero of 1 Shandon Road, Apartment 215, Dorchester,
Massachusetts in connection with her claims against American
Express Company ("American Express"), The Sklover Group, Inc.
("Sklover"), and Federal Insurance Co. ("Federal Insurance")
(collectively, "the Defendants"), for damages for violation of
Massachusetts General Laws Chapter 93A (the "Consumer Protection
Act") arising out of the false, misleading, unfair and deceptive
marketing and sales of the so-called "Accidental Disability Plan"
arranged by Sklover, marketed by American Express, and
underwritten by Federal Insurance. This same letter was sent to
you on June 8, 2004. No response was received.

Please be advised that this letter constitutes a second demand
under the Consumer Protection Act on behalf of Ms. Pequero and a
class of similarly situated and injured consumers for
compensation for damages sustained as a direct and proximate
result of the Defendants' unfair and deceptive practices. Under
Massachusetts law, the failure to respond to this demand for
relief with a reasonable, written offer of settlement within 30
days may entitle Ms. Pequero to, among other forms of relief,
treble damages. Please govern yourself accordingly.

## I. Background

Ms. Pequero is 42 years old (D.O.B. 6/20/61) and the single
mother of two teenagers.  Born and raised in the Dominican
Republic, Ms. Pequero was there trained and licensed in
dentistry.  In order to provide a better future for herself and
her children and to seek greater financial security, Ms. Pequero
and her children came to America.  Despite her training and
experience as a dentist in the Dominican Republic, Ms. Pequero
was not licensed and could not practice as a dentist in the
United States.  She worked for several years cleaning office
buildings before securing a position as a dental assistant.  In
2002, by working six days a week and 228 hours of overtime, Ms.
Pequero earned $35,275.54.

As a single mother, Ms. Pequero was concerned about the financial
security of her family if she became disabled.  She wanted to
purchase disability insurance that would provide financial
support for her family if she became unable to work.
Accordingly, in response to a solicitation from American Express
and in reliance upon representations regarding financial security
and the promise of the payment of $1.5 million in the event she
became permanently disabled, Ms. Pequero purchased the
Defendants' Accidental Disability Policy.  In reliance upon her
belief that the disability policy she purchased would provide her
and her family with financial security, Ms. Pequero did not
purchase additional disability insurance.

On December 25, 2002, Ms. Pequero became permanently and totally
disabled when her right arm was amputated in a motor vehicle
rollover accident.  Ms. Pequero, who was right hand dominant and
whose primary language is Spanish, lost not only her arm and her
career, but her ability to provide any economic support for her
family.  Due to the loss of her arm, Ms. Pequero can never return
to work as a dentist or dental assistant.  Given her limited
ability to speak English, the only other types of jobs Ms.
Pequero could reasonably be expected to obtain involve manual
labor, such as office cleaning, from which the loss of her arm
precludes her.  In recognition of her inability to perform any
substantial form of gainful employment, Ms. Pequero has been
awarded Social Security Disability Benefits.  A Vocational
Assessment report of Ms. Pequero is attached as Exhibit A.

Devastated by the loss of her arm and the loss of her ability to
work, Ms. Pequero was initially comforted by the fact that she
had had the foresight to purchase disability insurance.
Regrettably, to her disbelief, Ms. Pequero learned that Federal
Insurance would agree to pay her only $500.00 for the loss of her
arm and that it would not deem her permanently and totally
disabled unless she had lost the use of one hand and one foot,
both hands and both feet, sight in both eyes, hearing in both

Page Three of Five
November 10, 2004

ears, or the ability to speak. This was the first time Ms.
Pequero ever learned about the severe limitations on when claims
would be paid and she knew that she had been duped. Had Ms.
Pequero believed the insurance provided such limited, illusory
coverage, she would not have purchased the insurance and she
would have purchased other insurance which would in fact have
provided some financial protection for her.

That Ms. Pequero was unaware of the extraordinarily limited
circumstances in which she would be paid under the policy is not
at all surprising. To the contrary, given the unfair and
deceptive manner in which the policy was advertised, marketed and
sold, as set forth below, it is clear that the Defendants
intended to deceive Ms. Pequero and consumers like her regarding
the protection afforded by the coverage. And, given the
restricted definition of total disability, it is equally clear
that any one informed of such definition would have no interest
in purchasing the policy. Accordingly, it is evident that
deception was the cornerstone of the Defendants' marketing
strategy.

## II. <u>Violations of The Consumer Protection Act</u>

Under the Consumer Protection Act a material misrepresentation or
omission which is likely to mislead constitutes actionable
deception. Moreover, pursuant to M.G.L. c.175, §110E, which sets
forth the standards for disclosure of contents and for
advertising of accident and sickness insurance . . .

(1) Words, phrases or illustrations shall not be used in a
    manner which misleads or has the capacity and tendency to
    deceive as to the extent of any policy benefit payable,
    loss covered or premium payable. An advertisement
    relating to any policy benefit payable, loss covered or
    premium payable shall be sufficiently complete and clear
    as to avoid deception or the capacity and tendency to
    deceive.

(2) When an advertisement refers to any dollar amount, period
    of time for which any benefit is payable, cost of policy,
    or specific policy benefit or the loss for which such
    benefit is payable, it shall also disclose those
    exceptions, reductions and limitations affecting the
    basic provisions of the policy without which the
    advertisement would have the capacity and tendency to
    mislead or deceive.

(3) All information required to be disclosed shall be set out
    conspicuously and in close conjunction with the
    statements to which such information relates or under
    appropriate captions of such prominence that it <u>shall</u> not

Page Four of Five
November 10, 2004

> be minimized, rendered obscure or presented in an
> ambiguous fashion or intermingled with the context of the
> advertisements so as to be confusing or misleading. . . .

M.G.L. c.175, §110E further provides that in actions for
violations of the applicable standards "[t]he measure of damages
. . . shall be the amount the person damaged could reasonably
have anticipated he would have recovered had the advertising or
the policy provisions not been contrary to the regulations, plus
reasonable costs and attorney's fees."

The Defendants have violated the Consumer Protection Act and
M.G.L. c. 175, §110E by minimizing, obscuring, and rendering
ambiguous the definition of disability, by falsely, deceptively,
and unfairly advertising and marketing its policy and by
intentionally and/or negligently misleading Ms. Pequero and other
consumers to believe that the policy provided them with financial
security in the amount of $1.5 million if they became disabled.

More specifically, by, among other things,

1) the use of a misleading policy name;

2) emphasizing in oversized, bold letters "Financial
   Security" and stating "You're covered with up to $1.5
   MILLION if an accident leaves you permanently disabled"
   and disclosing the limitations on the back of the
   solicitation in small print;

3) failing to provide a conspicuous, unambiguous definition
   of disability;

4) failing to provide a Plan Summary and Policy to Ms.
   Pequero and, upon information and belief, other
   Massachusetts consumers;

5) stating in promotional materials, without qualification
   or further definition, that "This plan will pay you a
   $1.5 million lump sum benefit in the event that a
   catastrophic accident leaves you totally and permanently
   disabled, and unable to work";

6) use of other false and misleading statements in
   promotional materials; and

7) selling an insurance policy with illusory coverage,

the Defendants unfairly and deceptively induced Ms. Pequero and
other consumers to purchase the policy and to continue to pay for
it each month. Further, any benefit to Ms. Pequero and other
consumers under the policy is so minimal as to render it

Page Five of Five
November 10, 2004

unconscionable.

### III. Demand For Relief

By virtue of the false, misleading, unfair and deceptive
promotion of the Accidental Disability Policy, Ms. Pequero and
the class of similarly situated consumers who have also purchased
the policy, have been severely harmed.    Such harm includes the
loss of the amounts paid for premiums, the loss of benefits
reasonably expected to be paid, and the loss of the opportunity
to purchase disability insurance which would in fact provide
coverage in the event of disability. Accordingly, on behalf of
Ms. Pequero and the class of similarly situated and injured
consumers, demand is hereby made that:

   (1)  the Defendants make payment to Ms. Pequero in the
        amount of $1.5 million to fulfill her reasonable
        expectations of the coverage provided by the policy in
        question;

   (2)  the Defendants pay interest to Ms. Pequero at the legal
        rate of twelve (12%) percent per annum on the sum
        of $1.5 million, said interest commencing on December
        25, 2003;

   (3)  the Defendants pay a sum to reasonably and fairly
        reimburse Massachusetts consumers for premiums
        collected under false pretenses and paid for illusory
        coverage; and

   (4)  The Defendants pay all reasonable costs and attorney's
        fees incurred as a result of its unfair and deceptive
        practices.

