UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-10995-RCL

| | |
|---|---|
| ALTAGRACIA J. PEGUERO,<br>    Plaintiff,<br><br>v.<br><br>AMERICAN EXPRESS COMPANY,<br>THE SKLOVER GROUP, INC.<br>and  FEDERAL INSURANCE<br>COMPANY,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT FEDERAL INSURANCE COMPANY'S
MOTION TO DISMISS AND COMPEL ARBITRTION**

The Plaintiff, Altagracia J. Peguero, submits this Memorandum of Law in Opposition to Defendant Federal Insurance Company's Motion to Dismiss and Compel Arbitration.  For further support of this opposition, the Plaintiff respectfully refers this Honorable Court to the Affidavit of Altagracia J. Peguero and Kevin Donius, Esquire submitted herewith.

I.   INTRODUCTION

This case arises out of the Defendants' unfair and deceptive marketing of a so-called "disability policy." The Plaintiff alleges that she was fraudulently induced to believe she would recover a $1.5 Million lump sum payment under the policy if she were to become disabled. Based upon

this belief, the Plaintiff purchased the policy. The Plaintiff further alleges that she never received a copy of the policy or even a summary of the policy until after she became disabled due to the loss of her dominant arm in a car accident and consequently was unaware of the extraordinarily restricted definition of disability under the policy - a definition so restricted as to render the policy worthless.

One of the Defendants, Federal Insurance Company, has filed a motion to dismiss and compel arbitration based upon a mandatory arbitration clause contained in the policy. Because the Plaintiff did not receive a copy of the policy and was unaware of the arbitration clause, she never consented to the clause, rendering it unenforceable. Moreover, the arbitration clause is also unenforceable because forcing a claimant seeking disability benefits to incur the high cost of arbitration is unconscionable. Accordingly, the Defendant's motion must be denied.

## II. STATEMENT OF FACTS

The Plaintiff is a native of the Dominican Republic and there was a licensed and practicing dentist. See Affidavit of Altagracia J. Peguero, par. 2. In order to secure a better future for herself and her two sons, the

Plaintiff came to America. Id. When she first came to America, the Plaintiff did janitorial work for several years before obtaining a position as a dental hygienist. Id.

As the sole supporter of herself and her two sons, the Plaintiff was concerned about the catastrophic financial consequences if she were to become disabled. Id., at par. 3. The Plaintiff, who had a charge card with American Express, received a solicitation from American Express which led her to believe that if she paid $12.95 per month, she would be entitled to the lump sum payment of $1.5 million if she were to become totally disabled from work. Id. The Plaintiff filled out a form indicating that she wanted to purchase the insurance and thereafter a charge of $12.95 appeared on her American Express bill each month. Id., at par. 4.

The Plaintiff never received a copy of the policy or even a summary of the policy until after she filed a claim following the loss of her arm.[1] Id. Consequently, the Plaintiff was unaware of the extraordinarily restricted

---

[1] On page two of its Memorandum of Law In support of Its Motion to Dismiss And Compel Arbitration, Federal Insurance asserts that "(u)pon her enrollment in the Plan, Peguero was sent, among other things, a Benefit Plan Description of which contains the contract of insurance and fully discloses the precise benefits and terms of coverage available under the plan." Federal Insurance, however, offers no evidence to support this assertion.

3

definition of disability until after she lost her arm.[2] Id., at par. 7. The Plaintiff, again because she never received a copy of the policy, also was unaware of the arbitration clause contained in the policy until after she had filed her claims. Id.

The Plaintiff's right, dominant arm was amputated above the elbow in a motor vehicle accident on December 25, 2002. She has been unable to work in any capacity since that time. Id, at par. 11. Following the loss of her arm, the Plaintiff filed a claim for disability benefits with Federal Insurance. Id., at par. 10. Her claim was denied. Id.

Federal Insurance now seeks to enforce an arbitration clause in the policy which requires disputes arising from the policy to be adjudicated by a three person panel of arbitrators. The Plaintiff cannot afford to pursue her claims in arbitration. Id., par. 12. The cost of a two day, three person panel arbitration in the Boston area would cost at least $18,000 and probably substantially more. See Affidavit of Kevin Donius, Esq.

---

[2] To be disabled under the policy, the insured must lose 1) the use of one hand and one foot, 2) the use of both hands or both feet, 3) sight in both eyes, 4) hearing in both ears, or 5) the ability to speak.

4

### III. LEGAL ARGUMENT

IIIA.   THE ARBITRATION CLAUSE OUGHT NOT BE ENFORCED BECAUSE THE PLAINTIFF NEVER CONSENTED TO IT.

