UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALTAGRACIA J. PLAINTIFF,<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN EXPRESS COMPANY,<br>THE SKLOVER GROUP, INC. and<br>FEDERAL INSURANCE COMPANY,<br><br>Defendants. | Civil Action No. 05-10995-RCL |

**DEFENDANT FEDERAL INSURANCE COMPANY'S REPLY
MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS
<u>MOTION TO DISMISS AND COMPEL ARBITRATION</u>**

Defendant Federal Insurance Company ("Federal") respectfully submits this reply memorandum in further support of its motion to dismiss this proceeding and compel arbitration of Plaintiff Altagracia Peguero's ("Plaintiff's") claims.

## <u>INTRODUCTION</u>

There can be no real dispute that all of Plaintiff's claims belong in arbitration. In her Opposition to Federal's Motion to Dismiss and Compel Arbitration ("Opposition"), Plaintiff concedes that she purchased a Catastrophic Injury and Accidental Disability insurance policy (the "Plan") that was underwritten by Federal. Plaintiff concedes that the plain language of that Plan does not support her effort to recover a $1.5 million insurance benefit from Federal. Plaintiff concedes that the Plan contains an arbitration provision. And Plaintiff concedes that the Plan's arbitration provision is broad, encompassing the claims asserted by her in this action. Those concessions require that Plaintiff's claims be dismissed (or stayed) in favor of arbitration.

In an effort to avoid that outcome and arbitration of her claims, Plaintiff now claims that she "never received the policy or a summary of the policy," that arbitration would be cost-prohibitive, and that the Plan's arbitration provision is thus unconscionable and unenforceable. (Peguero Aff. at ¶¶ 5-7; Opposition at 5-11.) As we explain below, none of those arguments has a basis in law or fact. None permits Plaintiff to avoid arbitration.

## ARGUMENT

We respectfully submit that this Court's inquiry begins and ends with the United States Supreme Court's decision in *Prima Paint Corp.* v. *Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-404 (1967). The Court in *Prima Paint* held that claims concerning fraud in the inducement of a contract must be submitted to arbitration under a broad arbitration clause. *See Unionmutual Stock Life Ins. Co.* v. *Beneficial Life Ins. Co.*, 774 F.2d 524, 528 (1st Cir. 1985) (citing *Prima Paint's* teaching that "a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud").

Under *Prima Paint*, these are the relevant facts, all of which are undisputed: ***First***, Plaintiff entered into a contract with Federal. She so alleges in the First Amended Complaint (at paragraph 39), she says in her Opposition (at page 2) that she "purchased the policy," and she made payments under the contract and continues to make those payments to this day. (*See* Affidavit of Joanna Ficklin at ¶ 8.) ***Second***, the contract contains an arbitration clause that is broad enough to encompass all of Plaintiff's claims. We so demonstrated in Federal's opening brief (at pages 2-3, 5-8) and Plaintiff's Opposition says

nothing to the contrary.[1]  ***Third***, Plaintiff alleges that the contract was fraudulently induced. The First Amended Complaint alleges repeatedly that Federal and the other defendants misrepresented the terms of the insurance contract through "misleading, unfair and deceptive" materials that "induc[ed] her to purchase" coverage (Amended Cmplt. ¶¶ 6-11, 24-34, 37, 42-47); the first, second, third and fifth causes of action sound in fraud (*id*.); and Plaintiff claims that she detrimentally relied on defendants' alleged fraudulent misrepresentations, which she claims "induced" her to purchase coverage (*id*.).

To be clear:  Federal strongly disputes the *merits* of Plaintiff's claims.  But under *Prima Paint* and its First Circuit progeny — given the undisputed facts — an arbitrator, not this Court, must resolve the merits dispute.  *See Large* v. *Conseco Fin. Servicing Corp.*, 292 F.3d 49, 53-54 (1st Cir. 2002).

## I.    PLAINTIFF'S ARGUMENTS PROVIDE HER NO ESCAPE FROM A VALID ARBITRATION CLAUSE, AND THE COURT SHOULD DISMISS THIS ACTION AND COMPEL ARBITRATION

### A.    Plaintiff Cannot Avoid Arbitration By Claiming That She Never Received the Benefit Plan Description

Plaintiff's 'no-consent' and 'no-waiver' arguments (Opposition at 5-8) depend on her allegation that she never received the Benefit Plan Description containing the arbitration provision.  But long-settled law makes clear that Plaintiff's allegation must be rejected.  Courts long ago recognized the mischief that would follow if litigants could defeat claims that notice was provided by U.S. mail simply by claiming never to have received the mailing.  For that reason, the applicable standard concerning receipt — the so-

---

[1]    *See* Opening Br. at 3 (quoting the full text of the arbitration provision at issue in this case, as it appears in the Benefit Plan Description that was sent to Plaintiff upon her enrollment in the Plan).  The arbitration provision here is clear, legible and plainly identified under the bolded heading "Arbitration."  Further, the substantive terms of the provision, in simple and unmistakable language, provide for the submission of disputes under the Plan to arbitration.

called "mailbox rule" — compels the Court to *presume* that Plaintiff received the Benefit

Plan Description once Federal shows evidence of mailing. Here, Federal has clear proof of

mailing, set forth in the attached Affidavit of Joanna Ficklin in Support of Federal's Motion

to Dismiss and Compel Arbitration ("HE Affidavit" or "HE Aff.").[2] The HE Affidavit

shows that Plaintiff was sent, and therefore received, the Benefit Plan Description

containing the terms and conditions of the Plan, including its arbitration provision.[3] *Hoefs*

v. *CACV of Colo., LLC*, 365 F. Supp. 2d 69, 72-74 (D. Mass. 2005) (holding that plaintiff

cannot avoid an arbitration agreement by claiming she never received it in the mail).[4]

---

[2] The crux of Plaintiff's Opposition is that she never received the Benefit Plan Description. Plaintiff did not purchase the Plan directly from Federal, however; instead, she enrolled in a disability benefits program offered by HealthExtras, Inc. ("HealthExtras") that included insurance coverage under the Plan underwritten by Federal. As a result, HealthExtras sent Plaintiff numerous correspondence, including the Benefit Plan Description containing the arbitration provision at issue here, as explained further in the attached HE Affidavit.

[3] The HE Affidavit, attesting to mailing of the "welcome packet" to Plaintiff, together with the attached exhibits evidencing that mailing and its contents, demonstrate sufficiently that Plaintiff received the Benefit Plan Description. *See Hoefs*, 365 F. Supp. 2d at 72-73 ("the 'mailbox rule' is 'a settled feature of the federal common law' and 'provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time.'") (citations omitted); *see also Narragansett Indian Tribe* v. *Warwick Sewer Auth.*, 334 F.3d 161, 168 (1st Cir. 2003); *Univ. Emergency Med. Found.* v. *Rapier Invs., Ltd.*, 197 F.3d 18, 21 (1st Cir. 1999); *Fed. Ins. Co.* v. *Summers*, 403 F.2d 971, 975 (1st Cir. 1968); *Canty* v. *Arbella Mut. Ins. Co.*, 1998 WL 72817 (Mass. App. Div. Feb. 13, 1998); *Wengenroth* v. *Liberty Mut. Ins.*, 1990 WL 305999, at *2 (Mass. App. Div. Sept. 24, 1991) (finding that an insurance company establishes prima facie evidence of sending notices by producing an affidavit of its agent attesting to the same).

[4] In contrast, the cases on which Plaintiff primarily relies, *Campbell* v. *Gen. Dynamics Gov't Sys. Corp.*, 321 F. Supp. 2d 142 (D. Mass. 2004), 407 F.3d 546 (1st Cir. 2005) and *Waters* v. *Earthlink, Inc.*, 91 Fed. Appx. 697 (1st Cir. 2003), deal with very different fact patterns and were decided under law wholly irrelevant to this case. In *Campbell*, an employer sent notice of a newly implemented arbitration provision, which modified a prior written employment agreement, to his employees by email (in which the actual text of the arbitration clause was not included, but attached as a link). *Id*. at 144. In noting the insufficiency of the e-mail notice, the district court specifically stated that — unlike the present case — the defendant "sent no papers" to its employees informing them of the change. *Id*. at 148. More important, the First Circuit made it clear that the focus was on the employees' civil rights claims and "assuming … a valid contract under general principles of Massachusetts law," decided the case under the

The following facts are undisputed and dispositive of Plaintiff's 'no consent' and 'no waiver' claims:  Plaintiff enrolled in the Plan on July 15, 2002.  (HE Aff. at ¶ 5, Exs. 1, 2.)  From then until now, Plaintiff's recorded address has not changed:  1 Shandon Road, #215, Dorchester Center, MA 02124.  (*Id*. at ¶ 7, Exs. 1, 2; Amended Cmplt. ¶ 1.)  Everyone who enrolls as an insured under the Plan receives a standard "welcome packet."  As did Plaintiff.  Upon her enrollment, Plaintiff was sent, via U.S. mail, a "welcome packet" containing, among other things, a "welcome letter," a certificate of insurance and the Benefit Plan Description with the Plan's arbitration provision.  (*Id*. at ¶¶ 5-7, Ex. 2.)  Records kept in the ordinary course of business confirm that the "welcome packet" was mailed to Plaintiff.  (*Id*. at ¶¶ 3-7, Ex. 1.)  And since her enrollment, Plaintiff has been sent numerous correspondence, all via U.S. mail to the same address.  None of the correspondence has ever been returned as undeliverable for any reason.  (*Id*. at ¶¶ 7-9.)

Thus, under the "mailbox rule," Plaintiff had notice of the Plan's arbitration provision through her receipt of the Benefit Plan Description.  *See Hoefs*, 365 F. Supp. 2d at 72-74 (crediting testimony that an "arbitration amendment" was mailed to plaintiff in the normal course of business and that no mail sent to plaintiff had been returned).[5]

---

guidelines of the Americans with Disabilities Act ("ADA") and 42 U.S.C. § 12212 (concerning agreements to arbitrate under the ADA), neither of which are relevant here.

The *Waters* case is further distinguishable.  There, the court found that the agreement containing the arbitration provision appeared only through a link on an internet service provider's website. Finding no evidence that a customer of that provider would have or should have seen the link, the court determined that the plaintiff was not "on notice that he was bound to arbitrate any dispute he might have" with the provider, and therefore he could not have "agreed to arbitrate."  91 Fed. Appx. at 698.

[5]  In addition, under general contract law principles, Plaintiff is bound by the Benefit Plan Description, whether or not she chose to read its terms and conditions.  A person who accepts a written contract assents to and is bound by its terms, whether or not he or she read the contract or understood it.  *Kergald* v. *Armstrong Transfer Exp. Co*., 113 N.E. 2d 53, 54 (Mass. 1953); *see also* 35 Mass. Prac., Consumer Law § 1:7 (2d ed. 2005).

In addition, Plaintiff's 'no consent' and 'no waiver' claims fail because Plaintiff's continued enrollment in the Plan and payment of insurance premiums — *up to the present day*, long after her December 2002 accident and Federal's subsequent investigation and payment of her claim — evidences her acknowledgment of a contractual relationship with Federal and her assent to the Plan's terms.  *Hoefs*, 365 F. Supp. 2d at 73 (D. Mass. 2005); *see In re Boston Shipyard Corp.*, 866 F.2d 451, 455 (1st Cir. 1989) (explaining the various ways of ratifying a contract); *Mass. Linotyping Corp.* v. *Fielding*, 314 Mass. 47, 51 (1943) (finding "evidence of plaintiff's ratification" of an insurance contract "by its payment of the premiums on the policy for many years.").

