UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALTAGRACIA PEGUERO,<br><br>    Plaintiff,<br><br>    v.<br><br>AMERICAN EXPRESS COMPANY,<br>THE SKLOVER GROUP, INC. and<br>FEDERAL INSURANCE COMPANY,<br><br>    Defendants.<br><br>AMERICAN EXPRESS COMPANY,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>HEALTHEXTRAS, LLC,<br><br>    Third-Party Defendant. | Civil Action No. 05-10995-RCL |

MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
THIRD-PARTY DEFENDANT HEALTHEXTRAS, LLC TO DISMISS
THIRD-PARTY COMPLAINT OF AMERICAN EXPRESS COMPANY
<u>FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>

Pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, third-party defendant HealthExtras, LLC ("HealthExtras") has moved to dismiss the third-party complaint of American Express Company ("Amex") for failure to state a claim upon which relief can be granted against HealthExtras. As set forth in more detail below, the contract that defines the relationship between Amex and HealthExtras, and that is the basis of Amex's third-party complaint, includes a detailed alternative dispute resolution process that Amex failed to follow before resorting to litigation against HealthExtras. Under applicable New York law, such contract provisions are

fully enforceable, and compliance with them is a condition precedent to one party's right to sue the other.

## BACKGROUND[1]

The plaintiff in this case, Altagracia Peguero ("Peguero"), has asserted claims arising from her purchase of an accidental disability insurance plan (the "Plan") offered to American Express cardholders. TPC, ¶ 5. The Plan was developed and marketed pursuant to a September 17, 1999 Marketing Agreement (the "Marketing Agreement" or "Agreement") between Amex and HealthExtras. <u>Id.</u>

On January 10, 2005, Amex filed a third-party complaint against HealthExtras (the "Third-Party Complaint"). In the Third-Party Complaint, Amex asserts that, pursuant to certain provisions of the Marketing Agreement, HealthExtras is obligated to indemnify Amex for any and all expenses arising out of or connected with the Plan, or arising out of HealthExtras' failure to comply with the terms of the Agreement. TPC, ¶ 6. Amex further asserts that it has demanded that HealthExtras indemnify Amex in connection with Peguero's claims, and that HealthExtras has refused to indemnify Amex. TPC, ¶¶ 10, 11.

The Third-Party Complaint quotes one provision of the Marketing Agreement concerning indemnification, but does not include as an exhibit a copy of the complete Agreement. Amex's decision not to make the Marketing Agreement an exhibit to the Third-Party Complaint may have been based on other provisions of the Agreement that obligate Amex and HealthExtras to keep the Agreement confidential. Crossclaim defendant Federal Insurance Company ("Federal") has challenged the confidentiality of the Marketing Agreement, but the court has not yet ruled on

---

[1] This section is based on the allegations of Amex's Third-Party Complaint against HealthExtras (the "Third-Party Complaint" or "TPC"), which are accepted as true for purposes of this motion only. <u>LaChapelle v. Berkshire Life Ins. Co.</u>, 142 F.3d 507, 508 (1st Cir. 1998).

that challenge.[2]  Until the court rules, HealthExtras will refrain from submitting a copy of the complete Agreement.  However, in light of Amex's Third-Party Complaint, which discloses one provision of the Marketing Agreement, HealthExtras is compelled to disclose two other provisions of the Agreement that are material to the instant motion to dismiss.[3]

Paragraph 20(e) of the Marketing Agreement is entitled "Alternative Dispute Resolution," and provides as follows:

> (i) <u>Negotiation</u>.    The parties shall attempt in good faith to resolve any dispute arising out of or relating to this Agreement (other than disputes regarding material breaches) promptly by negotiations between executives who have authority to settle the controversy.  Any party may give the other party written notice of any dispute not resolved in the normal course of business.  Within 20 days after delivery of said notice, executives of both parties shall meet at a mutually acceptable time and place, and thereafter as often as they deem reasonably necessary, to exchange relevant information and to attempt to resolve the dispute.  If the matter has not been resolved within 60 days of the disputing party's notice, or if the parties fail to meet within 20 days, either party may initiate mediation of the controversy or claim as provided hereinafter.
>
> (ii) If a negotiator intends to be accompanied at a meeting by any attorney, the other negotiator shall be given advance notice of such intention and may also be accompanied by an attorney.  All negotiations pursuant to this clause are confidential and shall be treated as compromise and settlement negotiations for purposes of the Federal Rules of Evidence and state rules of evidence.
>
> (iii) <u>Mediation</u>.  If the above referenced dispute has not been resolved by negotiation as provided above, the parties shall endeavor to settle the dispute by mediation under the then current Center for Public Resources ("CPR") Model Procedure for Mediation of Business Disputes.  One neutral third party will be selected from the CPR Panels of Neutrals to mediate the dispute.  If the parties encounter difficulty in agreeing on a neutral, they will seek the assistance of CPR in the selection process.

