**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ALTAGRACIA J. PEGUERO,<br><br>              Plaintiff,<br><br>              v.<br><br>AMERICAN EXPRESS COMPANY, THE SKLOVER GROUP, INC., and FEDERAL INSURANCE COMPANY,<br><br>              Defendants.<br>-------------------------------------------------------------<br>AMERICAN EXPRESS COMPANY,<br><br>              Third-Party Plaintiff,<br><br>              v.<br><br>HEALTHEXTRAS, LLC,<br><br>              Third-Party Defendant. | Civil Action No. 05-10995-RCL |

**AMERICAN EXPRESS COMPANY'S MEMORANDUM**
**OF LAW IN OPPOSITION TO HEALTHEXTRAS, LLC'S**
**MOTION TO DISMISS THIRD-PARTY COMPLAINT**

Third-party plaintiff American Express Company ("American Express") respectfully submits this memorandum of law in opposition to third-party defendant HealthExtras, LLC's ("HealthExtras") motion to dismiss American Express's third-party complaint. HealthExtras' motion should be denied because the alternate dispute resolution provision relied on by HealthExtras does not apply to this dispute, and even if it did, American Express complied with its terms. In any event, HealthExtras is estopped from invoking the provision in light of its unreasonable delay in raising the issue.

**STATEMENT OF FACTS**[1]

Plaintiff Altragracia Peguero sued American Express and two other defendants, claiming that she was injured by defendants allegedly unfair and deceptive marketing of an accidental disability plan (the "Plan"). HealthExtras was involved with the development and marketing of the Plan, which was offered to certain American Express cardholders. Third-Party Complaint at ¶ 5. American Express and HealthExtras thus entered into a Marketing Agreement dated September 17, 1999 (the "Agreement"). *Id.*

Pursuant to the Marketing Agreement, HealthExtras is required to "protect, defend, indemnify and hold harmless" American Express against any "loss, damage, cost, expense, liability, and settlement" that directly or indirectly "arises out of or in connection with" the Plan. *Id.* at ¶ 6.

HealthExtras has been on notice of Plaintiff's claim since June 2004. Third-Party Complaint at ¶ 9. On August 31, 2005, American Express served HealthExtras with a "formal demand for indemnification." *Id.* at ¶ 10. HealthExtras, however, refused to indemnify American Express. *Id.* at ¶ 11.

On November 17, 2005, American Express filed its Unopposed Motion to File Third-Party Complaint. Pursuant to Local Rule 15.1(B), that motion was served on HealthExtras more than ten days in advance of the filing of the motion with the Court. HealthExtras did not oppose the motion, which was granted.

As set forth in HealthExtras's motion, the Marketing Agreement contains an Alternative Dispute Resolution (ADR) provision. Marketing Agreement at ¶ 20(e). The ADR provision does not apply to disputes regarding "material breaches." *Id.* at ¶

---

[1]   This Statement of Facts is based on the allegations in American Express's Third-Party Complaint and matters of record in this case.

20(e)(i). The provision requires the parties to try to negotiate the resolution of an applicable dispute, but recognizes that if the matter has not been resolved by negotiations within sixty (60) days, "either party may seek any remedy available at law or equity, including recourse to the courts." *Id.* at ¶ 20(e)(iv).

## ARGUMENT

Under the familiar standard governing motions to dismiss based on Federal Rule of Civil Procedure 12(b)(6), the Court must accept the allegations in American Express's third-party complaint as true, draw all reasonable inferences from these facts in American Express's favor, and dismiss the complaint only if the allegations fail to justify recovery on "any cognizable theory." *E.g.*, *LaChapelle v. Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir. 1998).

**I.     HealthExtras's Refusal to Defend and Indemnify American Express was a Material Breach of the Marketing Agreement and Thus the ADR Provision is Inapplicable.**

Under the terms of the ADR provision, "disputes regarding material breaches" of the Marketing Agreement are specifically exempt from the ADR process. New York courts have defined a material breach to include any breach that is "so substantial as to defeat the purpose of the entire contract." *Lipsky v. Commonwealth United Corp*, 551 F.2d 887, 895 (2d. Cir. 1976). As the *Lipsky* court noted: "The question may be posed: Would the innocent party have agreed to enter the contract without the inclusion of the disputed clause?" 551 F.2d at 895.

