UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ALTAGRACIA PEGUERO,

Plaintiff,

v.

AMERICAN EXPRESS COMPANY, THE SKLOVER GROUP, INC. and FEDERAL INSURANCE COMPANY,

Defendants.

AMERICAN EXPRESS COMPANY,

Third-Party Plaintiff,

v.

HEALTHEXTRAS, INC.,

Third-Party Defendant.

Civil Action No. 05-10995-RCL

REPLY BRIEF OF HEALTHEXTRAS, INC. IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE THIRD-PARTY COMPLAINT OF AMERICAN EXPRESS COMPANY
(*LEAVE TO FILE GRANTED ON JUNE 12, 2006*)

Third-party defendant HealthExtras, Inc. ("HealthExtras") respectfully submits this reply brief in further support of its motion to dismiss the third-party complaint of American Express Company ("Amex") for failure to state a claim upon which relief can be granted.

ARGUMENT

I. Amex's Third-Party Complaint Is Fatally Defective Because It Does Not Allege That Amex Has Complied With Its Own Obligations Under The Marketing Agreement, Including Its Satisfaction Of An Express Condition Precedent To Suing HealthExtras

As set forth in HealthExtras' principal brief, The Marketing Agreement Between Amex and HealthExtras contains an express condition precedent to filing suit. Paragraph 20(e)(iv) of

the Agreement provides that: "[i]n the event of a dispute arising out of or relating to this contract or the breach, termination or validity thereof, which has not been resolved by non-binding means as provided in subsection (i) and (ii) above within 60 days of the initiation of such procedure, either party may seek any remedy available at law or equity, including recourse to the courts." (emphasis added). Under applicable New York law, a plaintiff claiming breach of contract must allege not only that the defendant has breached the contract, but that the plaintiff has fulfilled its own obligations under the contract. Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996). While Amex's third-party complaint alleges that HealthExtras breached the Marketing Agreement by refusing to indemnify Amex, and that all conditions precedent to HealthExtras' performance under the Agreement have been satisfied (see ¶¶ 15-16), it does not allege that Amex has fulfilled its own obligations, including the satisfaction of all conditions precedent to its breach of contract action. Far from alleging compliance with the Agreement's ADR requirements, Amex's third-party complaint does not even acknowledge their existence.

II. Under Paragraph 20(e) Of The Marketing Agreement, Mediation Is Not Optional

Amex selectively excerpts Paragraph 20(e) of the Marketing Agreement, drawing the court's attention to the language of subparagraph (i), which states that if the parties fail to resolve their dispute by negotiation, "either party may initiate mediation of the controversy or claim as provided hereinafter." Citing only this language, Amex contends that, "[b]y its terms, the mediation procedure is optional." Amex's argument conveniently ignores what is "provided hereinafter" in subparagraph (iii), which is that if the parties' dispute "has not been resolved by negotiation as provided above, the parties shall endeavor to settle the dispute by mediation under the then current Center for Public Resources ("CPR") Model Procedure for Mediation of Business Disputes." (emphasis added). Given this mandatory language of subparagraph (iii), the phrase "either party may initiate mediation" in subparagraph (i) simply means that the required

mediation procedure may be initiated by either party. In its full context, this phrase cannot reasonably be construed to mean that the mediation procedure itself is optional, as such a construction would read the mandatory language of subparagraph (iii) out of the Agreement. Considering the entirety of Paragraph 20(e), it is clear that mediation is mandatory, and that Amex must follow the specified procedure – including by attempting to settle the dispute through mediation – before it can sue HealthExtras.

## III. Amex's Indemnification Claim Is Not A Dispute Regarding A Material Breach Of The Marketing Agreement

Amex contends that HealthExtras' refusal to indemnify Amex in connection with the plaintiff's claims is a material breach of the Marketing Agreement, and as such does not trigger the Agreement's ADR provisions. Amex further contends that HealthExtras has not adequately supported its claim of non-materiality because it did not submit a copy of the whole Marketing Agreement with its motion to dismiss. As Amex well knows, HealthExtras was unable to submit a copy of the Agreement at that time because of Amex's own insistence that the Agreement not be disclosed unless and until the parties had agreed on the terms of a stipulated protective order and that order had been entered by the court. Since then, the parties reached such an agreement, the court entered the parties' stipulated protective order, and Amex, on May 4, 2006, circulated to the other parties a copy of the Marketing Agreement as originally signed. Given this turn of events, HealthExtras can now submit, via its accompanying "Motion to File Document Under Seal," a copy of the Agreement.