If no written response accompanied by a reasonable offer of
settlement is received by me within thirty (30) days, Ms. Pequero
and the claim of similarly situated individual consumers shall
seek treble damages and all other relief as provided by
applicable law.  Unless this matter is resolved, a complaint will
be filed on or about January 15, 2005.

Very truly yours,

Kevin Donius

KD/kc

*Vocational Consulting & Evaluation*            *Paul R. Blatchford, Ed.M.*

*85 Audubon Drive   •   Chestnut Hill, MA 02467   •   617/244-5642*

March 16, 2004

Law Offices of Corcoran, Fitzgerald & Hennessey
500 Granite Avenue
Milton, MA 02186
Attention: Kevin Donius, Esquire

> Re: Altagracia J. Pequero
> 1 Shandon Road, No. 215
> Dorchester, MA 02124
> Date of Evaluation: February 11, 2004

Dear Attorney Donius:

Per your request, I have interviewed your client, Altagracia J. Pequero
reviewed medical records, and administered vocational tests for the purpose of
assessing her capacity to perform work as a result of injuries sustained on
December 25,2002

### TESTS ADMINISTERED

Slosson Intelligence Test - $R^2$
Wide Range Achievement Test - (WRAT $R^3$)
Crawford Small Parts Dexterity Test
Portable Assessment System - 1, Manual Dexterity and
 Isotonic Lifting Assessment

### DATE OF BIRTH

Joan 20, 1961 (Age  42)

## EDUCATION

Ms. Pequero was born in the Dominican Republic. She started school at the age of 6 or 7, completing her education at age 24. In 1981, she graduated Francisco Gregory Bellini High School in the Dominican Republic. She reports being an A student. Ms. Pequero attended the University off of Autonama, University of Santo Domingo from 1981 through 1986. Each year, she had one course in English. She graduated college acquiring her Dentistry Degree.

Ms. Pequero immigrated to United States in January 1993, at the age of 32. She attended Tufts University in the South End taking one class, attending for only one day and then studying from about one month. In January, she took and passed the exam to acquire state certification to work as a Dental Assistant. Her goal was to become a Dentist in United States. She had already acquired the written material and the information necessary to take the state certification exam.

## WORK HISTORY

Ms. Pequero reports that while residing in the Dominican Republic, she worked as a Dentist.

Upon immigrating to the United States in 1993, and through 1999, Ms. Pequero worked for Janotronics cleaning company out of Waltham, MA, cleaning commercial office buildings. She reports earning $9.85 per hour, working a 20-hour week. She also reports taking classes in English as a Second Language on her own through UMass Boston, Roxbury Community College, and the Red Cross. With the development of proficiency in English, she then acquired a job at Macy's in Braintree, MA working as a Sales Clerk in the Men's Department. She reports earning $7.50 per hour.

In April 2001, Ms. Pequero went to work for Dr. Carr Associates in Boston, MA as a Dental Assistant. She was paid $15 per hour, working a 40-hour week plus 6-10 hours per week of overtime. She worked Monday through Saturday from 8:30 AM until 5:30 PM. She worked with a dentist, assisting, seeing one patient every half hour.

2

On December 25, 2002 while riding as a passenger in motor vehicle, Ms. Pequero was involved an accident. She reports that she was wearing her seat belt; when the car rolled over, the window broke, and her arm was on the outside of the window, getting caught and subsequently amputated. She had surgery on December 25, 2002, reporting that additional surgery will be performed on March 15, 2004. The amputation was above-the-elbow, several inches from the shoulder.

As a result of injuries sustained, Ms. Pequero has been unable to return back to work.

## FUNCTIONAL LIMITATIONS

Lifting  -  unable to use the right upper extremity for any lifting due to amputation; able to reach and lift a gallon of milk (8-10 pounds) with left nondominant hand (8-10 lbs.), but finds that doing so repetitively tires out the arm; has difficulty holding and manipulating.

Talking  -  speaks limited English, would not be considered totally fluent, interpreter was used for clarification.

Hearing  -  presents no problems.

Sitting  -  while seated, tends to rock back and forth; presents increased shoulder pain, tries to rotate the shoulder/arm due to pain.

Climbing  -  when experiencing shoulder pain, finds climbing stairs and the jarring sensation that involves increases her pain.

Balance  -  reports occasionally off.

Breathing  -  on stress, experiences shortness of breath, reports that she was on medication for this.

3

Driving -      has not driven since the accident, believes that after her March, 2004 surgery, the prosthesis may assist her in returning back to driving.

Feeling -      experiences often on phantom numbness and tingling in the amputated arm/hand/fingers.

Reaching -    with left arm reaching up and out tires out the arm, limited movement of the right arm/stump can bring on pain.

Seeing -      presents no problems.

Standing -    presents no problems.

Walking  -    when walking, any jarring sensation can bring on pain in the shoulder, tries to protect the shoulder.

Bending  -    presents no problems.

Kneeling -    finds difficult due to balance problems, tries to avoid.

Sleeping -    4-6 hours per night on average (depends upon how she feels) awakened 2-3 times per night due to pain and nightmares.

Environmental
Conditions - Ms. Pequero reports that the cold, rain, and dampness increases the aching, stiffness, and pain and the right shoulder/stump, bringing on increased muscle spasms in the front as well as the back of her shoulder.   With increased pain, she reports becoming more "stressed out".  She reports experiencing not only phantom pain in the amputated site, but also electrical shock-like pain in the shoulder and arm.

4

## PAIN STATUS

On a scale of zero to ten, where zero is no pain and ten is severe pain, Ms. Pequero reports that she has off and on pain in the right shoulder. She has constant phantom pain down her amputated arm, where she feels pain in the missing forearm, hand, and fingers. With rotation of her right shoulder, she presents pain, with pain in the front and back of her shoulder, as well as muscle spasms in the same area. The pain can range from a 3-4 level up to a 10 level.

Ms. Pequero is 5'4" tall, and currently weighs 145 pounds, presenting a preinjury weight of 138 pounds. She has a prosthesis, however is unable to use it as it causes too much pain; she will be undergoing additional surgery in March, 2004. She reports no prior motor vehicle accidents in the Dominican Republic, no history of worker's compensation cases, nor any history of slip and fall cases.

Ms. Pequero reports experiencing headaches 2-3 times per week. Upon their onset, these last for from one-half hour up to 2-3 hours for which she takes Neurontin (the same medication that she takes for pain in her arm). She will lay down with her headaches for 1-2 hours, but has not discussed this problem with her doctor. Ms. Pequero feels that her headaches are related to stress. She reports having stomach and digestive problems brought about by the medications she is taking. She also feels that she may be developing an ulcer as result of the stress she is experiencing.

Ms. Pequero is concerned about her left nondominant arm as it fatigues easily. She also experiences occasional numbness and tingling from the fingers up into the shoulder.

Ms. Pequero was last in physical therapy in June, 2003 at Massachusetts General Hospital. She reports that it is too painful to the right shoulder to perform home stretching exercises. She takes two hot showers per day, and uses heat and ice in 20 minute intervals. She reportedly takes Neurontin 400 mg once or twice per day. She has been on Percocet and other medications, however stopped taking them due to their side effects.