Because the policy favoring arbitration only operates where parties have entered a valid contract for such arbitration, the argument that there is a strong policy favoring arbitration here puts the cart before the horse. Curtis G. Testerman Co. v. Buck, 340 Md. 569, 580 (1995) ("an arbitration clause is only 'liberally read' when an arbitration agreement in fact exists"). The first issue to be determined is whether the Plaintiff agreed to the arbitration clause. This is a matter to be decided under state contract law.

"[A]rbitration is a matter of contract" (citations omitted) and for the most part, general principles of state contract law control the determination of whether a valid agreement to arbitrate exists" (citations omitted), Campbell v. General Dynamics, Slip Opinion 04-1828 (1st Cir. 2005).

"[A]rbitration under the [Federal Arbitration Act] is a matter of consent, not coercion." Allied-Bruce Terminex Cos. v. Dobson, 513 U.S. 265, 270 (1995). It has been stated that "(i)t is bedrock that arbitration is a matter of contract and that a party cannot be required to submit

5

to arbitration any dispute which he has not agreed so to commit." Intergen N.V. v. Grina, 344 F.3d 134 (1st Cir. 2003); Graham v. Smith, 292 F.Supp. 2d 153, 156 (D. Me. 2003).

In Campbell, which was decided on May 23, 2005, the First Circuit upheld the District Court's denial of a motion to compel arbitration in an employment discrimination case where the employer seeking to compel arbitration produced no evidence to contradict the employee's claim that he never read or saw the arbitration clause prior to his termination. See also, Waters v. Earthlink, Inc., 91 Fed.Appx. 697 (1st Cir. 2003). (District Court's denial of motion to compel arbitration upheld because moving party failed to establish existence of binding agreement to arbitrate.) Similarly, in this case the Plaintiff never received notice of the arbitration clause and therefore never agreed to it. Accordingly, the clause is unenforceable.

Moreover, the District Court in the Campbell case had held that an agreement to arbitrate could not be inferred under Massachusetts contract law in that case because the plaintiff lacked knowledge of the offer and, therefore, any apparent acceptance of the terms inferable from his

continued employment was nugatory. <u>Campbell v. General Dynamics</u>, 321 F.Supp.2d 142, 145, 149 (D.Mass. 2004). Likewise, because the Plaintiff here never saw the policy containing the arbitration clause, she could not have consented to it, nor can her acceptance of it be inferred from her continued payment of the policy's premiums.

   IIIB.   THE ARBITRATION CLAUSE IS UNENFORCEABLE BECAUSE THE PLAINTIFF DID NOT VOLUNTARILY, KNOWINGLY AND INTELLIGENTLY AGREE TO WAVIE HER RIGHT TO A JURY TRIAL

The well-established law of contract is that a party has *not* agreed to waive a constitutional right unless that party has voluntarily, knowingly and intelligently agreed to an unambiguous contractual provision waiving that right. <u>Spence v. Reeder</u>, 416 N.E.2d 914; 382 Mass. 398 (1981)

The invocation of the arbitration clause in this case involves the waiver of a fundamental right - the right to trial by jury. Like that of other states, Massachusetts' general law of contracts holds that *any* contract obligating one party to waive a constitutional right is only valid if the waiver is voluntary, knowing and intelligent. See <u>Spence</u>. This principle has been recognized in numerous cases around the United States. See e.g. <u>Western Nat'l Mutual Ins. Co. v. Lennes</u>, 46 F.3d 813, 819 (8th Cir. 1995) ("Contractual clauses purporting to waive constitutional

7

rights must be clear and unambiguous"); <u>Erie Telecommunications, Inc. v. City of Erie</u>, 853 F.2d 1084, 1096 (3rd Cir. 1988) ("constitutional rights, like rights and privileges of lesser importance, may be contractually waived where the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights had done so of its own volition, with full understanding of the consequences of its waiver").

Again, because the Plaintiff in this case was never provided a copy of the policy, she was never aware of the arbitration clause until after she was injured and had filed her claim. Under these circumstances, the Plaintiff cannot be said to have voluntarily, knowingly and intelligently waived her right to a jury trial.

    IIIC.    IF THE COURT FINDS THERE IS A GENUINE DISPUTE REGARDING WHETHER THE PARTIES AGREED TO ARBITRATE THE PLAINTIFF IS ENTITLED TO A JURY TRIAL ON THE ISSUE

Absent some evidence proffered by Federal Insurance – as yet there is none -- that the Plaintiff received a copy of the policy and, therefore, even arguably agreed to arbitrate, the court must deny Federal Insurance's motion. If, however, the Court were to find that a legitimate dispute exists as to whether the parties agreed to the

arbitration clause, the Plaintiff would be entitled to demand that a jury resolve the dispute.