Moreover, Plaintiff cites no authority for the proposition that plaintiffs can invent factual disputes in order to obtain a jury trial by submitting affidavits that deny familiarity with the arbitration provision at issue (Opposition at 8-9).  That is because they cannot.  Self-serving affidavits containing "hollow, bald assertions that do not approach fraud in the 'making' of the [arbitration agreement]… do not amount to the type of evidence required to call the 'making of the arbitration' agreement into question."  *Am. Heritage Life Ins. Co.* v. *Orr*, 294 F.3d 702, 709-711 (5th Cir. 2002) (citing *Bhatia* v. *Johnson*, 818 F.2d 418, 421-22 (5th Cir. 1987)); *see also Boulet* v. *Bangor Secs. Inc.*, 324 F. Supp. 2d 120, 127 (D. Me. 2004) (rejecting plaintiffs' demand for a jury trial regarding whether they agreed to arbitrate due to lack of evidence substantiating their factual allegations).

### B.      Federal Will Pay the Costs of Arbitration

Plaintiff cannot avoid arbitration by complaining about cost because Federal will pay for the total cost of arbitration in this case.  *See Mattox* v. *Decision One Mortgage Co.*, No. CIV.A. 01-10657-GAO, 2002 WL 31121087, at *3-4 (D. Mass. Sept. 26, 2002)

(finding that defendant's payment of the arbitration costs ends the debate and obligates plaintiff to arbitrate); *Fluehmann* v. *Assocs. Fin. Servs.*, No. CIV.A. 01-40076-NMG, 2002 WL 500564, at *9 (D. Mass. Mar. 29, 2002).  Moreover, the Supreme Court has rejected precisely the same unsupported assertions that Plaintiff's counsel has placed before the Court, especially in circumstances where, as here, the parties' agreement does not specify the arbitral forum.  *Green Tree Fin. Corp.-Ala.* v. *Randolph*, 531 U.S. 79, 90 n.6 & 91-92 (2000) (finding that an arbitration provision's "silence on the subject [of cost] is plainly insufficient to render it unenforceable," and rejecting respondent's unsupported assertions that arbitration would be cost prohibitive); *see* Opening Br. at 3 (quoting the Plan's arbitration provision); Donius Aff. at ¶¶ 3-5.

The authority on which Plaintiff relies is inapplicable.  (Opposition Br. at 10.)  *Shankle* v. *B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1232-34 (10th Cir. 1999), found fee-splitting arbitration provisions unenforceable, but in the specific context of employees attempting to vindicate federal anti-discrimination rights against the backdrop of mandatory arbitration agreements they entered into as a condition of continued employment.  Here, the Plan's arbitration provision is silent on the issue of fee-splitting and Federal will pay for the arbitration.  Nor does Plaintiff seek to vindicate certain anti-discrimination and employee or workplace rights under federal law.[6]

---

[6]    Similarly, *Perez* v. *Hospitality Ventures-Denver, LLC*, 245 F. Supp. 2d 1172 (D. Colo. 2003), and *Gourley* v. *Yellow Transp., LLC*, 178 F. Supp. 2d 1196 (D. Colo. 2001) — *Shankle's* progeny, both from a jurisdiction bound by Tenth Circuit law — dealt with fee-splitting arbitration provisions and employees asserting statutory claims.  Thus, they do not bear on the issues presented here.

C.        **Arbitration of Plaintiff's Claims Is Not Unconscionable or Unfair**

As demonstrated above, because Plaintiff was sent the Benefit Plan Description and because Federal will pay for the total cost of arbitration, there is no basis to conclude that arbitration would be unconscionable or unfair.  To the extent that Plaintiff argues that arbitration provisions in standard form contracts are unenforceable because they result in an involuntary and unconscionable waiver of a person's right to a jury trial (*see* Opposition at 7-9), the law states otherwise.

First Circuit law is clear that an arbitration provision is not unconscionable or unenforceable merely because it is part of a standard form contract.  Rather, courts look to "*both* the inequality of bargaining power (and thus the absence of meaningful negotiation over terms) *and* the oppressive nature of the substance of the agreement," focusing on the latter.  *Mattox*, 2002 WL 31121087, at *4 (finding that arbitration provisions in consumer contracts benefit consumers and enforcing the provision at issue; citing *Rosenberg* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1, 17-18 (1st Cir. 1999)) (emphasis in original).  Moreover, Plaintiff's 'no waiver' argument fails because Massachusetts courts have found jury waivers in standard form contracts to be enforceable.  *See Chase Commercial Corp.* v. *Owen*, 588 N.E. 2d 705, 707-09 (Mass. Ct. App. 1992).

II.    **THE ARBITRABILITY OF PLAINTIFF'S CLAIMS AGAINST AMERICAN EXPRESS HAS NO BEARING ON THE ARBITRABILITY OF HER CLAIMS AGAINST FEDERAL**

In our opening brief, we demonstrated that all of Plaintiff's claims are arbitrable.  Thus, no purpose would be served by staying this action; it should be dismissed as to Federal.  (Opening Br. at 7-8.)  Plaintiff responds by arguing that her claims against Defendant American Express Company ("American Express") are not arbitrable. (Opposition at 11-12.)  But regardless of whether Plaintiff's claims against American

8

Express are arbitrable, the Plan's arbitration provision *is* enforceable with respect to her claims against Federal.  That is because "federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement."  *Moses H. Cone Mem. Hosp.* v. *Mercury Constr. Corp.*, 460 U.S. 1, 19-21 (1983) (emphasis in original).  "Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement."  *Id.* at 20; *see New England Energy, Inc.* v. *Keystone Shipping Co.*, 855 F.2d 1, 6-7 (1st Cir. 1988); *Gonzalez* v. *GE Group Adm'rs., Inc.*, 321 F. Supp. 2d 165, 171 n.3 (D. Mass. 2004).[7]

---

[7]    The sole case cited by Plaintiff to support this point is entirely inapposite, concerning injunctive relief granted to officers of a corporation who were not bound individually by the corporation's arbitration agreement with a third-party manufacturer, facts which do not exist here.  *See Graham* v. *Smith*, 292 F. Supp. 2d 153 (D. Me. 2003).

## CONCLUSION

For the foregoing reasons, Federal is entitled to, and respectfully requests, the entry of an order (1) dismissing this action without prejudice, or, in the alternative, staying the proceeding in favor of arbitration, and (2) compelling Plaintiff to proceed with the arbitration of her claims.

Dated: Boston, Massachusetts
　　　July 26, 2005

FEDERAL INSURANCE COMPANY
By its Attorneys,

RIEMER & BRAUNSTEIN LLP

By:  */s/Mark W. Corner*＿＿＿＿＿＿＿
　　　　Mark W. Corner (BBO #550156)
　　　　Three Center Plaza
　　　　Boston, Massachusetts 02108
　　　　(617) 523-9000

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By:  */s/H. Christopher Boehning*＿＿＿＿
　　　　H. Christopher Boehning
　　　　Admitted *Pro Hac Vice*
　　　　1285 Avenue of the Americas
　　　　New York, New York 10019-6064
　　　　(212) 373-3000

10

## CERTIFICATE OF SERVICE

I, Mark W. Corner hereby certify that on this date, July 26, 2005, I caused to be served the foregoing document, along with the Affidavit of Joanna Ficklin in Support of Defendant Federal Insurance Company's Reply Memorandum of Law in Further Support of its Motion to Dismiss and Compel Arbitration, by electronic notice, upon the following counsel of record:

Kevin Donius, Esquire
Corcoran, FitzGerald & Hennessey
500 Granite Avenue
Milton, MA 02186

Allison M. O'Neil, Esquire
Craig & Macauley, P.C.
Federal Reserve Plaza
600 Atlantic Avenue
Boston, MA 02210

John F. Farraher, Jr., Esquire
Greenberg Traurig
One International Place
20th Floor
Boston, MA 02110

_/s/Mark W. Corner_____
Mark W. Corner

901204.1

11

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALTAGRACIA J. PEGUERO,

Plaintiff,

v.

AMERICAN EXPRESS COMPANY,
THE SKLOVER GROUP, INC. and
FEDERAL INSURANCE COMPANY,

Defendants.

Civil Action No. 05-10995-RCL

## AFFIDAVIT OF JOANNA FICKLIN IN SUPPORT OF DEFENDANT FEDERAL INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS AND COMPEL ARBITRATION

I, Joanna Ficklin, an adult resident of the State of Maryland, aver that I am competent to make this affidavit and state under oath as follows:

1.    I am the Director of Supplemental Benefits for HealthExtras, Inc. ("HealthExtras"). HealthExtras contracts with various insurers and other benefit providers to make available affordable supplemental health and disability benefit programs ("Programs") that its clients/marketing partners offer to their members and customers. Examples of these benefits include a catastrophic accidental permanent total disability insurance benefit underwritten by Federal Insurance Company and an emergency accident and sickness medical expense benefit underwritten by Virginia Surety Company, Inc. HealthExtras' services under these Programs primarily consists of issuing fulfillment materials to Program enrollees and the provision of some ongoing customer support services.

2.    I submit this Affidavit in support of Defendant Federal Insurance Company's Reply Memorandum of Law in Further Support of its Motion to Dismiss and Compel Arbitration and to place before the Court certain documents that were sent to plaintiff Altagracia J. Peguero.

3.    In my capacity as Director of Supplemental Benefits for HealthExtras, I have custody and control over the customer service records maintained by HealthExtras for people who elect to participate in the Programs. Those records are maintained in the ordinary course of business of HealthExtras and the entries in those records are made at, or near, the time of the events that the entries memorialize.

4.    I reviewed the customer service records maintained by HealthExtras for Altagracia Peguero and have attached a true and correct copy of the screen prints of those records for Ms. Peguero as Exhibit 1 to this Affidavit.

5.    The customer service records maintained by HealthExtras for Ms. Peguero reflect that she applied to enroll in one of the Programs offered through the American Express Company on July 15, 2002. Under the particular Program in which Ms. Peguero enrolled, which included an accidental permanent total disability benefit underwritten by Federal Insurance Company, HealthExtras sent her a new member "Welcome Packet", which included a welcoming letter, a 1-page plan summary, a 22-page benefit plan description detailing the coverages offered by the applicable insurers and an accompanying endorsement for Massachusetts residents. A copy of the Welcome Packet sent to Ms. Peguero at the time she enrolled is attached to this Affidavit as Exhibit 2.

6.    When a new member enrolls in a Program, a Welcome Packet is assembled, the enrollee's name and address are verified, and the Welcome Packet is

Doc #: NY7-592-1

thereafter delivered to the HealthExtras' mailroom for postage and mailing through the U.S. Postal Service. An entry is made in the member's record reflecting that the Welcome Packet was processed and mailed. In Ms. Peguero's case, our records indicate that her Welcome Packet was processed and mailed on July 16, 2002.

7.      The address to which Ms. Peguero's Welcome Packet was mailed was 1 Shandon Rd., #215, Dorchester Center, MA 02124. HealthExtras makes a record entry in its data base if any mailing is returned by the U.S. Postal Service as undeliverable. In Ms. Peguero's case, there is no record that the original mailing sent to her was ever returned to HealthExtras.

8.      Ms. Peguero has remained a member of the HealthExtras Program continuously from July 16, 2002 to the present, and has not notified us of a change in her address at any time. Our records further reflect that she is billed monthly for her membership through her American Express Card at the address reflected in paragraph 7 above.

9.      Further, there is no indication that Ms. Peguero or anyone representing her has called to change any of her enrollment information or to request any additional information concerning the Program in which she enrolled until an attorney representing her, Kevin Donius, contacted HealthExtras in January 2003. Mr. Donius advised HealthExtras of his representation of Ms. Peguero in relation to an incident that occurred on December 25, 2002, and requested a claim form and information concerning the benefits available under the particular Program in which she was enrolled. A second copy of Ms. Peguero's Welcome Package was then processed and sent on January 13, 2003 to Mr. Donius at the address he provided us.