---

[2]Federal has filed a motion under Fed. R. Civ. P. 37(a) to compel Amex to produce the Marketing Agreement on the ground (among others) that Amex's partial disclosure of the Agreement in the Third-Party Complaint waived any otherwise applicable confidentiality protection.  Amex has opposed that motion.  On April 12, 2006, the court referred Federal's motion to Magistrate Judge Robert B. Collings.

[3]Under settled law, because the Marketing Agreement is central to Amex's claims in the Third-Party Complaint, HealthExtras may introduce these additional provisions of the Agreement without converting its motion to dismiss into a summary judgment motion.  <u>Fudge v. Penthouse Int'l, Ltd.</u>, 840 F.2d 1012, 1015 (1st Cir. 1988).

    (iv) <u>Other Remedies</u>.  In the event of a dispute arising out of or relating to this contract or the breach, termination or validity thereof, which has not been resolved by non-binding means as provided in subsection (i) and (ii) above within sixty (60) days of the initiation of such procedure, either party may seek any remedy available at law or equity, including recourse to the courts.

Paragraph 20(f) of the Marketing Agreement provides that the Agreement shall be governed by and in accordance with the laws of the State of New York, without reference to its conflict of laws principles.

## ARGUMENT

It is "firmly established" that the public policy of New York State favors arbitration and other alternative dispute resolution ("ADR") mechanisms.  <u>Westinghouse v. New York City Transit Auth.</u>, 82 N.Y. 2d 47, 53-54, 623 N.E. 2d 531 (1993).  There is "[c]onsiderable authority [that] supports the validity and enforceability of [ADR] mechanisms, which reflect the informed negotiation and endorsement of parties."  <u>Id.</u>, 82 N.Y. 2d at 53.  Under New York law, an agreement to engage in ADR is enforceable as long as it is "clear, explicit and unequivocal" and does not "depend on implication or subtlety."  <u>Crimmins Contracting v. City of New York</u>, 74 N.Y. 2d 166, 171, 542 N.E. 2d 1097 (1989); <u>In re Waldron (Goddess)</u>, 61 N.Y. 2d 181, 183-184, 461 N.E. 2d 273 (1984).  Where a contract reflects the parties' intent to submit disputes to ADR before resorting to litigation, a party that files suit without fulfilling the contract's ADR requirements has failed to satisfy a condition precedent, and its complaint is subject to dismissal on that ground.  <u>Yonkers Constr. Co. v. Port Auth. Trans-Hudson Corp.</u>, 87 N.Y. 2d 927, 930, 663 N.E. 2d 907 (1996); <u>Ferguson Elec. Co. v. Kendal at Ithaca, Inc.</u>, 274 A.D. 2d 890, 891-892, 711 N.Y.S. 2d 246 (2000).

Here, Paragraph 20(e) of the Marketing Agreement sets out a detailed, multi-step ADR process for resolving all disputes arising out of or relating to the Agreement, including disputes

concerning the breach, termination or validity of the Agreement. The only disputes not subject to this process are disputes regarding material breaches.[4] By expressly providing, in Paragraph 20(e)(iv), that the parties may litigate any dispute "which has not been resolved by non-binding means as provided in subsection (i) and (ii) above within sixty (60) days of the initiation of such procedure," the Marketing Agreement reflects the parties' intent that compliance with Paragraph 20(e) is a condition precedent to filing suit. Because the Third-Party Complaint neither acknowledges the existence of Paragraph 20(e) nor alleges compliance with its requirements, the Third-Party Complaint, under the above-cited authorities, must be dismissed.

## CONCLUSION

For the foregoing reasons, HealthExtras respectfully moves that Amex's Third-Party Complaint be dismissed for failure to state a claim upon which relief can be granted against HealthExtras.

HEALTHEXTRAS, LLC

By its attorney,

  /s/  Donald R. Pinto, Jr.
Donald R. Pinto, Jr., BBO No. 548421
RACKEMANN, SAWYER & BREWSTER
One Financial Center
Boston, Massachusetts  02111
(617) 542-2300

---

[4] Under New York law, a "material breach" is one that goes to the essence of the contract, and excuses the non-breaching party from further performance. Grace v. Nappa, 46 N.Y. 2d 560, 567, 389 N.E. 2d 107 (1979). Amex does not allege, nor could it, that the parties' nascent dispute over the applicability of the Marketing Agreement's indemnification provisions goes to the essence of the Agreement.

5

6

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

                                        /s/ Donald R. Pinto, Jr.
                                        Donald R. Pinto, Jr.

Dated: April 17, 2006