In this case, American Express never would have entered into the Marketing Agreement absent the indemnification clause. HealthExtras developed and marketed the Plan. Third-Party Complaint at ¶ 5. Without such a clause, American Express risked

3

exposure for the acts and omissions of a third-party. The indemnification clause was designed to eliminate that risk and facilitate American Express's entering into the Marketing Agreement. In the context of a motion to dismiss, where American Express must be afforded all reasonable inferences, this requires the denial of HealthExtras's motion.

While HealthExtras contends that the matter involves a "nascent dispute over the applicability of the Marketing Agreement's indemnification provisions," HealthExtras has been aware of this claim since June 2004. *Id.* at ¶ 9. In any event, the "maturity" of a dispute is irrelevant for purposes of materiality. Moreover, HealthExtras contention that this issue does not go "to the essence of the Agreement" is completely unsupported. Indeed, HealthExtras has not even submitted the entire Marketing Agreement for the Court to consider and to evaluate how the indemnification protections American Express bargained for and received relate to the rest of the agreement. *See Montblanc-Simplo v. Aurora Due S.R.L.*, 363 F. Supp 2d 467, 475 (E.D.N.Y. 2005) (stating under New York law that "court interprets a contract by looking at the document as a whole"). As a result, HealthExtras has not supported its conclusory contention that indemnification does not go to the essence of the Marketing Agreement, and thus its motion should be denied.

**II.     American Express Complied with the ADR Procedures.**

While American Express contends that the ADR provision is not applicable to this dispute, the allegations in the Third-Party Complaint nevertheless demonstrate that American Express complied with the ADR provision. The portion of the ADR provision titled "Negotiation" begins as follows:

> The parties shall attempt in good faith to resolve any disputes arising out of or relating to this Agreement (other

4

> than disputes regarding material breaches) promptly by negotiations between executives who have authority to settle the controversy. Any party may give the other party written notice of any dispute not resolved in the normal course of business.

Here, HealthExtras was put on notice of Plaintiff's claim in June 2004. Third-Party Complaint at ¶ 9. The issue of indemnification was not resolved through the normal course of business, and thus American Express on August 31, 2005, served a formal demand for indemnification. *Id.* at ¶ 10. Such a formal demand constitutes "written notice of any dispute not resolved in the normal course of business."

The ADR provision continues as follows:

> Within 20 days after delivery of said notice, executives of both parties shall meet at a mutually acceptable time and place, and thereafter as often as they deem reasonably necessary, to exchange relevant information and to attempt to resolve the dispute. If the matter has not been resolved within 60 days of the disputing party's notice, or if the parties fail to meet within 20 days, either party may initiate mediation of the controversy or claim provided hereunder.

HealthExtras responded to American Express's demand for indemnification by rejecting it, not by invoking the ADR provision. Third-Party Complaint at ¶ 11. While the ADR provision initially states that executives "shall meet" within 20 days from notice, it expressly addresses the procedure if executives "fail to meet" within 20 days of if the matter is not resolved in 60 days. In such a situation, "either party <u>may</u> initiate mediation." (emphasis added). By its terms, the mediation procedure is optional.

The "Other Remedies" portion of the ADR provision provides as follows:

> In the event of a dispute arising out of or relating to this contract or the breach, termination or validity thereof, which has not been resolved by non-binding means as provided in subsection (i) or (ii) above within sixty (60) days of the initiation of such procedure, either party may

5

>seek any remedy available at law or equity, including recourse to the courts.

At the latest, the "Negotiation" procedure set forth in subsection (i) and (ii) was initiated when American Express served its formal demand on August 31, 2005. Thus, if the dispute was not resolved, American Express could seek recourse to the courts on or after October 30, 2005. American Express filed its Unopposed Motion to File Third-Party Complaint on November 17, 2005, more than 60 days after serving its demand. American Express ultimately filed its Third-Party Complaint on February 14, 2006. The mediation procedures described in subsection (iii) are not even mentioned in the "Other Remedies" subsection. Thus, American Express fully complied with the ADR provision.