Assuming that HealthExtras' accompanying motion is allowed, and a sealed copy of the Marketing Agreement is accepted for filing, the court will see that the Agreement is a long, dense contract that specifies in great detail the parties' obligations with respect to the development, marketing and administration of the Accidental Disability Plan at issue in this case. The court will also see that the indemnification language on which Amex bases its third-party

complaint does not stand alone, but rather is part of a cross-indemnification provision under which Amex agrees to indemnify HealthExtras against claims arising out of Amex's breach of any of its obligations under the Agreement. HealthExtras submits that this cross-indemnification provision is a common feature of many commercial agreements, and does not go to the essence of the Marketing Agreement, which, as its title suggests, concerns marketing. Even assuming arguendo that the court ultimately finds that Amex's indemnification rights trump those of HealthExtras, Amex cannot seriously argue that HealthExtras' refusal to bow to Amex's initial demand for indemnification is a breach of the Agreement "so substantial as to defeat the purpose of the entire transaction." See Lipsky v. Commonwealth United Corp., 551 F.2d 887, 895 (2d Cir. 1976), cited in Amex's opposition at p. 3. Because the parties' present dispute is not one that concerns a material breach of the Marketing Agreement, it is subject to the ADR requirements of Paragraph 20(e).

IV. Amex Persists In Its Refusal To Comply With Paragraph 20(e) Of The Agreement

On April 27, 2006, HealthExtras, through its Chief Financial Officer, sent written notice to Amex under Paragraph 20(e) of the Marketing Agreement. A copy of this notice is attached as Exhibit A. HealthExtras' notice summarized the background of the parties' dispute over their respective indemnification obligations, and, consistent with Paragraph 20(e)(i), proposed that executives of Amex and HealthExtras meet on May 9, 2006 to exchange information and attempt to resolve the dispute. On the day of the proposed meeting, Amex, through its counsel, responded to HealthExtras' proposal by reiterating Amex's position that the ADR requirements of the Agreement do not apply, and opining that, in any event, "it appears clear that a meeting between the parties would not be fruitful." A copy of this response is attached as Exhibit B. Amex did express a willingness to meet and discuss the indemnification issue if HealthExtras would "indicate that it has moved off its prior position (for settlement purposes only) that

American Express must indemnify HealthExtras . . . ." Amex's willingness to meet and discuss the parties' dispute only if HealthExtras first agrees to abandon its position makes a mockery of Paragraph 20(e)'s express requirement that the parties attempt to resolve their disputes in good faith.

CONCLUSION

For the foregoing reasons, in addition to the reasons set forth in its principal brief, HealthExtras submits that Amex's third-party complaint should be dismissed for failure to state a claim upon which relief can be granted against HealthExtras.

HEALTHEXTRAS, INC.,

By its attorney,

/s/ Donald R. Pinto, Jr.
Donald R. Pinto, Jr., BBO No. 548421
RACKEMANN, SAWYER & BREWSTER
One Financial Center
Boston, Massachusetts 02111
(617) 542-2300

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

/s/ Donald R. Pinto, Jr.
Donald R. Pinto, Jr.

Dated: June 13, 2006



Health Extras, Inc.
800 King Farm Boulevard
Rockville, MD 20850
Telephone: 301.548.2900
Facsimile: 240.268.3120

April 27, 2006

Ms. J. Whitney Stevens
Vice President, American Express Relationship Services
American Express Travel Related Services Company, Inc.
3 World Financial Center
New York, NY 10285

Re: Marketing Agreement dated September 17, 1999 between HealthExtras, Inc. and American Express Travel Related Services Company, Inc., as amended
Notice of Dispute Not Resolved In Normal Course of Business

Dear Ms. Stevens:

This letter constitutes written notice by HealthExtras, Inc. ("HealthExtras"), under Paragraph of 20(e) of the above-referenced Marketing Agreement (the "Agreement"), of a dispute not resolved in the normal course of business between HealthExtras and American Express Travel Related Services Company, Inc. ("Amex").

As you may know, in March, 2005, Altagracia J. Peguero ("Peguero") filed a lawsuit (the "Lawsuit") in Massachusetts state court against American Express Company, Inc., Sklover Group, Inc. and Federal Insurance Company. In the Lawsuit Peguero asserts, among other things, that a certain Accidental Disability Plan (the "Plan") marketed by Amex was marketed in a misleading, unfair and deceptive manner in violation of Massachusetts law. In May, 2005, the Lawsuit was removed to the United States District Court for the District of Massachusetts, where it was docketed as Civil Action No. 05-10995-RCL.