5

**COVER SHEET**

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Altagracia J. Peguero | American Express Company, The Sklover Group, Inc., and Federal Insurance Company |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE (617) 696-5700<br>Kevin Donius, Corcoran, FitzGerald & Hennessy<br>500 Granite Avenue, Milton, MA 02186<br>Board of Bar Overseers number: 551298 | ATTORNEY (if known) |

**Origin code and track designation**

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A02 | Goods Sold/Delivered | ( F ) | ( X ) Yes    ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
1. Total hospital expenses ........................................................... $ ............
2. Total Doctor expenses ............................................................. $ ............
3. Total chiropractic expenses ....................................................... $ ............
4. Total physical therapy expenses .................................................. $ ............
5. Total other expenses (describe) .................................................. $ ............
   Subtotal $ ............

B. Documented lost wages and compensation to date ................................... $ ............
C. Documented property damages to date .............................................. $ ............
D. Reasonably anticipated future medical and hospital expenses ...................... $ ............
E. Reasonably anticipated lost wages ................................................ $ ............
F. Other documented items of damages (describe)
   $ ............

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

   $ ............
   TOTAL $ ............

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Defendants fraudulently marketed and sold so-called Accidental Disability Policy.
Plaintiff became disabled but was denied promised $1.5 Million payment.

TOTAL $. 1,500,000.00

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT    N/A

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record                                    DATE: 3/24/05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

I HEREBY ATTEST AND CERTIFY ON

MAY 16, 2005 , THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK.

**1**

COMMONWEALTH OF MASSACHUSETTS
MASSACHUSETTS TRIAL COURT

SUFFOLK, ss.                      SUFFOLK SUPERIOR COURT
                                  CIVIL ACTION NO. 05-1190D

```
_____
ALTAGRACIA J. PEGUERO,          )
        Plaintiff,              )
                                )
    v.                          )
                                )   COMPLAINT AND
AMERICAN EXPRESS COMPANY,       )   JURY DEMAND
INC., THE SKLOVER GROUP, INC.   )
and  FEDERAL INSURANCE          )
COMPANY,                        )
        Defendants.             )
_____)
```

## I.   PARTIES

1.   The Plaintiff, Altagracia J. Peguero, is an individual

     who at all times material hereto has resided at 1

     Shandon Road, Apartment 215, Dorchester,

     Massachusetts.

2.   The Defendant, American Express Company ("American

     Express"), is a corporation duly organized and

     existing under the laws of the State of New York,

     which has at all times material hereto maintained its

     principal place of business at 200 Vesey Street, New

     York, New York.  At all times material hereto,

     American Express has conducted business in the

     Commonwealth of Massachusetts.

3.  The Defendant, The Sklover Group, Inc. ("Sklover"), is
    a corporation duly organized and existing under the
    laws of the State of New York, which has at all times
    material hereto maintained its principal place of
    business at 400 Post Avenue, Suite 103, Westbury, New
    York. At all times material hereto, The Sklover Group
    has conducted business in the Commonwealth of
    Massachusetts.

4.  The Defendant, Federal Insurance Company ("Federal
    Insurance"), is a corporation duly organized and
    existing, upon information and belief, under the laws
    of the State of New Jersey, which has at all times
    material hereto maintained its principal place of
    business at 15 Mountain View Road, Warren, New Jersey.
    At all times material hereto, Federal Insurance
    Company has conducted business in the Commonwealth of
    Massachusetts.

### GENERAL FACTUAL ALLEGATIONS

5.  American Express, Sklover and Federal Insurance
    (collectively, "the Defendants") devised a scheme
    pursuant to which American Express and Sklover would
    market a so-called Accident Disability Policy (the
    "Policy"), underwritten by Federal Insurance, to

2

American Express customers.  Upon information and
belief, Sklover as an insurance broker arranged this
joint undertaking.

6.    The Policy, arranged by Sklover, marketed by the
Defendants, and underwritten by Federal Insurance,
provides coverage, as interpreted by the Defendants,
so minimal as to be illusory and unconscionable.

7.    As part of the scheme devised by the Defendants, the
Policy was to be advertised and marketed in a manner
intended to deceive customers regarding the coverage
provided.

8.    In or around August 2002, the Plaintiff received
solicitations and promotional materials by mail from
American Express regarding the Policy.

9.    The solicitations and promotional materials the
Plaintiff received contained misrepresentations and
were misleading, unfair, and deceptive in that they
falsely led the Plaintiff to believe she would be
entitled to a payment of $1.5 Million dollars if she
were to become disabled.

10.   The solicitations and promotional materials were
false, misleading, unfair and deceptive, in violation

3

of M.G.L. c.93A and M.G.L. c.175, §110E, because,

among other things they:

a)    utilized a misleading policy name;

b)    emphasized in oversized, bold letters "Financial
      Security" and stated "You're covered with up to
      $1.5 Million if an accident leaves you
      permanently disabled";

c)    stated, without qualification or further
      definition, that "This plan will pay you a $1.5
      Million lump sum benefit in the event a
      catastrophic accident leaves you totally and
      permanently disabled, and unable to work";

d)    minimized and obscured exceptions, reductions,
      and the limitations of the policy by listing them
      in small print on the back of the solicitation;

e)    failed to provide a conspicuous, unambiguous
      definition of disability; and

f)    promoted for sale an unconscionable insurance
      policy with illusory coverage of no real economic
      value.

11.   In reliance upon the false, misleading, unfair and

      deceptive representations contained in the

      solicitations and promotional materials, the Plaintiff

      purchased the Policy and paid the premiums therefor.

12.   The Plaintiff was never provided a plan summary or the

      Accident Disability Policy by the Defendants.

4

13.  On December 25, 2002, the Plaintiff became permanently
     and totally disabled when her right dominant arm was
     amputated in a motor vehicle rollover accident.

14.  Following her accident, the Plaintiff applied to
     Federal Insurance for the total disability benefits
     payable under the Policy.

15.  In response to her application, Federal Insurance
     informed the Plaintiff that she was entitled to
     $500.00 under the Policy and that under the Policy she
     would not be deemed "permanently and totally disabled"
     unless she had lost the use of one hand and one foot,
     both hands, sight in both eyes, hearing in both ears,
     or the ability to speak.

16.  Had the Plaintiff been aware of this definition of
     total and permanent disability, she would not have
     purchased the Policy.

17.  On June 8, 2004, the Plaintiff's attorney served the
     Defendants by certified mail with a Demand for Relief
     Pursuant to Massachusetts General Laws Chapter 93A,
     §§2 and 9, (the "First Demand Letter"). A copy of the
     First Demand Letter dated June 8, 2004 is attached as
     Exhibit A.

5

18. American Express made no written offer of settlement in response to the First Demand Letter.

19. Sklover made no written offer of settlement in response to the First Demand Letter.

20. Plaintiff's attorney granted Federal Insurance an extension to respond to the First Demand Letter until August 4, 2004.

21. On August 4, 2004, Federal Insurance responded to the First Demand Letter, which response contained no offer of settlement. A copy of Federal Insurance's August 4, 2004 response letter is attached as Exhibit B.

22. On November 10, 2004, the Plaintiff's attorney served American Express by certified mail with a Second Demand for Relief Pursuant to Massachusetts General Laws Chapter 93A §§2 and 9 (the "Second Demand Letter") by certified mail. A copy of the Second Demand Letter is attached as Exhibit C.

23. American Express made no written offer of settlement in response to the Second Demand Letter.

6

## CAUSES OF ACTION

FIRST CAUSE OF ACTION
(Against American Express, Federal Insurance
and Sklover for Fraud/Deceit)

24.  The Plaintiff re-alleges and incorporates herein by

reference the factual allegations contained in

Paragraphs one through twenty-three above.

25.  The Defendants knowingly misrepresented the provisions

of the Policy to the Plaintiff by, among other things,

sending her solicitations and promotional materials

that:

a)  utilized a misleading policy name;

b)  emphasized in oversized, bold letters "Financial
Security" and stated "You're covered with up to
$1.5 Million if an accident leaves you
permanently disabled";

c)  stated, without qualification or further
definition, that "This plan will pay you a $1.5
Million lump sum benefit in the event a
catastrophic accident leaves you totally and
permanently disabled, and unable to work";

d)  minimized and obscured exceptions, reductions,
and the limitations of the policy by listing them
in small print on the back of the solicitation;

e)  failed to provide a conspicuous, unambiguous
definition of disability; and

f)  promoted for sale an unconscionable insurance
policy with illusory coverage of no real economic
value.