Pursuant to 9 U.S.C. § 4, if the Court finds that the "making of the arbitration agreement...[is] in issue," the party contesting arbitration may demand a jury trial on the issue of whether there was ever an agreement to arbitrate. In this case, the Plaintiff unequivocally states in her affidavit that she never received the policy which contains the arbitration clause. Accordingly, if Federal Insurance were to provide sufficient evidence to counter this testimony and create a genuine issue of fact, there would be a dispute as to whether there was ever an agreement to arbitrate. In such case, the Plaintiff would be entitled to a jury trial on the issue of whether she ever agreed to arbitration.

IIID.     IMPOSING ARBITRATION COSTS ON
          DISABILITY CLAIMANTS IS UNCONSCIONABLE

In this case, the arbitration clause sets forth a procedure whereby three arbitrators are selected to adjudicate all disputes, but is silent as to who will pay for the arbitration. If Federal Insurance seeks to impose any of the costs of the arbitration on the Plaintiff, the arbitration clause under the circumstances of this case would be unconscionable and therefore unenforceable.

In Shankle v. B-G Maintenance Management of Colorado, Inc., 163 F.3d 1230, 1235 (10th Cir. 1999), the Tenth Circuit held that mandatory arbitration agreements are unenforceable when they shift the high cost of arbitration onto employees seeking to enforce their rights. See also Gourley v. Yellow Transportation, 178 F.Supp.2d 1196 (D.Colo. 2001); Perez v. Hospitality Ventures-Denver, 245 F.Supp.2d 1172 (D.Colo. 2003). The Supreme Court in Green Tree Financial Corp. v. Randolph, 531 U.S. 79 (2000) likewise indicated that plaintiffs who meet the burden of showing that arbitration costs are prohibitively expensive may not be compelled to arbitration.

Here, the imposition of arbitration costs on persons, such as the Plaintiff, claiming entitlement to disability benefits is likely to create an insurmountable bar to adjudication of their rights. By definition such persons are not working and many or most are in perilous financial condition. In the context of disputes arising from a disability insurance policy, the high cost of arbitration may effectively preclude any avenue of redress for those aggrieved.

As set forth in her affidavit, the Plaintiff and her family survive on her social security disability benefits

and welfare. The cost of arbitration in this case, which is conservatively estimated to be at least $18,000, would impose an enormous burden upon her. Accordingly, this Court should refuse to enforce the arbitration clause as unconscionable under the circumstances.

IIIE.  PLAINTIFF'S CLAIMS AGAINST AMERICAN EXPRESS ARE NOT SUBJECT TO ARBITRATION

American Express has answered the complaint and has not joined the motion to compel arbitration.[3] Yet Federal Insurance's motion apparently seeks to dismiss not only the claims against it but to "dismiss this proceeding." Federal Insurance has further asserted "(a)rbitration will resolve every issue in this litigation." Not so. The Plaintiff's claims against American Express are not in any event subject to arbitration.

Even if this Court or a jury were to find that the Plaintiff agreed to arbitrate her claims against Federal Insurance, no such finding could be made vis-à-vis American Express.

The arbitration clause in question states:

> In the event of a dispute under the policy, either we, the Insured Person, or in the event of Loss of Life, the Insured Person's

---

[3] The third defendant, The Sklover Group, Inc., has recently settled with the Plaintiff and will soon be dismissed from the litigation.

11

        beneficiary may make a written demand for arbitration. (emphasis added);

The word "we" is defined under the policy to mean "the Company providing this insurance." "Company" is defined therein to mean Federal Insurance Company. See Exhibit 2 to Defendant Federal Insurance Company's Memorandum of Law In Support of Its Motion To Dismiss and Compel Arbitration.

    To force the Plaintiff to arbitrate her claims against American Express based upon the arbitration clause in the policy would be to ignore the "bedrock" principle that "arbitration is a matter of contract and that a party cannot be required to submit to arbitrate any dispute which he has not agree so to commit." Graham v. Smith, 292 F.Supp.3d 153, 156 (D. Me. 2003). There is no arbitration agreement between the Plaintiff and American Express and therefore the Plaintiff cannot be compelled to arbitrate her claims against American Express.

## IV.  CONCLUSION

For all the foregoing reasons, the Motion To Dismiss and Compel Arbitration ought to be denied. Alternatively, if the Court finds a triable issue exists as to whether there was an agreement to arbitrate, such issue must be resolved by a jury.

Respectfully submitted,
THE PLAINTIFF,
By her Attorney,

_____
Kevin Donius, Esquire
Corcoran, FitzGerald
& Hennessy
500 Granite Avenue
Milton, MA  02186
TEL  (617) 696-5700
FAX  (617) 696-6704
BBO#:  551298

Date:    June 20, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail / by hand.

Date: 6/21/05    _____