3

Doc #:NY7 592.1

I hereby affirm, under the penalties of perjury that the contents of the foregoing Affidavit are true and correct to the best of my knowledge, information and belief.

Dated:  July 7, 2005

_Joanna C. Ficklin_
JOANNA FICKLIN

STATE OF MARYLAND      )
                             ) ss.
COUNTY OF MONTGOMERY   )

Sworn and subscribed to before me this 7th day of July, 2005.

Diana D. White
Notary Public, State of Maryland
My commission expires June 1, 2008.

4

# EXHIBIT 1

```
6/15/04                    CUSTOMER UPDATE                        HE027BO
17:07:30
Cust Id:      1731960    Account Stat: E  Last Chg: ENLIST    On:
Clr Gndr:                Contact Code: D  Orig. Crt: BGOREN2   On:
LastName: PEGUERO          F: ATLAGRACIA      Mid Init:    DOB: 6/20/196?
Spouse:                    F:                 Mid Init:    DOB:
Street1: 1 SHANDON RD. #215                   Billing Status: CURRENT
Street2:                                      Last Bill Date: 5/25/2004
City: DORCHESTER CENTER        State: MA    Zip: 02124-196?
Phone(H): 617-265-6780     Phone(W):
Email-id:

ProdCode: EO15 Client: AMEX2  Marketing code: KO8      30 Day:
A/Q/M: M  Pay Method: 1  CCNo:             CC Type:     Exp.Dt:
ABA code:              DDA Acct#:           AcctTyp:

Cust ref: 888404101389535      Cust.Svc:           Paid Thru: 6/30/2004
Enrldate: 8/01/2002        Pay Due Date:        Balance Due:       .00
Term. Date:               Next Bill Date: 6/22/2004 Billed Thru Date: 6/30/2004
    Enter=Update   F3=Exit    F4=Prompt   F7=History   F9=Notes   F10=Actions
    F11=Dependents F12=Cancel F14=Cvg hist F15=Addl Enr F17=Benefits F18=SB Empls
    F19=UNUM Qstn  F20=Term
```

**EXHIBIT 1**

```
 6/15/04                    CUSTOMER UPDATE                        HE027BO
 17:07:30
 Cust Id:      7741969      Account Stat: E   Last Chg: ENLIST      On:  711 200.
 Clr Gndr:                  Contact Code: B   Orig. Crt: BGOFENZ    On:  711 200.
 LastName: PEGUERO          F: ATLAGRACIA         Mid Init:       DOB: 6/26/1961
 Spouse:                    F:                    Mid Init:       DOB:
 ***************************************************************************
 *        1=Select C=Change D=Delete Enter=Accept F3=Exit F12=Cancel       *
 *                                      Position To Product code: EO15      *
 *                                      Position To Fulfill code:           *
 *                                                                          *
 *        Fulfillment Action                    Requested       Processed   *
 * A - EO15 WEL. PKG.-1.5 MILL DISABILITY        7/15/2002      7/16/200?   *
 * C4 - EO15-AD&D Claim Form Request             1/09/2003      1/10/2003   *
 *   A - EO15 WEL. PKG.-1.5 MILL DISABILITY      0/00/0000      0/00/0000   *
 *   AA- EO15 AMEX SPECIAL BILL LTR (ANNUAL)     0/00/0000      0/00/0000   *
 *   AB- EO15 AMEX SPECIAL BILL LTR (MONTHLY)    0/00/0000      0/00/0000   *
 *   B - EO15 2nd Request - Welcome Package      0/00/0000      0/00/0000   *
 *   C - EO15 Mispelled Name - New Certificate   0/00/0000      0/00/0000   *
 *   CM -EO15 -Welcome Packet Certified Mail     0/00/0000      0/00/0000  +*
 *                                                                          *
 ***************************************************************************
```

**EXHIBIT 1**

```
HE024BO Cust 123 1960 Last Name PEGUERO          First Name ATLAGRACIA
Bal Due      .00    S LastName                 S First Name
ProdCd E311 Client AMEX2  Cycle M Pay I Status E CURRENT   Paid Thru  6/30 2004
  Opt 2 = Disp Det  Opt 7 = Adjust New Billing Transactions Since    06/01/2004
      Sts Sbm Pay Due  Lst Sbm  Coverage  Coverage  Bill    Recv    Refnd   Due
Opt    No   Date     Date     From      To     Amnt    Amnt    Amnt   Amnt
      E  630                8/01/02  6/30/04  297.85  297.85    .00     .00
```

```
  Opt 2 = Display Detail          Old Billing Transactions Prior to 06/01/2004
    Submit  Bill  Resp  Rec Trn  Bill   Recv                         Sb Bil
Opt Date   Month Date  No  Typ  Amnt   Amnt  Authorization Code      No Dpt
    5/26/04 JUN-04 05/26 SM01 S  12.95  12.95  A100-APPROVED          1 A
    4/22/04 MAY-04 04/22 SM01 S  12.95  12.95  A100-APPROVED          1 A
    3/22/04 APR-04 03/22 SM01 S  12.95  12.95  A100-APPROVED          1 A
    2/23/04 MAR-04 02/23 SM01 S  12.95  12.95  A100-APPROVED          1 +
F3=Exit            F11=Unfold                  F12=Cancel F19=XOld F20=XNew
```

**EXHIBIT 1**

```
 6/15/04                    Expanded Old Billing Transactions                  HE024XOLBO
17:10:10              OLD BILLING TRANSACTIONS PRIOR TO 06/01/2004             BGOREN2
```

| Submit Date | Bill Month | Resp Date | Rec No | Trn Typ | Bill Amnt | Recv Amnt | Authorization Code | Sb No | Bil Dpt |
|---|---|---|---|---|---|---|---|---|---|
| 6/24/04 | JUN-04 | 05/26 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 5/24/04 | MAY-04 | 04/22 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 4/24/04 | APR-04 | 03/22 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 2/24/04 | MAR-04 | 02/23 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 1/24/04 | FEB-04 | 01/22 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 12/24/03 | JAN-04 | 12/23 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 11/24/03 | DEC-03 | 11/24 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 10/24/03 | NOV-03 | 10/23 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 9/24/03 | OCT-03 | 09/23 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 8/23/03 | SEP-03 | 08/22 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 7/24/03 | AUG-03 | 07/23 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 6/23/03 | JUL-03 | 06/23 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 5/22/03 | JUN-03 | 05/22 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 4/24/03 | MAY-03 | 04/24 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 3/24/03 | APR-03 | 03/24 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 2/24/03 | MAR-03 | 02/24 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 1/23/03 | FEB-03 | 01/23 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | A |
| 12/23/02 | JAN-03 | 12/23 | SM01 | S | 12.95 | 12.95 | A100-APPROVED | 1 | + |

```
F3=Exit                    F11=Unfolds                    F12=Cancel
```

**EXHIBIT 1**

```
  6/15/04                 Expanded Old Billing Transactions              HE024XOLBO
 17:10:10           OLD BILLING TRANSACTIONS PRIOR TO 06/01/2004         BGOREN2
   Submit    Bill   Resp  Rec  Trn   Bill    Recv                         Sb Bil
   Date     Month   Date  No   Typ   Amnt    Amnt  Authorization Code     No Dpt
  12/05/02  DEC-02 11/25  SM01  S    12.95   12.95 A100-APPROVED           1 A
  10/31/02  NOV-02 10/31  SM01  S    12.95   12.95 A100-APPROVED           1 A
   9/27/02  OCT-02 09/27  SM01  S    12.95   12.95 A100-APPROVED           1 A
   8/26/02  SEP-02 08/26  SM01  S    12.95   12.95 A100-APPROVED           1 A
   7/16/02  AUG-02 07/16  FM01  S    12.95   12.95 A100-APPROVED           1 A
                   00/00
```

F3=Exit                 F11=Unfolds                  F12=Cancel

**EXHIBIT 1**

```
  6/15/04                    CUSTOMER UPDATE                      HE027BO
  17:07:30
  Cust Id:      1741991    Account Stat: E   Last Chg: ENLIST       On:   7/15/2002
  Clr Gndr:                Contact Code: P  Orig. Crt: BGGREN?      On:   7/11/2002
  LastName: PEGUERO            F: ATLAGRACIA        Mid Init:      DOB:   2/21/1941
   Spouse:                     F:                   Mid Init:      DOB:
  Street1: 1 SHANDON RD. #215                    Billing Status:  CURRENT
  Street2:                                       Last Bill Date:  5/15/2004
    City: DORCHESTER CENTER          State: MA       Zip: 02124 - 1561
```

```
 *** NOTES ***              1=Create 2=View Expanded Note      F12=Cancel
   Date       UserID        Description
  7/11/2002  BDUVALL        View Only
                            ****CLAIM FILE CREATED****
  1/24/2003  KKEENETH       User-Typed notes
                            ATTORNEY CALLING AND TRANS. TO BARBARA
  1/27/2003  LCARROLL       View Only
  1/16/2003  VDARDEN        User-Typed notes
```

**EXHIBIT 1**

6/15/04 17:11:54          UPDATE EXPANDED NOTES              Pgm: HEO290RO

Customer Id. . . . . . .:    1731960          Date. . . . . . .:  9/11/2003
Last Name. . . . . . . .:  PEGUERO           Userid. . . . .:  BRIVALL
First Name . . . . . . .:  ATLAGRACIA
Description. . . . . . .:  View Only

                         Expanded Notes

****CLAIM FILE CREATED****

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**F3=Exit  F12=Cancel**

**EXHIBIT 1**

```
                            UPDATE EXPANDED NOTES            Pgm: REQ2080

                       : EsPooc                Date . . . : 12/24/2003
                       : PEGUERO               Userid . . : KENNETH
                       : ATLAGRACIA
                       : User-typed notes

                            Expanded Notes

ATTORNEY CALLING AND TRANS TO BARBARA
```

**F3=Exit  F12=Cancel**

**EXHIBIT 1**

UPDATE EXPANDED NOTES                    Pgm: HEO2980

                                              Date:    17/22/2003
PEGUERO                        User Id. :  LCARROLL
ATLAGRACIA
View Only

Expanded Notes

F3=Exit  F12=Cancel

**EXHIBIT 1**

UPDATE EXPANDED NOTES                    Prmt: HEO_7002

Customer no. . . . . . :    1749960              Date . . . . . . :   1/16/2003
Last name . . . . . . . :   PEGUERO              UserId. . . . :   VDARDEN
First name . . . . . . :    ATLAGRACIA
Description. . . . . . :    User-typed notes

                          Expanded Notes

F3=Exit   F12=Cancel

**EXHIBIT 1**

```
 6/15/04                      CUSTOMER UPDATE                    HE027BO
17:07:30
Cust Id:    17.1960    Account Stat: E   Last Chg: ENLIST      On:    .15/2001
Clr Gndr:             Contact Code: E   Orig. Crt: PGOREN.     On:    7.11/2002
LastName: PEGRERO             F: ATLAGRACIA       Mid Init:     DOB:   6.06.1961
 Spouse:                      F:                  Mid Init:     DOB:
 Street1: 1 SHANNON RD. #215                      Billing Status: CURRENT
 Street2:                                         Last Bill Date:  6/16/2004
    City: DORCHESTER CENTER        State: MA      Zip: 02124 - 1561
```

```
*** NOTES ***              1=Create 2=View Expanded Note       F12=Cancel
  Date      UserID        Description
 1/16/2003  BDUVALL       User-typed notes
                          I SPOKE W/ATTRNY KEVIN AND ADVD PLN DESCRPTN AND C
 1/16/2003  VDARDEN       User-typed notes
                          KEVIN CALLED/TRANSFERRED TO BARB
 1/14/2003  BDUVALL       View Only
                          PRINT TELEPHONE LOG/PROGRAM SUMMARY
 1/13/2003  BDUVALL       Member Services Letter Sent
                          AD&D(INJURY)CLAIM FORMS SNT TO KEVIN DONJUS/ATTRNY
```