### III.    The Case Law Cited by HealthExtras Actually Supports Denial of the Motion.

The case law relied on by HealthExtras reflects that under New York law, courts will only dismiss a suit if an alternative dispute resolution mechanism is considered a condition precedent to litigation, and such an expression must be "clear, explicit and unequivocal." *Ferguson Elec. Co. v. Kendal at Ithaca, Inc.*, 274 A.D. 2d 890, 891, 711 N.Y.S.2d 246 (3d Dept. 2000). Thus, dismissal is available only when the relevant ADR clause uses explicit and unequivocal language mandating that the preliminary step is a condition precedent. *See, e.g., Westinghouse v. New York City Transit Authority*, 82 N.Y. 2d 47, 53, 623 N.E.2d 531 (1993) (clause stating "Exhaustion of these procedures shall be a precondition to any lawsuit permitted hereunder"); *Yonkers Constr. Co v. Port Auth. Trans-Hudson Corp*, 87 N.Y. 2d 927, 928-29, 663 N.E.2d 907 (1996) (clause stating "In any action against PATH relating to any such question the Contractor must allege in [the] complaint and prove such submission [to the Chief Engineer], which shall be a condition

precedent to any such action"); *Ferguson Elec. Co. v. Kendal at Ithaca, Inc.*, 274 A.D. 2d 890, 891 (3d Dept. 2000) (clause stating "Exhaustion of these procedures shall be a precondition to any lawsuit permitted hereunder"). The ADR provision in the Marketing Agreement does not explicitly and unequivocally mandate *any* proceeding as a condition precedent to filing suit, and thus dismissal is not warranted**.**

Moreover, HealthExtras's authorities provide that in interpreting an ADR clause, the Court is required to read "the clause in the context of the entire contract." *Thomas Crimmins Contracting Co. v. City of New York*, 74 N.Y.2d 166, 172, 542 N.E.2d 1097 (1989). Here, HealthExtras did not provide the Court with the entire contract, and thus cannot carry its burden for the relief it seeks in this motion.

**IV.        HealthExtras Should be Estopped from Invoking the ADR Clause.**

HealthExtras has been aware of the claims set forth in American Express's Third-Party Complaint since June 2004 and has received written notice of these claims numerous times, including American Express's formal demand for indemnification and its notice of filing its motion seeking leave to file a third-party complaint. Nonetheless, at no point prior to filing the instant motion did HealthExtra mention the alternative dispute mechanisms, let alone make a formal demand for mediation. Moreover, while HealthExtras seeks dismissal, it has not demanded that American Express participate in any ADR process, and thus this motion simply represents a further effort by HealthExtras to try to put off owning up to its contractual indemnification obligations. As a result, HealthExtras should now be estopped from relying on American Express's alleged failure to comply with the ADR provision as a basis for dismissing its Third-Party Complaint.

7

Equitable estoppel is defined as "[t]he doctrine by which a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he otherwise would have had." *Besicorp Group Inc. v. Enowitz*, 235 A.D.2d 761, 764 (3d Dept. 1997). As one New York court noted, the purpose of estoppel is to prevent the offending party from denying the effect of "statements, actions, or non-actions" that have influenced the conduct of another. *Gleason v. Tompkins*, 375 N.Y.S. 2d 247, 254 (N.Y. Sup. Ct. 1975). In this case, the doctrine should be applied to prevent HealthExtras from disavowing the course of conduct it has followed since the outset of this dispute. To hold otherwise would allow HealthExtras to benefit from its own conscious decision to withhold invoking the ADR provisions of the Marketing Agreement when it had numerous opportunities to raise the issue, and perhaps force American Express to sue HealthExtras in another action to obtain indemnification, which is less efficient.

## CONCLUSION

For all the foregoing reasons, American Express respectfully requests that the Court deny HealthExtras's motion to dismiss.

        Respectfully Submitted,

        AMERICAN EXPRESS COMPANY

        By its attorneys:

        /s/ John F. Farraher, Jr.
        _____
        John F. Farraher, Jr. BBO # 568194
        GREENBERG TRAURIG, LLP
        One International Place, 20th Floor
        Boston, MA 02110
        Tel: (617) 310-6000
        Fax: (617) 310-6001

Dated: May 1 , 2006

## CERTIFICATE OF SERVICE

I, John F. Farraher, Jr., hereby certify that on May 1, 2006 I served a copy of the foregoing by electronic mail upon counsel of record.

        /s/ John F. Farraher, Jr.
        _____
        John F. Farraher, Jr.