By letter dated August 31, 2005, Amex, under paragraph 9(a) of the Agreement, demanded that HealthExtras indemnify Amex against any and all claims, costs and expenses arising out of the Lawsuit. By letter dated September 20, 2005, HealthExtras refused Amex's demand for indemnification, pointing out that Peguero's claims in the Lawsuit are based on the allegedly deceptive marketing of the Plan, a function over which Amex, under the Agreement, exercised complete control, and for which Amex was compensated in accordance with the terms of the Agreement. In its response HealthExtras also noted that, under Paragraph 13(f) of the Agreement, Amex represented and warranted that it would perform its obligations under the Agreement in compliance with "all applicable federal, state, local and foreign laws and regulations, including but not limited to fair trade and advertising laws and regulations," and

that, under Paragraph 9(b) of the Agreement, Amex agreed to protect, defend, indemnify and hold HealthExtras harmless against any and all claims against HealthExtras "arising out of AMEX's breach of any of its obligations, responsibilities, warranties or representations under this Agreement." For this reason, HealthExtras concluded, "the obligation to indemnify more appropriately runs from AMEX in favor of [HealthExtras] rather than vice-versa as stated in [Amex's] August 31, 2005 correspondence."

Because the essence of Peguero's claims in the Lawsuit is that the marketing of the Plan violated Massachusetts law, including fair trade and advertising laws, HealthExtras' position remains that it has no obligation to indemnify Amex under Paragraph 9(a) of the Agreement, and that, instead, Amex must indemnify HealthExtras under Paragraph 9(b) of the Agreement. By a separate letter dated today, HealthExtras has formally demanded indemnification from Amex under Paragraph 9(b) of the Agreement.

Pursuant to Paragraph 20(e) of the Agreement, HealthExtras proposes that executives of HealthExtras and Amex meet on May 9, 2006 at 11:00 a.m. at the offices of HealthExtras' counsel, Rackemann, Sawyer & Brewster, located at One Financial Center in Boston, Massachusetts, to exchange relevant information and attempt to resolve this dispute. If the dispute is not resolved within 60 days, or if the parties do not meet within 20 days, HealthExtras intends to initiate mediation as provided in Paragraph 20(e)(iii).

Please let me know as soon as possible whether the date, time and location I have proposed for the parties' meeting is acceptable, and who will be attending on behalf of Amex. I look forward to hearing from you.

Very truly yours,

Michael P. Donovan
Chief Financial Officer

cc: American Express Travel Related
Services Company, Inc.
General Counsel's Office
Attn: Counsel for AERS Insurance Products

John F. Farraher, Jr., Esq.
Donald R. Pinto, Jr., Esq.

TOTAL P.02

**Greenberg Traurig**

John F. Farraher, Jr.
Phone: 617.310.6029
Fax: 617.310.6001
farraherj@gtlaw.com

May 9, 2006

**<u>VIA FACSIMILE</u>**

Donald R. Pinto, Jr.
Rackemann, Sawyer and Brewster, P.C.
One Financial Center
Boston, MA 02111

Re: Marketing Agreement ("Agreement") Dated September 17, 1999 between HealthExtras, Inc. ("HealthExtras") and American Express Travel Related Services Company, Inc. ("American Express")

Dear Don:

We are writing in response to the letter dated April 27, 2006 from Michael P. Donovan of HealthExtras to J. Whitney Stevens of American Express. As you know from our opposition to HealthExtras' Motion to Dismiss, American Express does not believe that the alternative dispute resolution provision in the Agreement applies to American Express' contention that HealthExtras has breached its indemnification obligations under the Agreement. Moreover, based on the positions taken by HealthExtras to date, and reiterated in Mr. Donovan's recent letter, it appears clear that a meeting between the parties would not be fruitful. Nevertheless, if HealthExtras is willing to indicate that it has moved off its prior position (for purposes of settlement discussions only) that American Express must indemnify HealthExtras, then American Express would be willing to meet with HealthExtras to discuss the indemnification issue.

Please advise if HealthExtras remains interested in participating in a meeting under those conditions, and we will obtain available dates from American Express. In addition, please be advised that Ms. Stevens is no longer with American Express. Accordingly, and given that this matter is in litigation where American Express is represented by counsel, please have all correspondence in connection with this matter directed to me. If you have any questions, please do not hesitate to contact me.

Very truly yours,

John F. Farraher, Jr.

cc. Louis Smith, Esq.


MAY-09-2006 12:20 GREENBERG TRAURIG 16173106220 P.02/02