7

26. The Defendants knowingly misrepresented the provision
    of the Policy to the Plaintiff for the purpose of
    inducing her to purchase it.

27. In reasonable reliance upon the Defendants'
    misrepresentations of the Policy provisions, the
    Plaintiff purchased the Policy.

28. As a direct and proximate result of her reliance upon
    the Defendants' misrepresentations, the Plaintiff did
    not purchase other disability insurance which would
    have provided benefits to her when she became disabled
    by the loss of her arm.

29. As a direct and proximate result of her reliance upon
    the Defendants' misrepresentations, the Plaintiff paid
    premiums for illusory insurance coverage.

    WHEREFORE, the Plaintiff, Altagracia J. Peguero,
demands judgment against the Defendants, American Express
Company, Federal Insurance Company, and The Sklover Group,
Inc. in an amount to be determined by a jury at trial,
plus, costs, interest, and all other relief the Court deems
just and appropriate.

## SECOND CAUSE OF ACTION

(Against American Express, Federal Insurance and Sklover
For Violation of M.G.L. c.175, §110E)

8

30.  The Plaintiff re-alleges and incorporates herein by
     reference the factual allegations contained in
     paragraph one through twenty-three above.

31.  By knowingly misrepresenting the provisions of the
     Policy as set forth above, and by minimizing,
     obscuring, and rendering ambiguous the definitions of
     disability and the amounts payable under the Policy in
     its advertisements, the Defendants violated M.G.L.
     c.175, §110E, and the regulations promulgated
     thereunder.

32.  As a consequence of the Defendants' breach of M.G.L.
     c.175, §110E, pursuant to that statute, the Plaintiff
     is entitled to $1.5 Million, the amount she reasonably
     anticipated she would have recovered had she not been
     deceived, plus reasonable costs and attorney fees.

     WHEREFORE, the Plaintiff, Altagracia J. Peguero,

demands judgment against the Defendants, American Express
Company, Federal Insurance Company, and The Sklover Group,
Inc. in an amount to be determined by a jury at trial, plus
costs, interest, attorney fees and all other relief the
Court deems just and appropriate.

## THIRD CAUSE OF ACTION

(Against American Express, Federal Insurance and Sklover
For Violation of M.G.L. c.93A, §§2 and 9)

9

33.  The Plaintiff re-alleges and incorporates herein by
     reference the factual allegations contained in
     paragraph one through twenty-three above.

34.  By knowingly misrepresenting the Policy provisions as
     set forth above and by minimizing, obscuring, and
     rendering ambiguous the definition of disability and
     the amounts payable under the Policy, the Defendants
     falsely, deceptively, and unfairly advertised the
     Policy in violation of M.G.L. c.93A, §§ 2 and 9, and
     the regulations promulgated thereunder.

35.  As set forth above, in Paragraphs 17 through 23, the
     Defendants were served with proper and legally
     sufficient demands for relief under M.G.L. c.93A.

36.  The Defendants failed to make timely, reasonable,
     written offers of settlement in response to the
     demands for relief.

37.  By virtue of the Defendants' breach of M.G.L. c.93A,
     §§2 and 9, the Plaintiff is entitled compensatory
     damages, treble damages, attorney fees, costs,
     interest, and such other relief as the Court deems
     just and appropriate.

     WHEREFORE, the Plaintiff, Altagracia J. Peguero,
demands judgment against the Defendants, American Express

10

Company, Federal Insurance Company, and The Sklover Group,

Inc. in an amount to be determined by a jury at trial, plus

costs, interest, treble damages, attorney fees and all

other relief the Court deems just and appropriate.

### FOURTH CAUSE OF ACTION

(Against American Express, Federal Insurance and Sklover
For Breach of Contract)

38. The Plaintiff re-alleges and incorporates herein by

reference the factual allegations contained in

paragraphs one through twenty-three above.

39. Pursuant to the contract for insurance entered into

between American Express, Federal Insurance, Sklover,

and the Plaintiff, the Plaintiff was entitled to a

payment of a $1.5 Million lump sum if she became

permanently and totally disabled.

40. The Plaintiff became disabled on or about December 25,

2002.

41. The Defendants breached the contract between them and

the Plaintiff by refusing to pay her the $1.5 Million

lump sum benefit after she became disabled.

WHEREFORE, the Plaintiff, Altagracia J. Peguero,

demands judgment against the Defendants, American Express

Company, Federal Insurance Company, and The Sklover Group,

Inc. in an amount to be determined by a jury at trial,

11

plus, costs, interest, attorney fees, and all other relief

the Court deems just and appropriate.

## FIFTH CAUSE OF ACTION

(Against American Express, Federal Insurance and Sklover
For Promissory Estoppel)

42. The Plaintiff re-alleges and incorporates herein by
    reference the factual allegations contained in
    paragraphs one through twenty-three above.

43. The Defendants knowingly misrepresented the Policy
    provisions as set forth above.

44. In reasonable reliance upon the Defendants'
    representations, the Plaintiff purchased the Policy
    and was led to believe she would be entitled to $1.5
    Million under the Policy if she became disabled.

45. In reasonable reliance upon her belief that she had
    purchased insurance which would cover her if she were
    to become disabled, the Plaintiff did not purchase
    other disability insurance.

46. The Plaintiff became disabled on or about December 25,
    2002.

47. Having induced the Plaintiff to purchase the Policy
    with their misrepresentations, the Defendants are
    estopped from denying that the Plaintiff was entitled

12

to $1.5 Million under the Policy when she became disabled.

WHEREFORE, the Plaintiff, Altagracia J. Peguero, demands judgment against the Defendants, American Express Company, Federal Insurance Company, and The Sklover Group, Inc. in an amount to be determined by a jury at trial, plus, costs, interest, attorney fees, and all other relief the Court deems just and appropriate.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted,
THE PLAINTIFF,
By his Attorney,

Kevin Donius, Esquire
Corcoran, FitzGerald
& Hennessy
500 Granite Avenue
Milton, MA  02186
TEL  (617) 696-5700
FAX  (617) 696-6704
BBO#:  551298

Date:    March 24, 2005

I HEREBY ATTEST AND CERTIFY ON

__MAY 16, 2005__, THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY:

ASSISTANT CLERK

13

EX A

# CORCORAN, FITZGERALD & HENNESSY, LLC
### COUNSELORS AT LAW
### 500 GRANITE AVENUE
### MILTON, MASSACHUSETTS 02186
### (617) 696-5700
### FAX: (617) 696-6704

TIMOTHY M. CORCORAN, P.C.
DAVID M. FITZGERALD
GARY CASHAVELLY
ROBERT M. HYNES
KEVIN DONIUS

BRIAN J. LENFEST
SETH J. ROBBINS
MARINA M. TRAMONTOZZI
PAUL F. DEGNAN

OF COUNSEL
DAVID C. CAMPBELL
PAUL A. KELLEY

June 8, 2004

**VIA CERTIFIED MAIL R/R/R**
**NO. 7003 1680 0006 6025 8462**

Kenneth I. Chenault, President
American Express Company
200 Vesey Street
New York, NY  10285

**VIA CERTIFIED MAIL R/R/R**
**NO. 7003 1680 0006 6025 8561**

Andrew Sklover, President
The Sklover Group, Inc.
400 Post Avenue, Suite 103
Westbury, NY  11590-2226

**VIA CERTIFIED MAIL R/R/R**
**NO. 7003 1680 0006 6025 8578**

John D. Finnegan, Chairman
Chubb Group of Insurance Companies
15 Mountain View Road
Warren, NJ  07059

        RE:  **Demand for Relief Pursuant to Massachusetts**
             **General Laws Chapter 93A §§ 2 and 9**

Dear Sirs:

Please be advised that this law firm represents Altagracia
Pequero of 1 Shandon Road, Apartment 215, Dorchester,
Massachusetts in connection with her claims against American
Express Company ("American Express"), The Sklover Group, Inc.
("Sklover"), and Federal Insurance Co. ("Federal Insurance")
(collectively, "the Defendants"), for damages for violation of
Massachusetts General Laws Chapter 93A (the "Consumer Protection
Act") arising out of the false, misleading, unfair and deceptive
marketing and sales of the so-called "Accidental Disability Plan"
arranged by Sklover, marketed by American Express, and
underwritten by Federal Insurance.   Please be advised that this
letter constitutes a formal demand under the Consumer Protection
Act on behalf of Ms. Pequero and a class of similarly situated
and injured consumers for compensation for damages sustained as a

Page Two of Six
June 8, 2004

direct and proximate result of the Defendants' unfair and
deceptive practices.  Under Massachusetts law, the failure to
respond to this demand for relief with a reasonable, written
offer of settlement within 30 days may entitle Ms. Pequero to,
among other forms of relief, treble damages.  Please govern
yourself accordingly.