**EXHIBIT 1**

4/17/94  17:12:37          UPDATE EXPANDED NOTES          Pgm: HE0298C

Customer Id. . . . . .: 1731960          Date. . . . .: 1/16/2003
Last name . . . . . . .: PEGUERO          User Id. . . .: PROVALL
First name . . . . . .: ATLAGRACIA
Description . . . . . .: User-typed notes

                    Expanded Notes

SPOKE W/ATTRNY KEVIN AND ADVD PLN DESCRPTN AND CLAIM FORM WS SNT ON 1/15TH

**F3=Exit   F12=Cancel**

**EXHIBIT 1**

1/16/2003 17:12:48          UPDATE EXPANDED NOTES                Pgm: BEOTXRG

Customer Id. . . . . :  1751960              Date. . . . . : 1/16/2003
Last name . . . . . :  PEGUERO              Userid. . . . : VDARDEN
First name . . . . . :  ATLAGRACIA
Description . . . . . :  User-typed notes

                          Expanded Notes

KEVIN CALLED/TRANSFERRED TO BARB

F3=Exit   F12=Cancel

**EXHIBIT 1**

```
6/3 /04 13:10:47        UPDATE EXPANDED NOTES        Fun: REO290 .

Customer ID. . . . . :      1731960            Date. . . . . . : 1/14/2005
List Name . . . . . .: PEGUERO               Userid. . . .: RDUVALL
First Name . . . . . .: ATLAGRACIA
Description . . . . . .: View Only

                        Expanded Notes
    .       .                                              .       .
PLETH  TELEPHONE LOG/PROGRAM SUMMARY
```

F3=Exit  F12=Cancel

**EXHIBIT 1**

UPDATE EXPANDED NOTES                    Fom: HE0290C

Last name . . . . . . : PEGUERO                    Date . . . . . : 1/13/2003
First name . . . . . . : ATLAGRACIA                Userid . . . : BDUVALL

Description . . . . . : Member Services Letter Sent

                        Expanded Notes

(DATE/INJURY) CLAIM FORMS SNT TO KEVIN DONIUS/ATTRNY/BAGLEY&BAGLEY; PLN DESCRPTN
INCLUDED

F3=Exit   F12=Cancel

**EXHIBIT 1**

```
  6/15/04                 CUSTOMER UPDATE                    HE027BO
 17:07:30
 Cust Id:     ......        Account Stat: E  Last Chg: ENLIST     On:    ......
 Clr Gndr:                  Contact Code: !  Orig. Crt: BGOREN.   On:    ......
 LastName: LEGUERO          F: ATLAGRACIA          Mid Init:      DOB:  ......
   Spouse:                  F:                     Mid Init:      DOB:
 Street1: 1 CHANDON RD. #214                Billing Status: CURRENT
 Street2:                                   Last Bill Date: 5/26/2004
    City: DORCHESTER CENTER        State: MA      Zip: 02124 - 1961
```

```
 *** NOTES ***                    1=Create 2=View Expanded Note      F12=Cancel
  Date        UserID       Description
   1/09/2003  BDUVALL      User-typed notes
                           SND CLAIM FORMS AND PLN DESCRPTN TO ATTRNY
   1/09/2003  BDUVALL      Fulfillment Item Added
                           C4-- EOTG-AD&D Claim Form Request          REQUES
   1/09/2003  BDUVALL      User-typed notes
                           PER LETTER RECVD BY ATTRNY;KEVIN DONIUS-MMBR LOST
   1/08/2003  NTANTUM      User-typed notes
                           SEE NOTES
```

**EXHIBIT 1**

```
4/09/04 17:13:09         UPDATE EXPANDED NOTES              Iqr: HEO/985

Customer #. . . . . .:   1741960              Date . . . . . :  1/09/2004
Last Name . . . . . .:   PEGUERO              Userid. . . . :  BDUVALL
First Name. . . . . .:   ATLAGRACIA
Description. . . . . .:  User-typed notes

                        Expanded Notes

SGL CLAIM FORMS AND PLN DESCRPTN TO ATTRNY
```

F3=Exit   F12=Cancel

**EXHIBIT 1**

```
                              UPDATE EXPANDED NOTES                Pam: HEG29R6

Customer Id. . . . . .:    1731960          Date. . . . .:   1/09/2003
Last name . . . . . . .:   PEGUERO          Userid. . . .:   RODVALL
First name. . . . . .:     ATLAGRACIA
Description. . . . . .:    * Fulfillment Item Added

                              Expanded Notes

4-- FJF-AD&D Claim Form Request            REQUEST-20030109 PROCESS-00000000
```

F3=Exit  F12=Cancel

**EXHIBIT 1**

UPDATE EXPANDED NOTES                    Form: HE02798C

Customer ID . . . . . . .: 1731960          Date . . . . .: 1/09/2003
Last name . . . . . . . .: PEGUERO          Userid . . . .: BOUVALE
First name. . . . . . . .: ATLAGRACIA
Description . . . . . . .: User-typed notes

Expanded Notes

SEE LETTER RECVD BY ATTRNY;KEVIN DONIUS-MMBR LOST RIGHT ARM IN MOTOR VEHICLE
ACCIDENT ON 12/25/02; NOTES:DO NOT ATTEMPT TO CONTACT MMBR/SND ALL CORRESPONDENCE
TO HIM.
FAXED TOTAL DISABILITY DEF TO ATTRNY PER REQST

F3=Exit   F12=Cancel

**EXHIBIT 1**

6/15/04  17:14:38          UPDATE EXPANDED NOTES              Fqm: HEGC1Ba

                                   1741660              Date: . . . : 1/08/2003
                             : PEGUERO              Userid. . . : NTARTOM
                             : ATLAGRACIA
Description . . . . . . : User-typed notes

                              Expanded Notes

SEE NOTE:

F3=Exit   F12=Cancel

**EXHIBIT 1**

```
 6/15/04                        CUSTOMER UPDATE                      HE027BO
17:07:30
 Cust Id:    ???????    Account Stat: E   Last Chg: ENLIST        On: ?/15/200?
 Clr Gndr:              Contact Code: ?  Orig. Crt: BGORENA       On: ?/11/200?
 LastName: PEGUERO            F: ATLAGRACIA     Mid Init:   DOB: ?/2?/19?1
  Spouse:                     F:               Mid Init:   DOB:
 Street1: ? HANLON RD, ????            ?????   Billing Status: CURRENT
 Street2:                                      Last Bill Date: ?/2?/2004
   City: DORCHESTER CENTER          State: MA        Zip: 02124 - 1561
```

```
* *** NOTES ***              1=Create 2=View Expanded Note      F12=Cancel
   Date        UserID        Description
   1/05/2003  NTANTUM        User-typed notes
                             RECEIVED FAX FROM ATTORNEY REGARDING HANDLING CASE
   1/0?/2003  JVASQUEZ       User-typed notes
                             ATTORNEY CALLED TO INQ ABOUT BNFT AMNT FOR ADD
   1/05/2003  NTANTUM        User-typed notes
                             TTORNEY WILL BE FAXING OVER INFO REGARDING ACCIDE
   7/15/2002  ENLIST         * Customer enrolled thru ENLIST
```

**EXHIBIT 1**

6/15/04 17:13:45          UPDATE EXPANDED NOTES                Pgm: HEO.79BQ

Customer Id. . . . . . .:     1731960            Date. . . . .:  1/08/2003
Last name . . . . . . . .: PEGUERO              Userid. . . .: NTANTUM
First name . . . . . . .: ATLAGRACIA
Description. . . . . . .: User-typed notes

                         Expanded Notes

RECEIVED FAX FROM ATTORNEY REGARDING HANDLING CASE FOR MEMBER.   HE IS REQUESTING
A POLICY SUMMARY TO BE FAXED TO HIM AT 617 241-7839.  SENT EMAIL TO BARBARA

**F3=Exit   F12=Cancel**

**EXHIBIT 1**

```
                      UPDATE EXPANDED NOTES                 Fom: HEO.5980

Customer Id. . . . . .: 1731968            Date. . . . .: 1/07/2003
Last Name . . . . . . : PEGUERO           Userid. . . .: JVASQUEZ
First Name  . . . . . : ATLAGRACIA
Description . . . . . .: User-typed notes
                          Expanded Notes

ATTORNEY CALLED TO INQ ABOUT BNFT AMNT FOR ADD
PD IF FAXED WAS RCVD ADVCD NO NOTES INDICATE THAT, HE WILL CALL BACK TO FOLLOW
UP
```

**F3=Exit   F12=Cancel**

**EXHIBIT 1**

6/15/04 17:14:06        UPDATE EXPANDED NOTES        Form: HEO296C

Customer Id. . . . . .: 1743966            Date. . . . .: 1/06/2003
Last name. . . . . . .: PEGUERO            Userid. . . .: HTANTUM
First name . . . . . .: ATLAGRACIA
Description. . . . . .: User typed notes

                        Expanded Notes:

PROPHET WILL BE FAXING OVER INFO REGARDING ACCIDE

F3=Exit   F12=Cancel

**EXHIBIT 1**

6/15/04 17:14:13          UPDATE EXPANDED NOTES          Pgm: HE029BO

Customer Id. . . . . .: 1731960          Date. . . . .: 7/15/04?
Last Name. . . . . . .: PEGUERO          Poc Id. . . .: ENLIST
First Name . . . . . .: ATLAGRACIA
Description. . . . . .: * Customer enrolled thru ENLIST

                    Expanded Notes

F3=Exit  F12=Cancel

**EXHIBIT 1**

# EXHIBIT 2

Atlagracia Peguero
1 Shandon Rd. #215
Dorchester Center, MA 02124

Dear Atlagracia Peguero:

No one likes to think about accidents. But, they can happen to anyone, at any time. That's why your decision to enroll in the Accidental Disability Plan *from* American Express* was an exceptionally prudent one.

You've taken an important step toward easily and economically protecting your assets. This plan will pay you a $1.5 million lump sum benefit in the event that a catastrophic accident leaves you totally and permanently disabled, and unable to work.

Though you probably have health insurance to cover your medical bills, the Accidental Disability Plan *from* American Express offers you coverage for the day-to-day expenses that still require your attention. You can use the money for anything you wish including your mortgage, car payments, utility bills, and groceries, as well as the medical expenses your health insurance may not pay.

Your plan also provides you with the following valuable benefits:

▸ **$1,000 Accidental Death & Dismemberment (AD&D) Benefit** (additional coverage of up to $100,000 is available with no medical exam or health questions asked – see upgrade form below)

▸ **$2,500 Emergency Accident and Sickness Medical Benefit** provides reimbursement up to $2,500 per family ($500 maximum per family member) per year for coinsurance and deductible expenses for medical care received more than 100 miles from home. If you do not have insurance, you are reimbursed up to $100 per day of medical care to a maximum of $500 per family member per year.

▸ **Medical Care Coordination** is available to assist you in evaluating care options and obtaining appropriate medical treatment at competitive prices in the event you become permanently disabled.

I'm sure you'll find it reassuring to know that these valuable resources are at your disposal should you ever need them. Please see the enclosed Benefit Plan Description for complete details. Now you can enjoy the peace of mind that comes with knowing you've taken an important step to protect yourself and your loved ones. Thank you for enrolling.

Sincerely,

*Anne Schepp*

Anne Schepp
Insurance Officer

**P.S.** As a valued customer, <u>you can increase your AD&D Benefit</u>, and you are <u>guaranteed</u> to receive the additional coverage - No medical exam is required! Simply complete and return the enrollment form in the enclosed postage-paid envelope or call 1-888-668-9035.