## I. Background

Ms. Pequero is 42 years old (D.O.B. 6/20/61) and the single
mother of two teenagers.  Born and raised in the Dominican
Republic, Ms. Pequero was there trained and licensed in
dentistry.  In order to provide a better future for herself and
her children and to seek greater financial security, Ms. Pequero
and her children came to America.  Despite her training and
experience as a dentist in the Dominican Republic, Ms. Pequero
was not licensed and could not practice as a dentist in the
United States.  She worked for several years cleaning office
buildings before securing a position as a dental assistant.  In
2002, by working six days a week and 228 hours of overtime, Ms.
Pequero earned $35,275.54.

As a single mother, Ms. Pequero was concerned about the financial
security of her family if she became disabled.  She wanted to
purchase disability insurance that would provide financial
support for her family if she became unable to work.
Accordingly, in response to a solicitation from American Express
and in reliance upon representations regarding financial security
and the promise of the payment of $1.5 million in the event she
became permanently disabled, Ms. Pequero purchased the
Defendants' Accidental Disability Policy.  In reliance upon her
belief that the disability policy she purchased would provide her
and her family with financial security, Ms. Pequero did not
purchase additional disability insurance.

On December 25, 2002, Ms. Pequero became permanently and totally
disabled when her right arm was amputated in a motor vehicle
rollover accident.  Ms. Pequero, who was right hand dominant and
whose primary language is Spanish, lost not only her arm and her
career, but her ability to provide any economic support for her
family.  Due to the loss of her arm, Ms. Pequero can never return
to work as a dentist or dental assistant.  Given her limited
ability to speak English, the only other types of jobs Ms.
Pequero could reasonably be expected to obtain involve manual
labor, such as office cleaning, from which the loss of her arm
precludes her.  In recognition of her inability to perform any
substantial form of gainful employment, Ms. Pequero has been
awarded Social Security Disability Benefits.  A Vocational
Assessment report of Ms. Pequero is attached as Exhibit A.

Page Three of Six
June 8, 2004

Devastated by the loss of her arm and the loss of her ability to
work, Ms. Pequero was initially comforted by the fact that she
had had the foresight to purchase disability insurance.
Regrettably, to her disbelief, Ms. Pequero learned that Federal
Insurance would agree to pay her only $500.00 for the loss of her
arm and that it would not deem her permanently and totally
disabled unless she had lost the use of one hand and one foot,
both hands and both feet, sight in both eyes, hearing in both
ears, or the ability to speak.  This was the first time Ms.
Pequero ever learned about the severe limitations on when claims
would be paid and she knew that she had been duped.  Had Ms.
Pequero believed the insurance provided such limited, illusory
coverage, she would not have purchased the insurance and she
would have purchased other insurance which would in fact have
provided some financial protection for her.

That Ms. Pequero was unaware of the extraordinarily limited
circumstances in which she would be paid under the policy is not
at all surprising.  To the contrary, given the unfair and
deceptive manner in which the policy was advertised, marketed and
sold, as set forth below, it is clear that the Defendants
intended to deceive Ms. Pequero and consumers like her regarding
the protection afforded by the coverage.  And, given the
restricted definition of total disability, it is equally clear
that any one informed of such definition would have no interest
in purchasing the policy.  Accordingly, it is evident that
deception was the cornerstone of the Defendants' marketing
strategy.

### II. Violations of The Consumer Protection Act

Under the Consumer Protection Act a material misrepresentation or
omission which is likely to mislead constitutes actionable
deception.  Moreover, pursuant to M.G.L. c.175, §110E, which sets
forth the standards for disclosure of contents and for
advertising of accident and sickness insurance . . .

   (1)  Words, phrases or illustrations shall not be used in a
        manner which misleads or has the capacity and tendency to
        deceive as to the extent of any policy benefit payable,
        loss covered or premium payable.  An advertisement
        relating to any policy benefit payable, loss covered or
        premium payable shall be sufficiently complete and clear
        as to avoid deception or the capacity and tendency to
        deceive.

Page Four of Six
June 8, 2004

   (2)  When an advertisement refers to any dollar amount, period
       of time for which any benefit is payable, cost of policy,
       or specific policy benefit or the loss for which such
       benefit is payable, it shall also disclose those
       exceptions, reductions and limitations affecting the
       basic provisions of the policy without which the
       advertisement would have the capacity and tendency to
       mislead or deceive.

   (3)  All information required to be disclosed shall be set out
       conspicuously and in close conjunction with the
       statements to which such information relates or under
       appropriate captions of such prominence that it shall not
       be minimized, rendered obscure or presented in an
       ambiguous fashion or intermingled with the context of the
       advertisements so as to be confusing or misleading. . . .

M.G.L. c.175, §110E further provides that in actions for
violations of the applicable standards "[t]he measure of damages
. . . shall be the amount the person damaged could reasonably
have anticipated he would have recovered had the advertising or
the policy provisions not been contrary to the regulations, plus
reasonable costs and attorney's fees."

The Defendants have violated the Consumer Protection Act and
M.G.L. c. 175, §110E by minimizing, obscuring, and rendering
ambiguous the definition of disability, by falsely, deceptively,
and unfairly advertising and marketing its policy and by
intentionally and/or negligently misleading Ms. Pequero and other
consumers to believe that the policy provided them with financial
security in the amount of $1.5 million if they became disabled.

More specifically, by, among other things,

   1) the use of a misleading policy name;

   2) emphasizing in oversized, bold letters "Financial
      Security" and stating "You're covered with up to $1.5
      MILLION if an accident leaves you permanently disabled"
      and disclosing the limitations on the back of the
      solicitation in small print;

   3) failing to provide a conspicuous, unambiguous definition
      of disability;

   4) failing to provide a Plan Summary and Policy to Ms.
      Pequero and, upon information and belief, other
      Massachusetts consumers;

Page Five of Six
June 8, 2004

> 5) stating in promotional materials, without qualification
>    or further definition, that "This plan will pay you a
>    $1.5 million lump sum benefit in the event that a
>    catastrophic accident leaves you totally and permanently
>    disabled, and unable to work";
>
> 6) use of other false and misleading statements in
>    promotional materials; and
>
> 7) selling an insurance policy with illusory coverage,

the Defendants unfairly and deceptively induced Ms. Pequero and
other consumers to purchase the policy and to continue to pay for
it each month. Further, any benefit to Ms. Pequero and other
consumers under the policy is so minimal as to render it
unconscionable.