*$1.5 Million Accidental Disability Benefit underwritten by Federal Insurance Company; $2,500 Emergency Accident and Sickness Medical Benefit underwritten by Virginia Surety Company, Inc.*



GEN-1751



☑ **Yes!** Please increase my Accidental Death & Dismemberment (AD&D) coverage to $100,000 for only $6.95 per month.

EXHIBIT 2



"In an instant, an accident can change your life.

Now it doesn't have to bankrupt your family."

— Christopher Reeve

☑ **Yes!** Please increase my Accidental Death & Dismemberment (AD&D) coverage to $100,000 for only $6.95 per month.

1731960
Allagracia Peguero                    ADU
1 Shandon Rd. #215
Dorchester Center, MA 02124

**X** _____
Please sign here

**Send no money!** Your increased coverage will be added to your Accidental Disability Plan and will be conveniently billed to your American Express® Card. If you do not wish to increase your coverage, you do not need to return this form.

**EXHIBIT 2**

## THESE ADDITIONAL VALUABLE BENEFITS ARE INCLUDED WITH YOUR PLAN:

**$2,500 Emergency Accident & Sickness Medical Expense Benefit** (per family) — If you, your spouse, or your dependent children are 100 miles or more from your home and suddenly require medical attention as a result of an accident or an illness, we will reimburse you up to $2,500 ($500 maximum per family member) per year for co-insurance and/or deductible expenses. If you do not have health insurance, up to $100 per day of medical care will be paid directly to you instead to a maximum of $500 per family member per year. Should you use this benefit even once, it could amount to hundreds of dollars in savings.

**Medical Care Coordination Benefit** — In the event you become permanently disabled, a medical care coordinator will be available to help you evaluate care options and provide guidance and assistance in obtaining appropriate medical treatment.

## IMPORTANT DISCLOSURE:

Please read carefully. The accidental disability policy provides you with a $1 million or $1.5 million benefit (based on your selection) for catastrophic accident disability situations only and includes an Accidental Death and Dismemberment benefit of up to $100,000 (based on your selection). **Accidental Permanent Total Disability:** All benefits subject to the terms, conditions, definitions, limitations and exclusions, including pre-existing condition provisions, as set forth in master policy no. 6475 26 11 issued by Federal Insurance Company (Rated "A++" (Superior) by A.M. Best) to Citizens Bank of Rhode Island, as Trustees for G.A.R.D. Trust for the account of HealthExtras/American Express, and as summarized in the American Express Accidental Disability Plan Benefit Plan Description. Written proof of a total permanent disability resulting from an accidental injury which (1) commences within 365 days of the date of the accidental injury, (2) continues without interruption for at least a year from the date the total permanent disability commences, (3) results in the entire and irrecoverable loss of use of both hands or both feet, or one hand and one foot, or the sight of both eyes, or the hearing of both ears, or the ability to speak, and (4) prevents the insured from returning to work must be provided. **Must be over age 18 and less than 70 to be eligible.** There is no insurance coverage at age 70 or over. Exclusions: This insurance does not cover loss resulting from an Insured's emotional trauma, mental or physical illness, disease, pregnancy, childbirth or miscarriage, bacterial or viral infection (except bacterial infection caused by an accident or from accidental consumption of a substance contaminated by bacterial, or bodily malfunctions, suicide, attempted suicide or intentionally self-inflicted injuries, declared or undeclared war. This insurance also does not apply to an accident occurring while an Insured is in, entering or exiting any aircraft while acting or training as a pilot or crew member, participating in military service, committing or attempting to commit a criminal act, being intoxicated or under the influence of any narcotic unless taken on the advice of a physician, participating in any professional sport, or participating in parachute jumping from an aircraft. Pre-existing Condition: This insurance does not apply to Loss caused by or resulting from an illness, disease or accidental injury of the insured person for which medical advice, diagnosis, care or treatment was recommended or received within 6 months prior to the effective date of coverage. A pre-existing condition will not be excluded after 12 months has elapsed from the effective date of the insured's coverage. **Additional Program Benefits:** A $2,500 Emergency Accident and Sickness Medical Expense Benefit and a Medical Care Coordination Benefit will be provided in your benefit package. **Other Disclosures:** The $2,500 Emergency Accident and Sickness Medical Expense Benefit is underwritten by Virginia Surety Company, Inc. (Rated "A++ (Superior) by A.M. Best) under Travel Protection Policy 4TP00137. Insurance offered through The Skloff Group, Inc., 400 Post Avenue, Westbury, NY 11590. **Not a Medicare Supplement.** Program may not be available in all states. Coverage is effective on the first day of the month following receipt of payment from you. Program available through HealthExtras, 2273 Research Boulevard, Rockville, MD 20850. **Annuity Option:** At the time of benefit payment, you may elect an annuity option arranged by HealthExtras. For $1 million benefit a $500,000 cash payment plus $5,000 a month for 20 years, for a total of $1.7 million, or for $1.5 million benefit a $500,000 cash payment plus $7,500 a month for 20 years, totaling $2.3 million. Payments made for endorsement. This literature is descriptive only. Actual coverage is subject to the language of the master policy as issued.

Program subject to change. This program may be modified, suspended, cancelled or otherwise terminated with notice.

GEN 1201



# EXHIBIT 2



**Cards**

# Accidental Disability Plan
# *from* American Express
# Plan Summary

**Member Number: 1731960**

**Effective Date: 08/01/2002**

## This Plan Summary is hereby issued to:

**Atlagracia Peguero
1 Shandon Rd. #215
Dorchester Center, MA  02124**

as the Plan Member(s).  This certifies that, in return for the Member's application and payment of plan fees when due, the plan will provide to the Member the following benefits, subject to terms and conditions described in the Benefit Plan Description and in the Master Policies noted below:

- ❖ **$1,500,000 Catastrophic Injury and Accidental Disability Benefit,** underwritten by Federal Insurance Company, a member of the Chubb Group of Insurance Companies, under the Voluntary Accident Insurance Plan Policy 6475 26 11

- ❖ **$1,000 Accidental Loss of Life Benefit,** underwritten by Federal Insurance Company, a member of the Chubb Group of Insurance Companies, under the Voluntary Accident Insurance Plan Policy 6475 26 11

- ❖ **$2,500 Emergency Accident and Sickness Medical Expense Benefit,** underwritten by Virginia Surety Company, Inc. under the Travel Protection Policy HTP00137

- ❖ **Medical Care Coordination** is a service available to you under your plan

## For Customer Service, please call:

## 1-888-668-9035

**Accidental Disability Plan** *from* **American Express**
2273 Research Boulevard, 2nd Floor • Rockville, MD  20850
Fax 1-800-963-4434

**EXHIBIT 2**



**American Express Accidental Disability Plan
Benefit Plan Description**

## FOR MASSACHUSETTS RESIDENTS ONLY

*Amendatory Endorsement*

In the Contract, Section VII – Common Policy Conditions, the Physical Examination and Autopsy policy condition is deleted in its entirety and replaced with the following:

*Physical Examination*

We have the right to have the **Insured Person** examined by a **Physician** approved by us, as often as reasonably necessary while a claim is pending. Any examinations that we require will be done at our expense.

44-02-1422-MA (Ed. 8-96)

**EXHIBIT 2**

Accidental Disability Plan *from* American Express
2575 Research Boulevard, 2nd Floor • Rockville, MD 20850
Customer Service 1-888-6668-9035
Fax 1-800-963-4434

CDADPTD13M1-ADAD0102

# Accidental Disability Plan *from* American Express

Benefit Plan Description

NOTE: Read carefully and keep with your valuable documents

**AMERICAN EXPRESS** Cards

**EXHIBIT 2**

# Accidental Disability Plan *from American Express*
# Benefit Plan Description Overview

Under your plan, you are offered the following benefits

❖ **$1.5 Million Accidental Disability Plan**
   (Permanent Total Disability Lump Sum Benefit)

❖ **Additional Benefits**
   - $1,000 Accidental Loss of Life (AD&D) Benefit
   - $2,500 Emergency Accident and Sickness Medical Expense Benefit
   - Medical Care Coordination Benefit

This overview was developed to help you understand your benefits including the Certificate of Insurance Declarations, the Certificate of Insurance Contract and other sections that follow). Please read carefully.

## SECTION                                                                    PAGE

*Certificate of Insurance Declarations*
Defines Insured Person and lists benefit amounts for your Permanent Total
Disability Lump Sum Benefit and your AD&D Benefit.                              1

*Certificate of Insurance Contract*
Sections I - VII (pages 4-16) contain the major provisions of your Permanent
Total Disability Lump Sum and AD&D Benefits. It describes the coverage,
definitions, exclusions, limitations and payment should you suffer a loss under
this plan                                                                      4

*$2,500 Emergency Accident and Sickness Medical Expense Benefit*
Contains the major provisions of your $2,500 Emergency Accident and
Sickness Medical Expense Benefit. It describes the coverage, definitions,
exclusions, limitations and payment terms under this plan.                     17

*Medical Care Coordination Benefit*
Includes a description of this service.                                        22

---

Please read this and, if you enroll, please keep it in a safe place with your other
insurance documents. This summary is not a contract of insurance but is simply an
informative statement of the principal provisions of the insurance while in effect
Complete provisions pertaining to this plan of insurance are contained in the master
policies on file with the policyholder. If this insurance plan does not conform to your
state statutes, it will be amended to comply with such laws. If a statement in this
booklet and any provision in the policy differ, the policy will govern.

Plan arranged by

*The Shiwer Group, Inc.*

*400 Post Avenue, Suite 193*

*Westbury, NY 11590-2220*

Accidental Disability and Accidental Loss of Life Insurance
underwritten by

Federal Insurance Company
A member insurer of the
Chubb Group of Insurance Companies
15 Mountain View Road, P.O. Box 1615
Warren, NJ 07061

$2,500 Emergency Accident and Sickness Medical Expense Benefit
underwritten by

Virginia Surety Company, Inc.
Executive Offices
123 North Wacker Drive
Chicago, IL 60606

**EXHIBIT 2**

# Certificate of Insurance
## Declarations

*Policyholder's Name and Mailing Address*
Citizens Bank of Rhode Island as Trustee for G.R.D. Trust
for the Account of HealthExtras-American Express
One Citizens Plaza
Providence, RI 02903-1339

| | |
|---|---|
| *Policy Number* | SC75-20-13 |
| *Effective Date* | August 1, 2004 |
| *Anniversary Date* | August 1 |
| *Producer Number* | 65542 |
| *Producer* | The Sklover Group, Inc. |
| | 490 Post Avenue, Suite 135 |
| | Westbury, NY 11590-2276 |

## Section I – Policy Period

From August 1, 2004          To until terminated
12:01 A.M. standard time at the Policyholder's address shown above

## Section II – Insured Persons

The following are the Insured Persons under this policy.

| Class | Description |
|---|---|
| IA | All eligible Accountholders of the Policyholder for whom the Accountholder elects individual coverage and pays the required premium |
| IB | All eligible Accountholders of the Policyholder and their spouses for whom the Accountholder elects individual plus spouse coverage and pays the required premium. |

If a person has coverage for a specific Loss as both an Insured Person and a Primary Insured Person, only one Benefit Amount applicable to that Loss will be paid. If one Benefit Amount is larger, the larger Benefit Amount will be paid and premium for the lesser Benefit Amount will be refunded. If the Benefit Amounts are equal, one Benefit Amount will be paid and premium for the remaining Benefit Amount will be refunded.

## Section III – Hazards

The following are the Hazards for which coverage applies

*Hazards*
24 Hour Business and Pleasure

*Form Number*
44-02-100-2 Ed 6 95

---

## Section IV – Benefit Amounts

The following are Losses covered and subject to the Multiple Losses Maximum Payment provision.