### III. Demand For Relief

By virtue of the false, misleading, unfair and deceptive
promotion of the Accidental Disability Policy, Ms. Pequero and
the class of similarly situated consumers who have also purchased
the policy, have been severely harmed.  Such harm includes the
loss of the amounts paid for premiums, the loss of benefits
reasonably expected to be paid, and the loss of the opportunity
to purchase disability insurance which would in fact provide
coverage in the event of disability.  Accordingly, on behalf of
Ms. Pequero and the class of similarly situated and injured
consumers, demand is herby made that:

> (1) the Defendants make payment to Ms. Pequero in the
>     amount of $1.5 million to fulfill her reasonable
>     expectations of the coverage provided by the policy in
>     question;
>
> (2) the Defendants pay interest to Ms. Pequero at the legal
>     rate of twelve (12%) percent per annum on the sum
>     of $1.5 million, said interest commencing on December
>     25, 2003;
>
> (3) the Defendants pay a sum to reasonably and fairly
>     reimburse Massachusetts consumers for premiums
>     collected under false pretenses and paid for illusory
>     coverage; and
>
> (4) The Defendants pay all reasonable costs and attorney's
>     fees incurred as a result of its unfair and deceptive
>     practices.

Page Six of Six
June 8, 2004

If no written response accompanied by a reasonable offer of
settlement is received by me within thirty (30) days, Ms. Pequero
and the claim of similarly situated individual consumers shall
seek treble damages and all other relief as provided by
applicable law.

Very truly yours,

Kevin Donius

KD/kc

EX 6

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

J. OWEN TODD
Email: jotodd@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

August 4, 2004

## VIA TELECOPY AND
## CERTIFIED MAIL RETURN RECEIPT REQUESTED

Kevin Donius, Esq.
Corcoran, Fitzgerald & Hennessy, LLC
500 Granite Avenue
Milton, MA  02186

   Re: Claim of Altagracia Pequero

Dear Mr. Donius:

  This letter is the statutory response by Federal Insurance Company ("Federal") to your Chapter 93A §§ 2 and 9 demand letter on behalf of your client, Ms. Pequero.

  Let me begin by thanking you for your courtesy in agreeing to extend the time within which our response is due until today.

  As you indicate in your demand letter, Federal is the underwriting insurer of the Voluntary Accident Insurance Policy No. 6475-22-11 (the "Policy"), marketed by American Express in conjunction with HealthExtras and The Sklover Group. As the underwriter, Federal's responsibility is to insure that members of the program are paid the benefits to which they are entitled under the terms of the Policy. Federal believes that it has totally fulfilled its responsibility in the case of your client, Altagracia Pequero.

  The allegations set out in your demand letter, particularly those concerning alleged violations of Chapter 93A, are so general that it is difficult for us to respond. We read your letter generally, however, to complain that Federal "fail[ed] to provide a Plan Summary and Policy to Ms. Pequero," and that to the extent Federal did provide written material, that material was misleading. To the extent your demand is premised on a belief that Ms. Pequero did not receive a Benefit Plan Description, we believe that allegation to be incorrect. Ms. Pequero was sent a Benefit Plan Description — which fully disclosed the precise benefits and terms of coverage under the Policy — by mail. The written materials which Ms. Pequero was sent set out clearly and in simple terms the

Kevin Donius, Esq.
August 4, 2004
Page 2

circumstances under which an insured is eligible to receive the $1.5 million benefit.[1]  Ms.
Pequero had the opportunity to carefully review the Policy's coverage terms, and if she
was in any way unsatisfied with those terms, she could have notified Federal to cancel
coverage. Ms. Pequero never notified Federal that the coverage she purchased was
inadequate, however. Instead, she continued to pay the Policy premiums on a monthly
basis.

To the extent your demand is premised on the language and disclosures found in
other written materials received by Ms. Pequero, we are unable to respond without
reviewing the written materials you describe as misleading. Suffice it to say, however,
Federal believes the benefits are clearly and adequately described so that a member could
make an informed decision whether to continue with or leave the Program.

Given the above, Federal must respectfully disagree with your assertion that
Federal violated, in any manner, the provisions of the Massachusetts Consumer
Protection Act and therefore denies your demand for relief on behalf of your client. Your
client's injury did not, by the terms of the Benefit Plan Description, qualify for the $1.5
million benefit.  Ms. Pequero has received the benefit for which she was eligible under
the Accidental Dismemberment portion of the Policy.

---

[1]    The Benefit Plan Description clearly and plainly defines "Permanent Total Disability" as follows:

Permanent Total Disability means Accidental Bodily Injuries that solely and directly cause the
Primary Insured Person's:

Loss of:

Use of One Hand and One Foot; or
Use of Both Hands or Both Feet; or
Sight of Both Eyes; or
Hearing of Both Ears; or
Speech,

which solely and directly:

1)    prevent the Primary Insured Person from engaging in any gainful occupation for which
the Primary Insured Person is qualified, by reason of education, training, experience, or
skill; and

2)    cause a condition which is medically determined by a Physician, approved by [Federal],
to be of continuous and infinite duration; and

3)    require the continuous care of a Physician, unless the Primary Insured Person has reached
his/her maximum point of recovery.

(Emphasis omitted)

Kevin Donius, Esq.
August 4, 2004
Page 3

Federal is prepared to accommodate your client by engaging in an expeditious resolution of the dispute pursuant to the mandatory arbitration provision in the Benefit Plan Description and to consider any alternative dispute resolution approach you suggest prior to the hearing before the Arbitrator(s).

Cordially,

J. Owen Todd
Counsel to Federal Insurance Company

JOT:lmb
Cc:    Linda F. Walker, Esq.
       H. Christopher Boehning, Esq.
       Timothy S. Martin, Esq.

$ExC$

## CORCORAN, FITZGERALD & HENNESSY, LLC
### COUNSELORS AT LAW
### 500 GRANITE AVENUE
### MILTON, MASSACHUSETTS 02186
### (617) 696-5700
### FAX: (617) 696-6704

TIMOTHY M. CORCORAN, P.C.
DAVID M. FITZGERALD
ROBERT M. HYNES
KEVIN DONIUS

BRIAN J. LENFEST
SETH J. ROBBINS
MARINA M. TRAMONTOZZI
PAUL F. DEGNAN

OF COUNSEL
DAVID C. CAMPBELL
PAUL A. KELLEY

November 10, 2004

**VIA CERTIFIED MAIL R/R/R**
**NO. 7004 0750 0002 6877 8102**

Kenneth I. Chenault, President
American Express Company
200 Vesey Street
New York, NY  10285-5005

        RE:  **Demand for Relief Pursuant to Massachusetts**
             **General Laws Chapter 93A §§ 2 and 9**

Dear Mr. Chenault:

Please be advised that this law firm represents Altagracia
Pequero of 1 Shandon Road, Apartment 215, Dorchester,
Massachusetts in connection with her claims against American
Express Company ("American Express"), The Sklover Group, Inc.
("Sklover"), and Federal Insurance Co. ("Federal Insurance")
(collectively, "the Defendants"), for damages for violation of
Massachusetts General Laws Chapter 93A (the "Consumer Protection
Act") arising out of the false, misleading, unfair and deceptive
marketing and sales of the so-called "Accidental Disability Plan"
arranged by Sklover, marketed by American Express, and
underwritten by Federal Insurance.  This same letter was sent to
you on June 8, 2004.  No response was received.

Please be advised that this letter constitutes a second demand
under the Consumer Protection Act on behalf of Ms. Pequero and a
class of similarly situated and injured consumers for
compensation for damages sustained as a direct and proximate
result of the Defendants' unfair and deceptive practices.  Under
Massachusetts law, the failure to respond to this demand for
relief with a reasonable, written offer of settlement within 30
days may entitle Ms. Pequero to, among other forms of relief,
treble damages.  Please govern yourself accordingly.

## I. Background

Ms. Pequero is 42 years old (D.O.B. 6/20/61) and the single mother of two teenagers. Born and raised in the Dominican Republic, Ms. Pequero was there trained and licensed in dentistry. In order to provide a better future for herself and her children and to seek greater financial security, Ms. Pequero and her children came to America. Despite her training and experience as a dentist in the Dominican Republic, Ms. Pequero was not licensed and could not practice as a dentist in the United States. She worked for several years cleaning office buildings before securing a position as a dental assistant. In 2002, by working six days a week and 228 hours of overtime, Ms. Pequero earned $35,275.54.