### A.  PERMANENT TOTAL DISABILITY LUMP SUM BENEFIT

| Benefit Amount | Elimination Period |
|---|---|
| $1,500,000 | 365 days |

#### PERMANENT BENEFIT AMOUNTS

The following are Permanent Total Disability Lump Sum Benefit Amounts

| Permanent: | Percent of Loss of 1 x Benefit Amount |
|---|---|
| Loss of Use of One Hand and One Foot | 75% |
| Loss of Use of Both Hands or Both Feet | 100% |
| Loss of Sight of Both Eyes | 100% |
| Loss of Hearing in Both Ears | 75% |
| Loss of Speech | 75% |

### B.  ACCIDENTAL LOSS OF LIFE (AD&D) BENEFIT AMOUNT

The AD&D Benefit Amount and Class are as follows

| Class | Benefit Amounts |
|---|---|
| IA | $1,000 |
| IB | $1,000 |

#### ACCIDENTAL BENEFIT AMOUNTS

The following are Accidental Loss Benefit Amounts

| Accidental: | Percent of AD&D Benefit Amount |
|---|---|
| Loss of Life | 100% |
| Loss of Speech and Loss of Hearing | 100% |
| Loss of Speech and Loss of One of: Hand, Foot, or Sight of an Eye | 100% |
| Loss of Hearing and Loss of One of: Hand, Foot, or Sight of an Eye | 100% |
| Loss of Both Hands, Loss of Both Feet, Loss of Sight of Both Eyes or a Combination of Any Two of: Loss of a Hand, a Foot, or Loss of Sight of an Eye | 100% |
| Loss of One Hand, Loss of One Foot or Loss of Sight of an Eye | 50% |
| Loss of Speech or Loss of Hearing | 50% |
| Loss of Thumb and Index Finger of the Same Hand | 25% |

---

1

2

**EXHIBIT 2**

# Certificate of Insurance
## Contract

### READ YOUR CERTIFICATE CAREFULLY.

This certificate contains the major provisions of the policy. It describes the coverage, definitions, exclusions, limitations and payment of loss. This certificate replaces all prior certificates issued to the Insured Person for the policy.

Words and phrases that appear in bold print have a special meaning and are defined in the Definitions section(s) of this certificate. Defined terms include the plural.

Throughout this certificate the words "you" and "your" refer to the Policyholder shown in the Declarations of the policy. The words "we", "us" and "our" refer to the Company providing this insurance.

## Section I – Coverage

We will pay the applicable Benefit Amount if an Accident results in a Loss not otherwise excluded. The Accident must result from a covered Hazard and occur during the policy period. The Loss must occur within one (1) year of the Accident.

### Effective Date of Individual Coverage

Coverage for the Insured Person becomes effective on the latest of:
1) the effective date of the policy; or
2) the beginning of the period for which premium is paid for the Insured Person; or
3) the date on which a person meets the definition of Insured Person.

### Termination of Individual Coverage

Coverage for the Insured Person automatically terminates on the earliest of:
1) the termination date of the policy; or
2) the expiration of the period for which premium has been paid for the Insured Person; or
3) the date on which a person no longer meets the definition of Insured Person.

## Section II – Extensions of Coverage

Extensions of Coverage are subject to the provisions of Section I of the Contract, Coverage, and all other policy terms and conditions.

### Permanent Total Disability Lump Sum

If Accidental Bodily Injury causes the Primary Insured Person to have a Permanent Total Disability that is continuous during the period for which Permanent Total Disability Benefit Amounts are payable, then after the Elimination Period we will pay the Permanent Total Disability Lump Sum Benefit Amount shown in the Declarations.

---

## DOMESTIC PARTNER

Whenever the term "spouse" is used in the policy, the term includes Domestic Partner. The Primary Insured Person and the Domestic Partner agree to provide additional information and documentation as may be required to substantiate the relationship and eligibility for coverage under the policy.

Domestic Partner Coverage applies.

Coverage only applies for the Class(es), Hazard(s), Benefit Amounts and Losses that are specifically indicated as covered.

4440-55461 (1-01) W 001

**EXHIBIT 2**

Where the term "Primary Insured Person" is used in the Permanent Total Disability Lump Sum Endorsement, the term includes Covered Person.

## Disappearance

If the Insured Person has not been found within one (1) year of the disappearance, stranding, sinking, wrecking or breakdown of any conveyance in which the Insured Person was covered as an occupant at the time of the Accident, it will be assumed, subject to all other terms of the policy, that the Insured Person has suffered Loss of Life covered under the policy.

## Exposure

If an Accident resulting from a Hazard causes the Insured Person to be unavoidably exposed to the elements and as a result of such exposure the Insured Person has a Loss, such Loss will be covered under the policy.

## Section III – Multiple Losses Maximum Payment

For those Losses identified in the Declarations as subject to the Multiple Losses Maximum Payment provision, if an Insured Person has multiple Losses as the result of one Accident, we will pay only the single largest Benefit Amount applicable.

## Section IV – Territory

This insurance applies worldwide.

## Section V – Exclusions

Permanent Total Disability coverage does not apply to persons age seventy (70) or older on the date of the Loss.

## Aircraft Owned, Leased or Operated

This insurance does not apply to Loss occurring while an Insured Person is in, entering, or exiting any aircraft owned, leased or operated by the Policyholder or on behalf of the Policyholder.

## Aircraft Pilot or Crew

This insurance does not apply to Loss occurring while an Insured Person is in an aircraft while acting or training as a pilot or crew member.

This exclusion does not apply to passengers who temporarily perform pilot or crew functions in a life-threatening emergency.

## Criminal Activity

This insurance does not apply to Loss occurring while the Insured Person is committing a criminal act, or attempting to commit a criminal act.

## Disease or Illness

This insurance does not apply to Loss caused by or resulting from an Insured Person's congenital trauma, mental or physical illness, disease, pregnancy, childbirth or miscarriage, bacterial or viral infection, or bodily malfunctions.

This exclusion does not apply to Loss resulting from an Insured Person's bacterial infection caused by an Accident or from Accidental consumption of a substance contaminated by bacteria.

## Intoxication and Narcotic Influence

This insurance does not apply to Loss caused by or resulting from the Insured Person being intoxicated, as defined by the laws of the jurisdiction where the Loss occurred, or under the influence of any narcotic unless taken on the advice of a Physician and used in accordance with the prescription.

## Military Service

This insurance does not apply to Loss occurring while the Insured Person is participating in military service duties of any state, country, or international authority.

## Parachute Jumping

This insurance does not apply to Loss caused by or resulting from the Insured Person participating in parachute jumping from an aircraft.

## Pre-Existing Condition

This insurance does not apply to Loss caused by or resulting from a Pre-Existing Condition. A Pre-Existing Condition means illness, disease or Accidental injury of the Insured Person for which medical advice, diagnosis, care or treatment was recommended or received within the six (6) months prior to the effective date of Insured Person's coverage under this policy. A Pre-Existing Condition will not be excluded after twelve (12) months has elapsed from the effective date of the Insured Person's coverage.

## Professional Sporting Activity

This insurance does not apply to Loss caused by or resulting from the Insured Person participating in any professional sporting activity for which the Insured Person received a salary, or prize money as a substantial part of their income.

## Suicide or Intentional Injury

This insurance does not apply to suicide, attempted suicide or loss that is intentionally self-inflicted.

## War

This insurance does not apply to Loss caused by or resulting from a declared or undeclared War. Declared or undeclared War does not include acts of terrorism.

**EXHIBIT 2**

## Section VI – Definitions

### Accident or Accidental

Accident or Accidental means a sudden, unforeseen, and unexpected event which happens by chance, arises from a source external to the Insured Person, is independent of illness, disease or other bodily malfunction and is the direct cause of loss.

### Accidental Bodily Injury

Accidental Bodily Injury means bodily injury, which is Accidental and the direct cause of a Loss.

### Accountholder(s)

Accountholder(s) means a holder, authorized by the Policyholder, of a valid credit card account, bank account, or mortgage with the Policyholder.

### Benefit Amount

Benefit Amount is the amount shown in Section IV of the Declarations applicable to the Loss.
1) at the time of the Accident; and
2) to the Insured Person who has the Loss

### Class

Class means the persons described in Section II of the Declarations, Insured Persons

### Company

Company means Federal Insurance Company.

### Dependent Child or Children

Dependent Child or Children means those children, including adopted children and those children placed for adoption, who are primarily dependent upon the Insured Person for maintenance and support, and who are

1) under the age of nineteen (19) and reside with the Insured Person, or
2) beyond the age of nineteen (19), permanently mentally or physically challenged, and incapable of self-support, or
3) under the age of twenty-five (25) and classified as full-time students at an institution of higher learning

### Domestic Partner

Domestic Partner means a person designated in writing at enrollment by the Primary Insured Person, who is at least eighteen (18) years of age, and who throughout the past twelve (12) months

1) has been in a committed relationship with the Primary Insured Person's sole spousal equivalent, and
2) has been the Primary Insured Person's sole spousal equivalent, and

3) has resided in the same household as the Primary Insured Person, and
4) has been jointly responsible with the Primary Insured Person for each other's financial obligations.

and who intends to continue the relationship described above undefined;

### Elimination Period

Elimination Period means the number of consecutive days of any Primary Insured Person's Permanent Total Disability that must elapse before Permanent Total Disability benefits become payable. The Elimination Period is shown in the Declarations. Permanent Total Disability benefits are not payable, nor do they accrue, during an Elimination Period

### Hazard

Hazard means the covered circumstances for which this insurance is provided as stated in Section III of the Declarations and described in the Hazard form.

### Insured Person

Insured Person means a person described as a Class member in Section II of the Declarations
1) who elects coverage, or
2) for whom coverage is elected,

and on whose behalf premium is paid

### Loss of Use

Loss of Use means the permanent and total inability of the specified body part to function, as determined by a Physician.

The following definitions of Loss of Use apply to Section IV.A of the Declarations, PERMANENT TOTAL DISABILITY LUMP SUM BENEFIT:

### Loss of Use of Hand

Loss of Use of Hand means the Loss of Use at or above the knuckle joints of at least four (4) fingers on the same hand or at least three (3) fingers and the thumb of the same hand.

### Loss of Use of Foot

Loss of Use of Foot means the Loss of Use of the foot at or above the ankle joint

### Loss of Sight of Both Eyes

Loss of Sight of Both Eyes means the permanent loss of vision in both eyes. Remaining vision in both eyes must be no better than 20/200 using a corrective aid or device, as determined by a Physician

**EXHIBIT 2**

### Loss of Hearing of Both Ears

Loss of Hearing of Both Ears means the permanent, irrecoverable and total deafness of both ears to the extent that the deafness cannot be corrected by any aid or device, as determined by a Physician.

### Loss of Speech

Loss of Speech means the permanent, irrecoverable and total loss of the capability of speech without the aid of mechanical devices, as determined by a Physician.

### Loss

Loss means the types of Accidental Bodily Injuries listed in Section IV of the Declarations for which the policy provides coverage.

The following definitions of Loss apply to Section IV.B of the Declarations, AD&D BENEFIT AMOUNTS:

### Loss of Speech

Loss of Foot means the complete severance through or above the ankle joint. We will consider it a Loss of Foot even if the foot is later reattached.

### Loss of Foot

Loss of Foot means the complete severance through or above the ankle joint. We will consider it a Loss of Foot even if the foot is later reattached.

### Loss of Hand

Loss of Hand means complete severance through or above the knuckle joints of at least 4 fingers on the same hand or at least 3 fingers and the thumb on the same hand. We will consider it a Loss of Hand even if the fingers and/or thumb are later reattached.

### Loss of Hearing

Loss of Hearing means the permanent, irrecoverable and total deafness of both ears to the extent that the deafness cannot be corrected by any aid or device, as determined by a Physician.

### Loss of Life

Loss of Life means death, including clinical death, determined by the local governing medical authorities.

### Loss of Sight of an Eye

Loss of Sight of an Eye means the permanent loss of vision in one eye. Remaining vision in that eye must be no better than 20/200 using a corrective aid or device, as determined by a Physician.