As a single mother, Ms. Pequero was concerned about the financial security of her family if she became disabled. She wanted to purchase disability insurance that would provide financial support for her family if she became unable to work. Accordingly, in response to a solicitation from American Express and in reliance upon representations regarding financial security and the promise of the payment of $1.5 million in the event she became permanently disabled, Ms. Pequero purchased the Defendants' Accidental Disability Policy. In reliance upon her belief that the disability policy she purchased would provide her and her family with financial security, Ms. Pequero did not purchase additional disability insurance.

On December 25, 2002, Ms. Pequero became permanently and totally disabled when her right arm was amputated in a motor vehicle rollover accident. Ms. Pequero, who was right hand dominant and whose primary language is Spanish, lost not only her arm and her career, but her ability to provide any economic support for her family. Due to the loss of her arm, Ms. Pequero can never return to work as a dentist or dental assistant. Given her limited ability to speak English, the only other types of jobs Ms. Pequero could reasonably be expected to obtain involve manual labor, such as office cleaning, from which the loss of her arm precludes her. In recognition of her inability to perform any substantial form of gainful employment, Ms. Pequero has been awarded Social Security Disability Benefits. A Vocational Assessment report of Ms. Pequero is attached as Exhibit A.

Devastated by the loss of her arm and the loss of her ability to work, Ms. Pequero was initially comforted by the fact that she had had the foresight to purchase disability insurance. Regrettably, to her disbelief, Ms. Pequero learned that Federal Insurance would agree to pay her only $500.00 for the loss of her arm and that it would not deem her permanently and totally disabled unless she had lost the use of one hand and one foot, both hands and both feet, sight in both eyes, hearing in both

ears, or the ability to speak. This was the first time Ms. Pequero ever learned about the severe limitations on when claims would be paid and she knew that she had been duped. Had Ms. Pequero believed the insurance provided such limited, illusory coverage, she would not have purchased the insurance and she would have purchased other insurance which would in fact have provided some financial protection for her.

That Ms. Pequero was unaware of the extraordinarily limited circumstances in which she would be paid under the policy is not at all surprising. To the contrary, given the unfair and deceptive manner in which the policy was advertised, marketed and sold, as set forth below, it is clear that the Defendants intended to deceive Ms. Pequero and consumers like her regarding the protection afforded by the coverage. And, given the restricted definition of total disability, it is equally clear that any one informed of such definition would have no interest in purchasing the policy. Accordingly, it is evident that deception was the cornerstone of the Defendants' marketing strategy.

## II. Violations of The Consumer Protection Act

Under the Consumer Protection Act a material misrepresentation or omission which is likely to mislead constitutes actionable deception. Moreover, pursuant to M.G.L. c.175, §110E, which sets forth the standards for disclosure of contents and for advertising of accident and sickness insurance . . .

(1) Words, phrases or illustrations shall not be used in a manner which misleads or has the capacity and tendency to deceive as to the extent of any policy benefit payable, loss covered or premium payable. An advertisement relating to any policy benefit payable, loss covered or premium payable shall be sufficiently complete and clear as to avoid deception or the capacity and tendency to deceive.

(2) When an advertisement refers to any dollar amount, period of time for which any benefit is payable, cost of policy, or specific policy benefit or the loss for which such benefit is payable, it shall also disclose those exceptions, reductions and limitations affecting the basic provisions of the policy without which the advertisement would have the capacity and tendency to mislead or deceive.

(3) All information required to be disclosed shall be set out conspicuously and in close conjunction with the statements to which such information relates or under appropriate captions of such prominence that it shall not

Page Four of Five
November 10, 2004

> be minimized, rendered obscure or presented in an
> ambiguous fashion or intermingled with the context of the
> advertisements so as to be confusing or misleading. . . .

M.G.L. c.175, §110E further provides that in actions for
violations of the applicable standards "[t]he measure of damages
. . . shall be the amount the person damaged could reasonably
have anticipated he would have recovered had the advertising or
the policy provisions not been contrary to the regulations, plus
reasonable costs and attorney's fees."

The Defendants have violated the Consumer Protection Act and
M.G.L. c. 175, §110E by minimizing, obscuring, and rendering
ambiguous the definition of disability, by falsely, deceptively,
and unfairly advertising and marketing its policy and by
intentionally and/or negligently misleading Ms. Pequero and other
consumers to believe that the policy provided them with financial
security in the amount of $1.5 million if they became disabled.

More specifically, by, among other things,

1) the use of a misleading policy name;

2) emphasizing in oversized, bold letters "Financial
   Security" and stating "You're covered with up to $1.5
   MILLION if an accident leaves you permanently disabled"
   and disclosing the limitations on the back of the
   solicitation in small print;

3) failing to provide a conspicuous, unambiguous definition
   of disability;

4) failing to provide a Plan Summary and Policy to Ms.
   Pequero and, upon information and belief, other
   Massachusetts consumers;

5) stating in promotional materials, without qualification
   or further definition, that "This plan will pay you a
   $1.5 million lump sum benefit in the event that a
   catastrophic accident leaves you totally and permanently
   disabled, and unable to work";

6) use of other false and misleading statements in
   promotional materials; and

7) selling an insurance policy with illusory coverage,

the Defendants unfairly and deceptively induced Ms. Pequero and
other consumers to purchase the policy and to continue to pay for
it each month. Further, any benefit to Ms. Pequero and other
consumers under the policy is so minimal as to render it

Page Five of Five
November 10, 2004

unconscionable.

### III. Demand For Relief

By virtue of the false, misleading, unfair and deceptive
promotion of the Accidental Disability Policy, Ms. Pequero and
the class of similarly situated consumers who have also purchased
the policy, have been severely harmed.   Such harm includes the
loss of the amounts paid for premiums, the loss of benefits
reasonably expected to be paid, and the loss of the opportunity
to purchase disability insurance which would in fact provide
coverage in the event of disability.  Accordingly, on behalf of
Ms. Pequero and the class of similarly situated and injured
consumers, demand is hereby made that:

(1)    the Defendants make payment to Ms. Pequero in the
       amount of $1.5 million to fulfill her reasonable
       expectations of the coverage provided by the policy in
       question;

(2)    the Defendants pay interest to Ms. Pequero at the legal
       rate of twelve (12%) percent per annum on the sum
       of $1.5 million, said interest commencing on December
       25, 2003;

(3)    the Defendants pay a sum to reasonably and fairly
       reimburse Massachusetts consumers for premiums
       collected under false pretenses and paid for illusory
       coverage; and

(4)    The Defendants pay all reasonable costs and attorney's
       fees incurred as a result of its unfair and deceptive
       practices.

If no written response accompanied by a reasonable offer of
settlement is received by me within thirty (30) days, Ms. Pequero
and the claim of similarly situated individual consumers shall
seek treble damages and all other relief as provided by
applicable law.  Unless this matter is resolved, a complaint will
be filed on or about January 15, 2005.

Very truly yours,

Kevin Donius

KD/kc

# Vocational Consulting & Evaluation

*Paul R. Blatchford, Ed.M.*

*85 Audubon Drive • Chestnut Hill, MA 02467 • 617/244-5642*

March 16, 2004

Law Offices of Corcoran, Fitzgerald & Hennessey
500 Granite Avenue
Milton, MA 02186
Attention: Kevin Donius, Esquire

> Re: Altagracia J. Pequero
> 1 Shandon Road, No. 215
> Dorchester, MA 02124
> Date of Evaluation: February 11, 2004

Dear Attorney Donius:

Per your request, I have interviewed your client, Altagracia J. Pequero reviewed medical records, and administered vocational tests for the purpose of assessing her capacity to perform work as a result of injuries sustained on December 25,2002

## TESTS ADMINISTERED

Slosson Intelligence Test - $R^2$
Wide Range Achievement Test - (WRAT $R^3$)
Crawford Small Parts Dexterity Test
Portable Assessment System - 1, Manual Dexterity and
   Isotonic Lifting Assessment

## DATE OF BIRTH

Joan 20, 1961 (Age 42)

*Offices in Worcester and Brookline • By Appointment Only*
*Fax: 617/244-8113*                    *Email: Paulblat@aol.com*

## EDUCATION

Ms. Pequero was born in the Dominican Republic.  She started school at the age of 6 or 7, completing her education at age 24.  In 1981, she graduated Francisco Gregory Bellini High School in the Dominican Republic. She reports being an A student.  Ms. Pequero attended the University off of Autonama, University of Santo Domingo from 1981 through 1986. Each year, she had one course in English.  She graduated college acquiring her Dentistry Degree.