### Loss of Speech

Loss of Speech means the permanent, irrecoverable and total loss of the capability of speech without the aid of mechanical devices, as determined by a Physician.

### Loss of Thumb and Index Finger

Loss of Thumb and Index Finger means complete severance through or above the knuckle joints of the thumb and index finger of the same hand. We will consider it a Loss of Thumb and Index Finger even if one or both are later reattached.

### Permanent Total Disability

Permanent Total Disability means Accidental Bodily Injuries that solely and directly cause the Primary Insured Person's:

Loss of

Use of One Hand and One Foot, or
Use of Both Hands or Both Feet, or
Sight of Both Eyes, or
Hearing of Both Ears, or
Speech,

which solely and directly:

1) prevent the Primary Insured Person from engaging in any gainful occupation for which the Primary Insured Person is qualified, or could be qualified, by reason of education, training, experience, or skill; and

2) cause a condition which is medically determined by a Physician, approved by the Company, to be of continuous and indefinite duration; and

3) require the continuous care of a Physician, unless the Primary Insured Person has reached his/her maximum point of recovery.

### Physician

Physician means a person who is licensed as a medical doctor or a doctor of osteopathy under the laws of the jurisdiction in which treatment is given and who is qualified to provide the medical treatment. Physician does not include a family member of the Insured Person, a social worker or a physical therapist.

### Policyholder

Policyholder means the entity identified in the Insuring Agreement who is responsible for the collection and remittance of premium.

**EXHIBIT 2**

**Primary Insured Person**

Primary Insured Person means an Insured Person who
1) is offered coverage by the Policyholder and elects coverage under the policy; and
2) pays the premium for the coverage selected.

**War**

War means:
1) hostilities following a declaration of War by a government authority;
2) if there is no declaration of War, then armed, open and continuous hostilities between two countries; or
3) armed, open and continuous hostilities between two factions, each in control of territory, or claiming jurisdiction over the site of the area of hostility.

*Section VII – Common Policy Conditions*

*Absolute Assignment*

The Insured Person's rights under the policy may be irrevocably assigned. However, we will only recognize an assignment if the Insured Person has given us prior written notice and has our written acknowledgement of this assignment.

*Arbitration*

In the event of a dispute under the policy, either we, the Insured Person, or in the event of Loss of Life, the Insured Person's beneficiary may make a written demand for arbitration. In that case, we and the Insured Person, or in the event of Loss of Life, the Insured Person's beneficiary, will each select an arbitrator. The two arbitrators will select a third. If they cannot agree within fifteen (15) days, either we or the Insured Person, or in the event of Loss of Life, the Insured Person's beneficiary, may request that the choice of arbitrator be submitted to the American Arbitration Association. The arbitration will be held in the state of the Insured Person's principal residence.

*Beneficiary*

The Loss of Life benefit will be paid to the beneficiary designated by the Insured Person. This choice must be in writing and filed with the Policyholder.

If the Insured Person has not chosen a beneficiary or if there is no beneficiary alive when the Insured Person dies, we will pay the **Benefit Amount** to the first surviving party in the following order:
1) the Insured Person's spouse;
2) in equal shares to the Insured Person's surviving children;
3) in equal shares to the Insured Person's surviving parents;
4) in equal shares to the Insured Person's surviving brothers and sisters;
5) to the Insured Person's estate.

11

All other Benefit Amounts are paid to the Insured Person, unless otherwise directed by the Insured Person or the Insured Person's designee.

*Beneficiary Changes*

The Insured Person, and no one else, has the right to change the beneficiary. The Insured Person does not need the consent of anyone to do so. Changes must be in writing and filed with the Policyholder. We do not assume any responsibility for the validity of the changes.

*Cancellation, Nonrenewal and Grace Period*

The Policyholder may cancel the policy or any of its individual coverages by sending us written notice stating when cancellation is to take effect. The effective date of cancellation may not be earlier than the date notice is mailed or transmitted.

We may cancel the policy or any of its individual coverages if the Policyholder fails to pay the premium within the grace period of thirty-one (31) days after the premium due date, except if the first premium due during the policy term. We will send written notice stating the effective date of cancellation, which will be no earlier than thirty-one (31) days from the premium due date.

The Policyholder is entitled to a grace period of thirty-one (31) days for the payment of premium due. The policy will continue in force during the grace period. The grace period does not apply to the first premium payable during the policy term. Failure to pay the first premium on or before the due date will immediately terminate the policy as of inception. We are not required to provide notification of such termination.

We may cancel or nonrenew the policy for reasons other than non-payment of premium by sending written notice at least forty-five (45) days before the Anniversary Date shown in the Insuring Agreement.

We will send notice of cancellation or nonrenewal to the Policyholder at its last known address. If the notice is mailed, proof of mailing will be considered proof of cancellation or nonrenewal. The Policyholder is required to provide notice of cancellation to all Insured Persons.

The Primary Insured Person may cancel the insurance described in this policy by returning to us or our authorized representative the Benefit Plan Description with a written request for cancellation within ninety days of receipt. The premium will be fully refunded.

*Claim Forms*

When we receive notice of a claim, we will send the Insured Person or the Insured Person's designee, within fifteen (15) days, forms for giving us Proof of Loss. If the Insured Person or the Insured Person's designee does not receive the forms, the Insured Person or the Insured Person's designee should send us a written description of the Loss. This written description should include information detailing the occurrence, type and extent of the Loss for which claim is made.

*Claim Notice*

Written Claim Notice must be given to us or any of our appointed agents or brokers within twenty (20) days after the occurrence or commencement of any Loss covered by the policy or as soon as...

12

**EXHIBIT 2**

reasonably possible. Notice must include enough information to identify the Insured Person and Policyholder. Failure to give a Claim Notice within twenty (20) days will not invalidate or reduce any claim if notice is given as soon as reasonably possible

## Claim Payment

For benefits payable involving disability, we will pay the Insured Person or beneficiary at the applicable Benefit Amount no less frequently than monthly during the continuance of the period for which we are liable. All payments by us are subject to receipt of written Proof of Loss. For all benefits payable under the policy except those for disability, we will pay the Insured Person or beneficiary the applicable Benefit Amount within sixty (60) days after we receive a complete Proof of Loss if the Insured Person and Policyholder have complied with all the terms of the policy.

## Claim Proof of Loss

For claims involving disability, written Proof of Loss must be given to us within thirty (30) days after commencement of the period for which we are liable. Subsequent written proof of the continuance of such disability must be given to us at such intervals as we may reasonably require.

Failure to give written Proof of Loss within these timeframes will not invalidate or reduce any claim if notice is given as soon as reasonably possible, and in no event, except in cases where the claimant lacks legal capacity, later than one (1) year after the deadline to submit written Proof of Loss.

For all claims except those involving disability, written Proof of Loss must be given to us within ninety (90) days after the date of Loss, or as soon as reasonably possible.

## Claim and Suit Cooperation

In the event of a claim under the policy, the Policyholder, the Insured Person and the beneficiary, if applicable, must fully cooperate with us in handling of the claim, including, but not limited to, the timely submission of all medical and other reports, and full cooperation with all physical examinations and autopsies that we may require.

If the Policyholder is sued in connection with a claim under the policy, the Policyholder will immediately give us copies of every demand, notice and summons which the Policyholder receives relating to the suit. The Policyholder must fully cooperate with us in the handling of the suit. At our request, the Policyholder will assist in the settlement of the suit. The Policyholder or its designee will attend all hearings and trials and assist in giving evidence and securing the attendance of witnesses. The Policyholder must not, except at its own expense, voluntarily make any payment or assume any obligation in connection with the suit without our prior written consent.

## Compliance by Policyholder and Insured Person

We have no duty to provide coverage under the policy unless the Policyholder and the Insured Person have fully complied with all the terms and conditions of the policy.

## Conformance With Statutes

Any terms of the policy which are in conflict with the applicable statutes, laws or regulations of the state or territory in which the policy is issued are amended to conform to such statutes, laws or regulations.

## Conversion Privilege

In the event the Insured Person's coverage under the policy ceases for any reason other than termination of the policy, the Insured Person is eligible for an individual accident policy.

To convert to an individual accident policy, the Insured Person must submit to us or our authorized representative

1) a complete, written application; and
2) the required premium

for the individual accident policy within thirty-one (31) days after the Insured Person's coverage ended.

The individual accident policy will:

1) be issued without evidence of insurability;
2) provide insurance only for AD&D that is most similar to, but no greater than, the remanned coverage;
3) not pay for the same Loss for which benefits have already been paid under the policy;
4) provide a Benefit Amount for the Insured Person which will be the lesser of the following:
   a) the Insured Person's Benefit Amount under the policy, or
   b) $100,000; and
5) be subject to current rates for age and Class at the time of conversion.

## Examination Under Oath

We have a right to examine under oath, as often as we may reasonably require, the Insured Person, the Policyholder or the beneficiary. We may also require the Insured Person, the Policyholder or the beneficiary to provide a signed description of the circumstances surrounding the Loss and their interest in the Loss. The Insured Person, the Policyholder and the beneficiary will also produce all records and documents requested by us, and will permit us to make copies of such records or documents.

## Inadvertent Error

The insurance provided under the policy will not be prejudiced by the failure on the part of the Policyholder to transmit reports, collect and remit premium or comply with any of the terms and conditions of the policy when such failure is due to inadvertent error or clerical mistake.

## Legal Action Against Us

No legal action may be brought to recover on the policy until sixty (60) days after we have been given complete, written Proof of Loss. No such action may be brought after three (3) years from the

**EXHIBIT 2**

time complete, written Proof of Loss is required to be given. No such action may be brought unless there has been full compliance with all of the terms of the policy.

In no case will we be liable for benefits that are not payable under the terms of the policy or that exceed the applicable **Benefit Amounts**.

**Liberalization**

If we adopt any changes

1) within forty-five (45) days prior to the effective date shown in the Insuring Agreement, or
2) during the policy period,

which could broaden this insurance without an additional premium charge, the Insured Person will automatically receive the benefit of the broadened coverage

**Physical Examination and Autopsy**

We have the right to have the Insured Person examined by a Physician approved by us, as often as reasonably necessary while a claim is pending. We may also have an autopsy done by a Physician, unless prohibited by law. Any examinations or autopsies that we require will be done at our expense.

**Premium Payment**

The Policyholder will collect and remit to us all premiums due under the policy, subject to the grace period specified in the Cancellation, Nonrenewal and Grace Period condition.

Premium is audible. We will calculate the earned premium for each audit Reporting Period based on the applicable rates and exposures shown in the Premium Summary. The Policyholder must keep records of the information we need to calculate the premium and send us copies of these records for each Reporting Period.

The earned premium will be computed on a pro-rata basis. Any unearned premium will be remitted to the Policyholder for return to the **Primary Insured Person** as soon as practicable

**Premium Rate Changes**

We may change the premium rates for the policy on the Anniversary Date. We will give the Policyholder at least forty-five (45) days prior written notice

**Statement by Policyholder or Insured Person and Incontestability**

We will not use any statements, except fraudulent misstatements, made by the Policyholder or an **Insured Person** to void the insurance or reduce benefits payable under the policy, or to otherwise contest the validity of the policy, unless such statements are contained in a written document signed by the Policyholder or the **Insured Person**. If we rely on such statements for this purpose, we will provide a copy of the written document to the Policyholder, the **Insured Person**, or the **Insured Person**'s designee or beneficiary, as appropriate

15

We will consider all statements made by the Policyholder and the Insured Person to be representations and not warranties

Except for nonpayment of premium, we will not use statements made by the Policyholder or an **Insured Person** regarding insurability to contest the validity of the policy when the statements are made more than two (2) years after the policy has been in force during the Insured Person's lifetime

Nothing in this section will preclude us from asserting at any time defenses based upon a claimant's ineligibility for coverage under the policy, or upon any other policy provision or condition

**Titles of Paragraph**

The titles of the various paragraphs of this certificate and any endorsements attached are inserted solely for the convenience of reference and do not limit or affect in any way the provisions to which they relate

**Workers' Compensation**

The benefits payable under the policy are not in lieu of and do not affect any requirement for Workers' Compensation Insurance

**HAZARD**

**24 Hour Business and Pleasure**

**24 Hour Business and Pleasure** Hazard means all circumstances, subject to the terms and conditions of the policy, to which the Insured Person may be exposed anywhere in the world.