Ms. Pequero immigrated to United States in January 1993, at the age of 32.  She attended Tufts University in the South End taking one class, attending for only one day and then studying from about one month.  In January, she took and passed the exam to acquire state certification to work as a Dental Assistant. Her goal was to become a Dentist in United States.  She had already acquired the written material and the information necessary to take the state certification exam.

## WORK HISTORY

Ms. Pequero reports that while residing in the Dominican Republic, she worked as a Dentist.

Upon immigrating to the United States in 1993, and through 1999, Ms. Pequero worked for Janotronics cleaning company out of Waltham, MA, cleaning commercial office buildings.  She reports earning $9.85 per hour, working a 20-hour week.  She also reports taking classes in English as a Second Language on her own through UMass Boston, Roxbury Community College, and the Red Cross.  With the development of proficiency in English, she then acquired a job at Macy's in Braintree, MA working as a Sales Clerk in the Men's Department.  She reports earning $7.50 per hour.

In April 2001, Ms. Pequero went to work for Dr. Carr Associates in Boston, MA as a Dental Assistant.  She was paid $15 per hour, working a 40-hour week plus 6-10 hours per week of overtime.  She worked Monday through Saturday from 8:30 AM until 5:30 PM.  She worked with a dentist, assisting, seeing one patient every half hour.

2

On December 25,2002 while riding as a passenger in motor vehicle, Ms. Pequero was involved an accident. She reports that she was wearing her seat belt; when the car rolled over, the window broke, and her arm was on the outside of the window, getting caught and subsequently amputated. She had surgery on December 25,2002, reporting that additional surgery will be performed on March 15, 2004. The amputation was above-the-elbow, several inches from the shoulder.

As a result of injuries sustained, Ms. Pequero has been unable to return back to work.

## FUNCTIONAL LIMITATIONS

Lifting - unable to use the right upper extremity for any lifting due to amputation; able to reach and lift a gallon of milk (8-10 pounds) with left nondominant hand (8-10 lbs.), but finds that doing so repetitively tires out the arm; has difficulty holding and manipulating.

Talking - speaks limited English, would not be considered totally fluent, interpreter was used for clarification.

Hearing - presents no problems.

Sitting - while seated, tends to rock back and forth; presents increased shoulder pain, tries to rotate the shoulder/arm due to pain.

Climbing - when experiencing shoulder pain, finds climbing stairs and the jarring sensation that involves increases her pain.

Balance - reports occasionally off.

Breathing - on stress, experiences shortness of breath, reports that she was on medication for this.

3

Driving -     has not driven since the accident, believes that after her March, 2004 surgery, the prosthesis may assist her in returning back to driving.

Feeling -     experiences often on phantom numbness and tingling in the amputated arm/hand/fingers.

Reaching -   with left arm reaching up and out tires out the arm, limited movement of the right arm/stump can bring on pain.

Seeing -     presents no problems.

Standing -   presents no problems.

Walking -    when walking, any jarring sensation can bring on pain in the shoulder, tries to protect the shoulder.

Bending -    presents no problems.

Kneeling -   finds difficult due to balance problems, tries to avoid.

Sleeping -   4-6 hours per night on average (depends upon how she feels) awakened 2-3 times per night due to pain and nightmares.

Environmental
Conditions - Ms. Pequero reports that the cold, rain, and dampness increases the aching, stiffness, and pain and the right shoulder/stump, bringing on increased muscle spasms in the front as well as the back of her shoulder.   With increased pain, she reports becoming more "stressed out".  She reports experiencing not only phantom pain in the amputated site, but also electrical shock-like pain in the shoulder and arm.

4

## PAIN STATUS

On a scale of zero to ten, where zero is no pain and ten is severe pain, Ms. Pequero reports that she has off and on pain in the right shoulder. She has constant phantom pain down her amputated arm, where she feels pain in the missing forearm, hand, and fingers. With rotation of her right shoulder, she presents pain, with pain in the front and back of her shoulder, as well as muscle spasms in the same area. The pain can range from a 3-4 level up to a 10 level.

Ms. Pequero is 5'4" tall, and currently weighs 145 pounds, presenting a preinjury weight of 138 pounds. She has a prosthesis, however is unable to use it as it causes too much pain; she will be undergoing additional surgery in March, 2004. She reports no prior motor vehicle accidents in the Dominican Republic, no history of worker's compensation cases, nor any history of slip and fall cases.

Ms. Pequero reports experiencing headaches 2-3 times per week. Upon their onset, these last for from one-half hour up to 2-3 hours for which she takes Neurontin (the same medication that she takes for pain in her arm). She will lay down with her headaches for 1-2 hours, but has not discussed this problem with her doctor. Ms. Pequero feels that her headaches are related to stress. She reports having stomach and digestive problems brought about by the medications she is taking. She also feels that she may be developing an ulcer as result of the stress she is experiencing.

Ms. Pequero is concerned about her left nondominant arm as it fatigues easily. She also experiences occasional numbness and tingling from the fingers up into the shoulder.

Ms. Pequero was last in physical therapy in June, 2003 at Massachusetts General Hospital. She reports that it is too painful to the right shoulder to perform home stretching exercises. She takes two hot showers per day, and uses heat and ice in 20 minute intervals. She reportedly takes Neurontin 400 mg once or twice per day. She has been on Percocet and other medications, however stopped taking them due to their side effects.

**COVER SHEET**

| | |
|---|---|
| PLAINTIFF(S) | DEFENDANT(S) |
| Altagracia J. Peguero | American Express Company, The Sklover Group, Inc., and Federal Insurance Company |

| | |
|---|---|
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE (617) 696-5700 | ATTORNEY (If known) |
| Kevin Donius, Corcoran, FitzGerald & Hennessy | |
| 500 Granite Avenue, Milton, MA  02186 | |
| Board of Bar Overseers number: 551298 | |

## Origin code and track designation

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)

- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial)  (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

### TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| A02 | Goods Sold/Delivered | ( F ) | ( X ) Yes    (  ) No |

**The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.**

### TORT CLAIMS
(Attach additional sheets as necessary)

A.  Documented medical expenses to date:
  1.  Total hospital expenses .................................................. $...........
  2.  Total Doctor expenses .................................................. $...........
  3.  Total chiropractic expenses ........................................... $...........
  4.  Total physical therapy expenses ....................................... $...........
  5.  Total other expenses (describe) ....................................... $...........
      Subtotal $...........

B.  Documented lost wages and compensation to date ......................... $...........
C.  Documented property damages to date .................................... $...........
D.  Reasonably anticipated future medical and hospital expenses ............ $...........
E.  Reasonably anticipated lost wages ...................................... $...........
F.  Other documented items of damages (describe)
      $...........

G.  Brief description of plaintiff's injury, including nature and extent of injury (describe)

      $...........
      TOTAL $...........

### CONTRACT CLAIMS
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

Defendants fraudulently marketed and sold so-called Accidental Disability Policy.
Plaintiff became disabled but was denied promised $1.5 Million payment.

TOTAL $. 1,500,000.00

**PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT**   N/A

**"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules of Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."**

Signature of Attorney of Record _____    DATE: 3/24/05

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

I HEREBY ATTEST AND CERTIFY ON

MAY 16, 2005 ____ THAT THE

FOREGOING DOCUMENT IS A FULL,
TRUE AND CORRECT COPY OF THE
ORIGINAL ON FILE IN MY OFFICE,
AND IN MY LEGAL CUSTODY.

MICHAEL JOSEPH DONOVAN
CLERK / MAGISTRATE
SUFFOLK SUPERIOR CIVIL COURT
DEPARTMENT OF THE TRIAL COURT

BY: _____
      ASSISTANT CLERK