16

**EXHIBIT 2**

# $2,500 Emergency Accident and Sickness Medical Expense Benefit

## ISSUED BY

Virginia Surety Company, Inc. under the Travel Protection Policy: Number HTP00137

## DESCRIPTION OF COVERAGE

### Schedule of Coverages

| | Maximum Annual Benefits Per Policy |
|---|---|
| Emergency Accident and Sickness Medical Expense | |
| Benefit payable with other Insurance | $500, maximum annual benefit per family: $2,500 |
| Benefit payable without other Insurance | Up to $100/day, maximum of $500 |

### Emergency Accident and Sickness Medical Expense

The Company will pay benefits, up to the maximum shown on the Schedule of Coverages, if as the result of an Accidental Injury or Sickness while on Your Trip, You incur necessary covered medical expenses for Emergency Treatment. Covered medical expenses are necessary services and supplies, which are recommended by the attending Physician. They include the services of a legally qualified Physician, charges for Hospital confinement and use of operating rooms; charges for anesthetics including administration, x-ray examinations or treatments, and laboratory tests, ambulance service, drugs, medicines, prosthetics and therapeutic services and supplies. The Company will not pay benefits in excess of the reasonable and customary charges commonly used by providers of medical care in the locality in which the care is furnished.

### LIMITATIONS AND EXCLUSIONS

The following exclusions apply to Emergency Accident and Sickness Medical Expense coverage. This plan does not cover any loss caused by or resulting from:

1) Pre-Existing Conditions, as defined below;
2) Suicide or attempted suicide;
3) Intentionally self-inflicted injuries;
4) War, invasion, acts of foreign enemies, hostilities between nations (whether declared or not), civil war;
5) Any loss starting while You are in the service of the armed forces of any country. Orders to active military service for training purposes of two months or less will not constitute service in the armed forces;
6) Piloting or learning to pilot or acting as a member of the crew of any aircraft;
7) Mental or emotional disorders, unless hospitalized;
8) Participation as a professional in athletics or underwater activities;
9) Being under the influence of drugs or intoxicants unless prescribed by a Physician;
10) Commission of or the attempt to commit a criminal act;

11) Participating in bodily contact sports, skydiving, hang gliding, parachuting, mountaineering, any race, bungee cord jumping, or speed contest;
12) Dental treatment except as a result of an Accidental Injury to sound, natural teeth within twelve (12) months of the Accidental Injury;
13) Any non-emergency treatment or surgery, routine physical examinations, hearing aids, eye glasses or contact lenses;
14) Pregnancy and childbirth (except for complications of pregnancy);
15) Confinement or treatment in a government Hospital, however, the U.S. government may recover or collect benefits under certain conditions;
16) Care or treatment which is not medically necessary;
17) Care or treatment for which compensation is payable under Workers' Compensation law, any Occupational Disease law, the 4800 Time B, or similar legislation;
18) Care or treatment that is payable under any Insurance policy that does not require deductible and a coinsurance payments by the Eligible Person;
19) Injury of Sickness when traveling against the advice of a Physician; and
20) Cosmetic surgery except for reconstructive surgery, incidental to or following surgery for trauma, or infection or other covered disease of the part of the body reconstructed, or to treat a congenital malformation of a child.

## DEFINITIONS

"Accident" means a sudden, unexpected, unusual, specific event which occurs at an identifiable time and place, but shall also include exposure resulting from a mishap to a conveyance in which You are traveling.

"Accidental Injury" means Injury caused by an Accident of external origin occurring during a Covered Trip being the direct and independent cause in the loss.

"Eligible Person" means You, Your spouse, and Your unmarried dependent children) who are under 19 years of age (24, if a full-time student). Dependent children include stepchildren, legally adopted or children who have been placed in Your home for adoption, and foster children. If a mental or physical handicap prevents an unmarried dependent child from self-support when he/she reaches the termination age, he/she may remain as an Eligible Person under this policy. Proof of such incapacity and dependency must be furnished to the Company within 31 days of the child's attainment of the termination age and not more frequently than annually thereafter. Coverage will continue as long as coverage remains in force and the dependent child is incapable of self-support.

"Emergency Treatment" means necessary medical treatment, including services and supplies, which must be performed during Your Trip due to the serious and acute nature of the Accidental Injury.

"Hospital" means a facility that:
a) holds a valid license if it is required by the law;
b) operates primarily for the care and treatment of sick or injured persons as in-patients;
c) has a staff of one or more Physicians available at all times;
d) provides 24-hour nursing service and has at least one registered professional nurse on duty or call;
e) has organized diagnostic and surgical facilities, either on the premises or in facilities available to the hospital on a pre-arranged basis, and

17

EXHIBIT 2

f) is not, except accidentally, a clinic, nursing home, rest home, or convalescent home for the aged, or similar institution.

"Individual Coverage Term" means the period of time beginning when the Eligible Person has been enrolled for coverage under the policy and for whom the required premium has been paid .

"Injury" means bodily injury caused by an Accident occurring while this policy is in force and resulting directly and independently of all other causes in loss covered by the policy. The Injury must be verified by a Physician.

"Insurance" means any one of the following types of policies or plans which provide benefits for Hospital confinement for You on Your effective date of coverage, and such policy or plan requires You to pay a deductible and/or portion of coinsurance: individual, group or blanket insurance plans, group Blue Cross, Blue Shield, or other group prepayment coverage plans, coverage under labor management trustee plans, union welfare plans, employer organization plans, employee benefit organizational plans, or other arrangements of benefits for persons of a group. Insurance does not include Medicare or Medicaid.

"Physician" means a licensed practitioner of medical, surgical or dental services within the scope of his/her license. The treating Physician may not be You, a Traveling Companion or a Family Member.**

• Traveling Companion means a person who is sharing travel arrangements with You to a maximum of four (4) persons including You.

** Family Member means the Eligible Person's or Traveling Companion's legal or common law spouse, parent, legal guardian, step-parent, grandparent, grandchild, in-law, natural or adopted child, step-child, brother, sister, step-brother, step-sister, aunt, uncle, niece or nephew, who reside in the United States or Canada

"Pre-Existing Condition" means any Injury or Sickness which has been diagnosed by a legally qualified Physician, with consultation, advice or treatment occurring within twelve (12) months immediately prior to an Eligible Person's Individual Coverage Term. Pre-Existing Condition also means symptoms of a condition that would have led an ordinarily prudent person to seek diagnosis, care or treatment. Such an Injury or Sickness will continue to be a Pre-Existing condition until the earlier of:

(a) the expiration of twelve (12) consecutive months beginning with the Individual Coverage Term, for which the Eligible Person has not received any medical care, consultation, diagnosis or treatment, or has not taken any prescribed drug or medicine on account of such condition, or

(b) the expiration of twenty-four (24) consecutive months, beginning with the Individual Coverage Term.

"Sickness" means an illness or disease which is diagnosed or treated by a Physician after the effective date of this plan and while You are covered under this policy.

"The Company" means Virginia Surety Company, Inc.

"Trip" means any trip taken by an Eligible Person, to age 70 only, for which the required premium has been paid and which is 100 or more miles away from the Eligible Person's primary residence (if

a student, the primary residence will be the parents' residence). Travel must be solely for business or for pleasure, not for the procurement of medical treatment or advice.

"You and Your" means an Eligible Person.

## GENERAL PROVISIONS

Legal Actions. No legal action for a claim can be brought against us until sixty (60) days after we receive proof of loss. No legal action for a claim can be brought against us more than two (2) years after the time required for giving proof of loss

Controlling Law. Any part of this Policy that conflicts with the state law where the Policy is issued is changed to meet the minimum requirements of that law.

Misrepresentation and Fraud. Coverage as to an Eligible Person shall be void if, whether before or after a loss, the Eligible Person has concealed any material fact or circumstance concerning this Policy or the subject thereof, or the interest of the Eligible Person therein, or if the Eligible Person commits fraud or false swearing in connection with any of the foregoing.

Subrogation. To the extent the Company pays for a loss suffered by an Eligible Person, the Company will take over the rights and remedies the Eligible Person had relating to the loss. This is known as subrogation. The Eligible Person must help the Company to preserve its rights against those responsible for the loss. This may involve signing any papers and taking any other steps the Company may reasonably require. If the Company takes over an Eligible Person's rights, the Eligible Person must sign an appropriate subrogation form supplied by the Company.

Assignment. This Policy is not assignable but benefits may be assigned.

When an Eligible Person's coverage begins. All coverage will take effect on the first day of the following month in which the required premium has been paid.

When an Eligible Person's coverage ends. An Eligible Person's coverage will end on the date which is the earliest of the following:

a) the date the Policy is terminated;
b) the date on which You no longer meet the definition of "Eligible Person";
c) the date coverage is ended by You; or
d) the due date of a premium when due subject to the Grace Period. The Company will allow a period of 31 days after the premium due date for payment of each premium after the first premium payment. The Policy is in force during this period Termination of insurance of any Eligible Person will be without prejudice to any claim that begins before the date of termination

Notice of Claim. Written notice of claim must be given to the Company or its designated representative within twenty (20) days after a covered loss first begins or as soon as reasonably possible. Notice should include the Eligible Person's name and Policy number. To obtain claim forms call 1-888-668-9025.

Proof of Loss. The Claimant must send the Company, or its designated representative, proof of loss within ninety (90) days after a covered loss occurs or as soon as reasonably possible

**EXHIBIT 2**

# Medical Care Coordination Benefit

Should You become permanently disabled, a medical care coordinator will be available to help evaluate care options and provide guidance and assistance in obtaining appropriate medical treatment

**Payment of Claims.** The Company, or its designated representative, will pay the claim after receipt of acceptable proof of loss. All claims will be paid to the Eligible Person or the Eligible Person's estate. In the event the Eligible Person is a minor, incompetent or otherwise unable to give a valid release, the Company may make arrangements to pay claims to the Eligible Person's legal guardian, committee or other qualified representative.

**Physical Examination and Autopsy.** The Company, or its designated representative, at their own expense, have the right to have the Eligible Person examined as often as reasonably necessary while a claim is pending. The Company, or its designated representative, also has the right to have an autopsy made unless prohibited by law.

**NOTE.** Problems of distance, information and communication make it impossible for Virgnua Surety Company, Inc., HealthExtras, or The Sklover Group, Inc. to assume any responsibility for the availability, quality, use or result of any emergency service. In all cases, You are still responsible for obtaining, using and paying for Your own required services of all types.

This insurance, under Policy HTPF0157, is underwritten by Virgnua Surety Company, Inc. Executive Offices: 123 North Wacker Drive, Chicago, Illinois 60606

Policy terms and conditions are briefly outlined in this Plan Description. Complete provisions pertaining to this insurance are contained in the Master Policy on file with the trustee, Marine Bank, Springfield and HealthExtras. In the event of any conflict between this Plan Description and the Master Policy, the Policy will govern.

21

*Please note that the Benefit Plan Description is not the master policy.*
*Actual coverage is subject to the language of the master policies issued*

22

**EXHIBIT 2**

For Customer Service or to cancel your enrollment in the Plan, please call 1-888-668-9035.

*Offer subject to change. This plan may be modified, suspended, cancelled or otherwise terminated with notice.*

**EXHIBIT 2**