UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALTAGRACIA PEGUERO,<br><br>     Plaintiff,<br><br>     v.<br><br>AMERICAN EXPRESS COMPANY<br>and HEALTHEXTRAS, INC.,<br><br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 05-10995-RCL

DEFENDANT HEALTHEXTRAS, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, defendant HealthExtras, Inc. ("HealthExtras") has moved for a protective order limiting the scope of discovery sought from it by the plaintiff, Altagracia Peguero ("Ms. Peguero"). The discovery requests that Ms. Peguero has served on HealthExtras seek information that is plainly irrelevant to any claim or defense in this action. The grounds for HealthExtras' motion are set forth below.

**Background to Case**

On December 25, 2002, Ms. Peguero lost her right arm in a car accident. Prior to the accident, she had enrolled in an Accidental Disability Plan (the "Plan") offered by defendant American Express Company ("American Express"). The Plan included "Permanent Total Disability" insurance underwritten by former defendant Federal Insurance Company ("Federal"). As set forth in every document describing this insurance, from the initial mailing that Ms. Peguero admits receiving to the detailed "Benefit Plan Description" that she denies receiving, the insured is entitled to the maximum benefit – a lump sum payment of $1.5 million – if the insured

suffers a "total permanent disability," defined as "the entire and irrevocable loss of use of both hands or both feet, or one hand and one foot, or the sight of both eyes, or the hearing of both ears, or the ability to speak . . . ."  Although unpleasant, such definitions are a common feature of disability insurance policies, workers' compensation statutes and federal social security disability regulations.  See e.g., Knepp v. Apfel, 204 F.3d 78, 86-87 (3d. Cir. 2000) (social security disability regulations); Fagan v. Bankers Multiple Line Ins. Co., 669 F.2d 293, 294 & n.1 (5th Cir. 1982) (employer's group disability policy); Cotton v. Provident Life & Casualty Ins. Co., 951 F. Supp. 395, 396-397 (E.D.N.Y. 1997) (individual disability policy); Texas Labor Code § 408.161 (2006) (workers' compensation statute).

Because Ms. Peguero's injury does not arguably constitute a "total permanent disability" under the Accidental Disability Plan, Federal denied her claim for the maximum benefit of $1.5 million.  Ms. Peguero's response was to sue Federal, American Express and insurance broker The Sklover Group, Inc. ("Sklover") for "fraud/deceit," breach of contract, promissory estoppel, violation of M.G.L. c. 110E (which concerns insurance advertising), and violation of M.G.L. c. 93A.  Federal moved to dismiss the case and compel arbitration under an arbitration clause in its policy.  Ms. Peguero opposed Federal's motion, ostensibly on the ground that she could not afford arbitration.  Shortly thereafter, Ms. Peguero settled with Federal and Sklover and agreed to dismiss all of her claims against them.

After settling with Federal and Sklover, Ms. Peguero moved to amend her complaint to add HealthExtras as a defendant.  Because American Express had recently brought HealthExtras into the case as a third-party defendant, the court denied without prejudice Ms. Peguero's motion to amend.  Instead of amending her complaint, Ms. Peguero filed a pleading styled as "Plaintiff's Direct Claims Against Third-Party Defendant HealthExtras, Inc." (hereinafter, "Plaintiff's Direct

Claims"). In that pleading Ms. Peguero asserts against HealthExtras claims of "fraud/deceit," breach of contract, promissory estoppel, violation of M.G.L. c. 110E and violation of M.G.L. c. 93A that are identical to those she has asserted against the other defendants.

HealthExtras is a Maryland company that works with insurers and other benefit providers to make available affordable supplemental health and disability benefit programs. Financial services companies such as American Express contract with HealthExtras to offer these programs to their customers. Once a program has been developed, HealthExtras' primary role is to send written materials about the program to customers of the offering company who choose to enroll, and to provide some ongoing customer support services. While HealthExtras has some limited involvement in the preparation of written materials about the program, responsibility for the content of all documents describing the program – particularly documents describing the scope of any insurance coverage provided – rests with the underwriting insurer.

## Background to Discovery Dispute

In July, 2006, Ms. Peguero served on HealthExtras a 30-paragraph document request and a set of 20 interrogatories. While some of these documents requests and interrogatories concern the Accidental Disability Plan that Ms. Peguero purchased and the materials that American Express and HealthExtras sent to her, many of them concern matters having nothing to do with Ms. Peguero or with any claim or defense in this action. More recently, Ms. Peguero served on HealthExtras a deposition notice under Rule 30(b)(6) proposing to examine HealthExtras on 16 enumerated subjects. Like her document request and interrogatories, many of the subjects on which Ms. Peguero proposes to examine HealthExtras are plainly irrelevant. HealthExtras has responded in writing to Ms. Peguero's document request, interrogatories and Rule 30(b)(6) deposition notice, objecting on relevancy and other grounds to those requests that are

objectionable.  Attached as Exhibits A and B are HealthExtras' responses to Ms. Peguero's document request and interrogatories.  Attached as Exhibit C is Ms. Peguero's most recent Rule 30(b)(6) deposition notice to HealthExtras (including its list of Matters on Which Examination is Requested), and attached as Exhibit D is HealthExtras' response to that deposition notice.[1]

The discovery requests to which HealthExtras objects on relevancy grounds fall mainly into two categories.  The first category is requests for information concerning:  (1) the identity of all other customers who enrolled in the Accidental Disability Plan or any "substantially similar plan" during the six-year period before Ms. Peguero enrolled; (2) the number and nature of insurance claims made by other customers under the Plan; (3) the number and amounts of payments made to such other customers; and the identity of other customers who received the maximum benefit of $1.5 million under the Plan (collectively, "Other Customers and Claims Information").  The second category is requests for information generated during the six-year period before Ms. Peguero enrolled in the Plan concerning:  (1) underwriting analyses; (2) actuarial analyses; (3) loss reserves; and (4) gross revenues and net profits generated by the Accidental Disability Plan (collectively, "Underwriting and Financial Information").[2]

Examples of Ms. Peguero's requests for Other Customers and Claims Information include:

---

[1]In addition to the list of subjects on which she proposes to examine HealthExtras, Ms. Peguero's Rule 30(b)(6) deposition notice included a 30-paragraph document request that was substantially identical to the stand-alone document request that she served under Rule 34.  In its response to the deposition notice, HealthExtras incorporated by reference its responses and objections to Ms. Peguero's stand-alone document request.

[2]HealthExtras notes that similar relevancy objections have been asserted by American Express in response to the virtually identical interrogatories and document request that Ms. Peguero served on American Express, and by Sklover in connection with Ms. Peguero's recent Rule 30(b)(6) deposition of that company.

Document Request No. 10:  All documents created in 1997, 1998, 1999, 2000, 2001 or 2002 concerning, evidencing or relating to the number of claims made and/or the number of claims paid in connection with the "Accidental Disability Plan."

Document Request No. 13:  All documents which identify the consumers who purchased the "Accidental Disability Plan" in 1997, 1998, 1999, 2000, 2001, or 2002.

Interrogatory No. 15:  Identify all claimants, if any, who have ever received a payment of $1.5 million under the Accidental Disability Plan.

Matter on Which Examination Is Requested No. 9:  The number and dollar amount of claims paid in 1998, 1999, 2000, 2001, and 2002 in connection with the Accidental Disability Plan or any Substantially Similar Plan.

Including these examples, HealthExtras objects on relevancy grounds to the following requests in this category:  Document Request Nos. 8, 10 and 12-14; Interrogatory Nos. 13-18; and Matters on Which Examination is Requested Nos. 6, 7, 9 and 10.

Examples of Ms. Peguero's requests for Underwriting and Financial Information include:

Document Request No. 7:      All actuarial or statistical analysis or projections created in connection with the "Accidental Disability Plan" in 1997, 1998, 1999, 2000, 2001, or 2002.

Document Request No. 9:      All documents, concerning, evidencing or relating to the gross revenues and/or net profit generated by the sale of the "Accidental Disability Plan" in 1997, 1998, 1999, 2000, 2001, or 2002.

Document Request No. 11:    All documents concerning, evidencing, or relating to reserves set for claims made or expected to be made in 1997, 1998, 1999, 2000, 2001, or 2002 under the Accidental Disability Plan.

Matter on Which Examination is Requested No. 5:  Actuarial, statistical, and/or underwriting analysis or projections created in 1998, 1999, 2000, 2001, or 2002 relating to the Accidental Disability Plan or any Substantially Similar Plans.

Matter on Which Examination is Requested No. 8:  The reserves set for claims projected to be made in 1998, 1999, 2000, 2001, and 2002 in connection with the Accidental Disability Plan or any Substantially Similar Plan.

Including these examples, HealthExtras objects on relevancy grounds to the following requests in this category: Document Request Nos. 7, 9 11 and 15; and Matters on Which Examination is Requested Nos. 5 and 8.

**Argument**

I.    <u>Applicable Legal Standards</u>

Under Rule 26(b)(1), a party "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." The rule goes on to provide that, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." "Relevant evidence" is defined in Federal Rule of Evidence 401 as "evidence having any tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In 2000, Rule 26(b)(1) was amended to narrow the scope of discovery obtainable as of right. Previously, discovery was permitted of information "relevant to the subject matter of the pending action." This broad "subject matter" standard was often abused, with parties "seek[ing] to justify discovery requests that sweep far beyond the claims and defenses of the parties on the ground that they nevertheless have a bearing on the 'subject matter' involved in the action." Fed. R. Civ. P. 26(b)(1) & Advisory Committee Notes on 2000 Amendment. In an effort to focus discovery on "the actual claims and defenses involved in the action," the language of the rule was changed to its present formulation, under which discovery is permitted "regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." <u>Id.</u> Discovery that is not relevant to any claim or defense, but is arguably relevant to the "subject matter involved in the action," is no longer allowed as of right, but may be permitted by the court for good cause. <u>Id.</u>

II.    Nature of Plaintiff's Claims and Defendants' Defenses

To determine the limits of permissible discovery under Rule 26(b)(2) as amended, the court must examine the nature of Ms. Peguero's claims and the defendants' defenses.  While Ms. Peguero invokes a multitude of legal theories, her claims are relatively narrow and fall into two categories.

In the first category of claims, Ms. Peguero alleges that the initial mailing she received concerning the Accidental Disability Plan was misleading in that it "falsely led [her] to believe she would be entitled to a payment of $1.5 million if she were to become disabled."  Plaintiff's Direct Claims, ¶ 9.  Essentially this same allegation underlies Ms. Peguero's claims for "fraud/deceit," promissory estoppel, violation of M.G.L. c. 175, § 110E, and violation of M.G.L. c. 93A.  It is important to note that these claims do not extend to the additional, more detailed materials that the defendants sent to Ms. Peguero concerning the Plan, because she denies receiving those additional materials.  See Affidavit of Altagracia J. Peguero dated June 17, 2005, ¶¶ 4 & 5.[3]  In the second category of claims, Ms. Peguero challenges the disability insurance policy itself, alleging that the policy is "illusory and unconscionable" (Plaintiff's Direct Claims, ¶ 6), or, in the alternative, that the policy provides $1.5 million in coverage for her disability and Federal's refusal to pay her that amount is a breach of contract.  These same allegations underlie all of Ms. Peguero's aforementioned claims as well as her breach of contract claim.

HealthExtras has asserted 15 affirmative defenses to Ms. Peguero's claims, including that Ms. Peguero's claims are barred by applicable statutes of limitation and by the doctrines of waiver, estoppel and laches.  HealthExtras also contends that it made no misrepresentations to Ms. Peguero, that her claimed reliance on any such misrepresentations was unreasonable, and

---

[3]Ms. Peguero filed this affidavit on June 21, 2005 in support of her opposition to Federal's motion to dismiss and compel arbitration.

that HealthExtras' conduct was not the proximate cause of any harm to Ms. Peguero.

HealthExtras contends that its conduct was not unfair or deceptive within the meaning of M.G.L.

c. 93A and that Ms. Peguero has no right of action against HealthExtras under M.G.L. c. 175,

§ 110E.  Finally, HealthExtras contends that there has never been any contractual relationship

between HealthExtras and Ms. Peguero.  American Express has asserted similar affirmative

defenses to Ms. Peguero's claims.

III.    Information Concerning Other Customers And Claims Is Irrelevant To Any
        Claim Or Defense In This Action

As framed by the pleadings, the principal issues in this case are (1) whether Ms. Peguero

was misled by the initial mailing she received concerning the Accidental Disability Plan, and (2)

whether either of the remaining defendants is liable under any of Ms. Peguero's several theories

for having misled her.  A secondary issue is whether the disability insurance coverage provided

by Federal and incorporated into the Plan was "illusory and unconscionable."[4]  Notwithstanding

the narrowness of Ms. Peguero's claims and their focus on the initial mailing she received and

the insurance coverage she purchased, Ms. Peguero's document request and interrogatories seek

a wide range of information about other customers who enrolled not only in the Plan at issue but

in any "substantially similar plan," and not only during the time period surrounding Ms.

Peguero's enrollment but at any time during the six years before she enrolled.  The information

that Ms. Peguero seeks includes personal information identifying these other enrollees,

information concerning claims for benefits made by these other enrollees, information

concerning the number and dollar amount of payments made to these other enrollees, and

---

[4]Ms. Peguero's alternative claim – that the insurance policy in fact provided coverage for her disability in the amount of $1.5 million and that Federal's refusal to pay constituted a breach of contract – appears to have been resolved by Ms. Peguero's settlement with Federal.  While Ms. Peguero has asserted claims of breach of contract and promissory estoppel against all defendants, there is no evidence that HealthExtras entered into any contract with Ms. Peguero or made any promises to her.

information identifying which of these enrollees have received the maximum benefit of $1.5 million under the Plan.  The number of other customers who enrolled in the Accidental Disability Plan between 1997 and 2002 (wholly apart from any "substantially similar plans") exceeds 250,000.

Information about this huge number of other enrollees in the Plan is not relevant to any of Ms. Peguero's claims or any of the remaining defendants' defenses.  That is, such information has no "tendency to make any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Apart from her claim that the disability insurance coverage provided by Federal was "illusory and unconscionable," all of Ms. Peguero's claims turn on the initial mailing that she received and, arguably, her understanding of the information contained in that mailing.  Information concerning the identity of hundreds of thousands of customers who enrolled in the Plan during the six years before Ms. Peguero enrolled has no conceivable bearing on the question of whether Ms. Peguero was misled by the initial mailing that she received.[5]  Nor does information concerning these other enrollees' claims for benefits under the Plan, and Federal's payment of those claims, have any bearing on Ms. Peguero's claim for benefits based on the injury that she suffered, and the benefit to which Federal determined she was entitled under the Plan.[6]  Besides being plainly irrelevant, HealthExtras' disclosure of confidential personal information about these other enrollees and their claims may violate federal and state privacy laws (including the federal Gramm-Leach-

---

[5]An interesting preliminary question is whether Ms. Peguero even read the information contained in that initial mailing, which under the bold heading "Important Disclosure" lists in plain language the types of injuries that constitute "permanent total disability" under the Plan.

[6]Even if such information were relevant, it is information that is primarily, if not exclusively, in the possession of Federal, with whom Ms. Peguero recently settled.  HealthExtras understands that, as part of that settlement, Ms. Peguero agreed not to seek any further discovery from Federal.  Ms. Peguero should not be allowed to visit the burdens of her voluntary agreement in this regard onto the remaining defendants.

Bliley and Health Insurance Portability and Accountability Acts), as well as HealthExtras'

confidentiality, privacy and data security obligations under its Marketing Agreement with

American Express, a copy of which was filed with the court under seal on June 14, 2006.

Even if the court were to conclude that Other Customers and Claims Information may

have some marginal relevance to Ms. Peguero's claims in this case, HealthExtras respectfully

requests that the court nevertheless enter a protective order barring such discovery.  Rule 26(b)

empowers the court to enter such an order if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is
> obtainable from some other source that is more convenient, less burdensome, or
> less expensive; (ii) the party seeking discovery has had ample opportunity by
> discovery in the action to obtain the information sought; or (iii) the burden or
> expense of the proposed discovery outweighs its likely benefit, taking into
> account the needs of the case, the amount in controversy, the parties' resources,
> the importance of the issues at stake in the litigation, and the importance of the
> proposed discovery in resolving the issues.

HealthExtras submits that every one of these factors weighs heavily in favor of a protective order

barring Ms. Peguero from obtaining Other Customers and Claims Information.  Ms. Peguero's

requests in this category are grossly overbroad and burdensome, she has had ample opportunity

to seek this discovery in a more convenient, less burdensome way (i.e. from Federal), and "the

importance of the proposed discovery in resolving the issues" in this case is virtually nil.

IV.    Underwriting and Financial Information Is Irrelevant To Any
       Claim Or Defense In This Action

Like the Other Customers and Claims Information discussed above, the Underwriting and

Financial Information that Ms. Peguero seeks is not relevant to any claim or defense in this case.

For example, analyses of the risk assumed by Federal in underwriting the Accidental Disability

Plan, actuarial data that Federal used in preparing such analyses, or projections of the number or

dollar amount of claims that Federal expected to be filed, have no bearing on the issue of

whether Ms. Peguero was misled by the initial mailing she received concerning the Plan.

Documents reflecting the revenues generated by sales of the Plan, or the net profit (if any)

derived from those revenues, are similarly irrelevant: whether the Plan was highly profitable,

modestly profitable or unprofitable does not make the existence of any fact of consequence to

Ms. Peguero's claim that she was misled by the initial mailing she received more probable or

less probable than it would be without that information. With respect to information concerning

loss reserves, such information has repeatedly been held to be undiscoverable, both because it is

irrelevant and because it is protected as work product.[7] E.g. Independent Petrochemical Corp. v.

Aetna Casualty & Sur. Co., 117 F.R.D. 283, 288 (D.C. Cir. 1986); Union Carbide Corp. v.

Travelers Indem. Co., 61 F.R.D. 411, 413 (W.D. Pa. 1973).

      Nor is such Underwriting and Financial Information relevant to Ms. Peguero's claim that

the disability insurance coverage provided by Federal was "illusory and unconscionable." All of

the written materials describing the Plan – including the initial mailing that Ms. Peguero received

– include the operative definition of "permanent total disability," which specifies in plain

language the types of injuries necessary for the insured to be eligible for the maximum benefit.

The fact that Ms. Peguero's injury does not meet this definition does not render the coverage

"illusory and unconscionable." Ms. Peguero's bare, conclusory allegation to this effect does not

entitle her to rummage through a large quantity of confidential, proprietary and – most

importantly – irrelevant business information in an effort to in an effort to prop up this baseless

claim.

---

[7] Like much of the Other Customers and Claims Information Ms. Peguero seeks, much of this Underwriting and Financial Information was generated, and presumably is maintained, by Federal. Ms. Peguero conveniently could have, and should have, obtained this information from Federal.

**Conclusion**

For the foregoing reasons, HealthExtras respectfully submits that it is entitled to a protective order under Rule 26(c) barring Ms. Peguero from obtaining in discovery the Other Customers and Claims Information and Underwriting and Financial Information described above.

HEALTHEXTRAS, INC.

By its attorney,

 /s/  Donald R. Pinto, Jr.
Donald R. Pinto, Jr., BBO No. 548421
RACKEMANN, SAWYER & BREWSTER
One Financial Center
Boston, Massachusetts  02111
(617) 542-2300

12

<u>CERTIFICATE UNDER LOCAL RULES 7.1(A)(2) and 37.1</u>

I hereby certify that I have conferred in good faith in an attempt to resolve or narrow the issues presented by this motion. This conference took place between the undersigned, as counsel for defendant HealthExtras, Inc., and Kevin Donius, Esq., as counsel for the plaintiff, Altagracia Peguero. The conference took place on September 14, 2006 at approximately 11:40 a.m. at the offices of Rosenblum Newfield, LLC in Stamford, Connecticut and lasted for 6-8 minutes. Attorney Donius and I were unable to resolve the issues about which we conferred. Those issues remain for resolution by the court and are set forth in detail above.

/s/ Donald R. Pinto, Jr.
Donald R. Pinto, Jr.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

/s/ Donald R. Pinto, Jr.
Donald R. Pinto, Jr.

Dated:  October 5, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALTAGRACIA PEGUERO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 05-10995-RCL |
| | ) |
| AMERICAN EXPRESS COMPANY | ) |
| and HEALTHEXTRAS, INC., | ) |
| | ) |
| Defendants. | ) |

RESPONSE OF DEFENDANT HEALTHEXTRAS, INC. TO
PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to Rule 34 of the Federal Rules of Civil Procedure and Rule 34.1 of the Local

Rules of the U.S. District Court for the District of Massachusetts, defendant HealthExtras, Inc.

("HealthExtras") responds to the plaintiff's first request for production of documents (the

"Request") as set forth below.

**General Objections**

1.      HealthExtras objects to the Request to the extent its Instructions and Definitions

purport to impose on HealthExtras obligations in addition to, or inconsistent with, those imposed

by the Federal Rules of Civil Procedure and the Local Rules of the U.S. District Court for the

District of Massachusetts.

2.      HealthExtras objects to the Request to the extent its Instructions and Definitions

purport to define the term "Accidental Disability Plan" as a plan that was "arranged,"

"underwritten," and "marketed" by various parties.  In this response, when using the term

"Accidental Disability Plan," HealthExtras refers to the plan purchased by the plaintiff that is the

subject of this case.

**EXHIBIT A**

3.    HealthExtras objects to the Request to the extent it uses the term "relating to," which is vague and ambiguous, to describe the documents requested. When agreeing to produce documents in response to a request for documents "relating to" a particular subject, HealthExtras will produce documents "concerning" that subject, as the term "concerning" is defined in Rule 26.5(C)(7) of the Local Rules of the U.S. District Court for the District of Massachusetts.

## Individual Objections and Responses

### Request for Production No. 1

All documents mailed to the Plaintiff by or on behalf of the Defendant relating to the "Accidental Disability Plan".

### Objection and Response to Request No. 1

HealthExtras objects to this request on the ground that its reference to documents mailed to the plaintiff "on behalf of" HealthExtras, but not by HealthExtras, is vague and ambiguous.

Subject to this objection and its General Objections, and without waiving any of them, HealthExtras will produce, at a mutually convenient time and place, reproductions or copies of the documents that it mailed to the plaintiff.

### Request for Production No. 2

Exemplars of all documents mailed to the Plaintiff by or on behalf of the Defendant relating to the "Accidental Disability Plan."

### Objection and Response to Request No. 2

HealthExtras objects to this request on the ground that its reference to documents mailed to the plaintiff "on behalf of" HealthExtras, but not by HealthExtras, is vague and ambiguous.

Subject to this objection, and its General Objections, and without waiving any of them, HealthExtras will produce, at a mutually convenient time and place, an exemplar of the insert concerning the Accidental Disability Plan that American Express Company mailed to the plaintiff.

### Request for Production No. 3

Exemplars of documents, including, but not limited to, all promotional materials and advertising documents, relating to the "Accidental Disability Plan" mailed to consumers by or on behalf of the Defendant in 1998, 1999, 2000, 2001 or 2002.

Objections and Response to Request No. 3

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents concerning individuals other than the plaintiff, and documents concerning time periods that are not in issue. HealthExtras further objects to this request on the ground that its reference to documents mailed to the plaintiff "on behalf of" HealthExtras, but not by HealthExtras, is vague and ambiguous.

Subject to these objections and its General Objections, and without waiving any of them, HealthExtras will produce, at a mutually convenient time and place, all responsive documents, if any, in its possession, custody or control that constitute exemplars of documents that American Express Company mailed to the plaintiff.

Request for Production No. 4

All drafts of all documents, including, but not limited to, promotional materials and advertising documents, relating to the "Accidental Disability Plan" created in 1997, 1998, 1999, 2000, 2001 or 2002.

Objection to Request No. 4

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue.

Request for Production No. 5

All documents relating to the "Accidental Disability Plan" filed with any agency or department of the Commonwealth of Massachusetts.

Response to Request No. 5

HealthExtras has no responsive documents in its possession, custody or control.

Request for Production No. 6

All contracts, agreements, and other documents which concern, constitute, evidence or reflect the contractual obligations by, between and among the Defendant, Federal Insurance Company, the Sklover Group, Inc. and/or American Express Company with respect to the development, underwriting, marketing, distribution, and/or administration of the "Accidental Disability Plan."

Objection and Response to Request No. 6

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue.

Subject to this objection and its General Objections, and without waiving any of them, HealthExtras states that American Express Company has produced, subject to a confidentiality stipulation and order, a copy of the Marketing Agreement between American Express Company and HealthExtras.

Request for Production No. 7

All actuarial or statistical analysis or projections created in connection with the "Accidental Disability Plan" in 1997, 1998, 1999, 2000, 2001 or 2002.

Objection and Response to Request No. 7

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue.

Subject to this objection and its General Objections, and without waiving any of them, HealthExtras states that it has no responsive documents in its possession, custody or control.

Request for Production No. 8

All documents concerning, evidencing or relating to the payment of $1.5 million to any claimant at any time in connection with the "Accidental Disability Plan."

Objections and Response to Request No. 8

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents concerning individuals other than the plaintiff, and documents concerning time periods that are not in issue. HealthExtras further objects to this request on the ground that it seeks confidential documents the disclosure of which will violate the privacy rights of other individuals. HealthExtras further objects to this request to the extent it seeks documents protected by the attorney-client privilege, the common law work product immunity and/or Rule 26(b)(3) of the Federal Rules of Civil Procedure.

Subject to these objections and its General Objections, and without waiving any of them, HealthExtras states that it has no responsive documents in its possession, custody or control.

Request for Production No. 9

All documents concerning, evidencing or relating to the gross revenues, and/or net profit generated by the sale of the "Accidental Disability Plan" in 1997, 1998, 1999, 2000, 2001 or 2002.

Objection to Request No. 9

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue.

Request for Production No. 10

All documents created in 1997, 1998, 1999, 2000, 2001 or 2002 concerning, evidencing or relating to the number of claims made and/or the number of claims paid in connection with the "Accidental Disability Plan.'

Objections and Response to Request No. 10

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue. HealthExtras further objects to this request to the extent it seeks documents protected by the attorney-client privilege, the common law work product immunity and/or Rule 26(b)(3) of the Federal Rules of Civil Procedure.

Subject to these objections and its General Objections, and without waiving any of them, HealthExtras states that it has no responsive documents in its possession, custody or control.

Request for Production No. 11

All documents concerning, evidencing, or relating to reserves set for claims made or expected to be made in 1997, 1998, 1999, 2000, 2001 or 2002 under the Accidental Disability Plan.

Objections and Response to Request No. 11

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in

issue. HealthExtras further objects to this request on the ground that it seeks documents that contain confidential, proprietary information. HealthExtras further objects to this request to the extent it seeks documents protected by the attorney-client privilege, the common law work product immunity and/or Rule 26(b)(3) of the Federal Rules of Civil Procedure.

Subject to these objections and its General Objections, and without waiving any of them, HealthExtras states that it has no responsive documents in its possession, custody or control.

Request for Production No. 12

All documents created in 1997, 1998, 1999, 2000, 2001 or 2002 concerning, evidencing or relating to the total dollar amount of claims paid under the Accidental Disability Plan.

Objections and Response to Request No. 12

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue. HealthExtras further objects to this request to the extent it seeks documents protected by the attorney-client privilege, the common law work product immunity and/or Rule 26(b)(3) of the Federal Rules of Civil Procedure.

Subject to these objections and its General Objections, and without waiving any of them, HealthExtras states that it has no responsive documents in its possession, custody or control.

Request for Production No. 13

All documents which identify the consumers who purchased the "Accidental Disability Plan" in 1997, 1998, 1999, 2000, 2001 or 2002.

Objections to Request No. 13

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents concerning individuals other than the plaintiff, and documents concerning time periods that are not in issue. HealthExtras further objects to this request on the ground that it seeks confidential documents the disclosure of which will violate the privacy rights of other individuals.

Request for Production of Documents No. 14

All documents which identify the consumers living in Massachusetts who purchased the "Accidental Disability Plan" in 1997, 1998, 1999, 2000, 2001 or 2002.

6

Objections to Request No. 14

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents concerning individuals other than the plaintiff, and documents concerning time periods that are not in issue. HealthExtras further objects to this request on the ground that it seeks confidential documents the disclosure of which will violate the privacy rights of other individuals.

Request for Production of Documents No. 15

All documents created in 1997, 1998, 1999, 2000, 2001 or 2002 in connection with the "Accidental Disability Plan" relating to underwriting estimates, analysis, projections, accounting, or reserves.

Objections and Response to Request No. 15

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue. HealthExtras further objects to this request to the extent it seeks documents protected by the attorney-client privilege, the common law work product immunity and/or Rule 26(b)(3) of the Federal Rules of Civil Procedure.

Subject to these objections and its General Objections, and without waiving any of them, HealthExtras states that it has no responsive documents in its possession, custody or control.

Request for Production No. 16

All correspondence and communications in 1997, 1998, 1999, 2000, 2001 or 2002 by, between, and/or among American Express Company, Federal Insurance Company, The Sklover Group, Inc., and/or Health Extras relating to the "Accidental Disability Plan."

Objections and Response to Request No. 16

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue. HealthExtras further objects to this request on the ground that it is overly broad. HealthExtras further objects to this request to the extent it seeks documents protected by the attorney-client privilege, the common law work product immunity and/or Rule 26(b)(3) of the Federal Rules of Civil Procedure.

Subject to these objections and its General Objections, and without waiving any of them, HealthExtras will produce, at a mutually convenient time and place, all responsive documents, if

any, in its possession, custody or control that are not privileged or otherwise protected and that concern the plaintiff.

<u>Request for Production No. 17</u>

All documents relating to the promotion, marketing, and/or advertisement of the "Accidental Disability Plan" in 1997, 1998, 1999, 2000, 2001 or 2002.

<u>Objection and Response to Request No. 17</u>

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue. HealthExtras further objects to this request on the ground that it is overly broad.

Subject to this objection and its General Objections, and without waiving any of them, HealthExtras will produce, at a mutually convenient time and place, all responsive documents, if any, in its possession, custody or control that are not privileged or otherwise protected and that were mailed to the plaintiff.

<u>Request for Production No. 18</u>

The "Accidental Disability Plan."

<u>Response to Request No. 18</u>

HealthExtras will produce at a mutually convenient place and time a copy or reproduction of the Accidental Disability Plan that was mailed to the plaintiff.

<u>Request for Production No. 19</u>

The "Accidental Disability Plan" summary.

<u>Response to Request No. 19</u>

HealthExtras will produce at a mutually convenient place and time a copy or reproduction of the Accidental Disability Plan summary that was mailed to the plaintiff.

<u>Request for Production No. 20</u>

The Benefit Plan description relating to the "Accidental Disability Plan."

Response to Request No. 20

HealthExtras will produce at a mutually convenient place and time a copy or reproduction of the Benefit Plan description that was mailed to the plaintiff.

Request for Production No. 21

All documents discussing or relating to the change in name from "Accidental Disability Plan from American Express Company" to "Accident Protection Plan from American Express Company."

Objection to Request No. 21

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue.

Request for Production No. 22

All correspondence and communications by and between the Plaintiff and the Defendant relating to her claims for benefits pursuant to the "Accidental Disability Plan."

Response to Request No. 22

HealthExtras will produce the requested document at a mutually convenient time and place.

Request for Production No. 23

All correspondence and communications by and between American Express Company, the Sklover Group, Inc., Federal Insurance Company, and/or HealthExtras, LLC relating to the Plaintiff's claims for benefits pursuant to the "Accidental Disability Plan."

Objections to Request No. 23

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue. HealthExtras further objects to this request to the extent it seeks documents protected by the attorney-client privilege, the common law work product immunity and/or Rule 26(b)(3) of the Federal Rules of Civil Procedure.

Request for Production No. 24

All customer service records relating to the Plaintiff and the Accidental Disability Plan.

Response to Request No. 24

HealthExtras will produce the requested documents at a mutually convenient time and place.

Request for Production No. 25

All claims files relating to the Plaintiff and the Accidental Disability Policy.

Objection and Response to Request No. 25

HealthExtras objects to this request to the extent it seeks documents protected by the attorney-client privilege, the common law work product immunity and/or Rule 26(b)(3) of the Federal Rules of Civil Procedure.

Subject to this objection and its General Objections, and without waiving any of them, HealthExtras states that it has no responsive documents in its possession, custody or control.

Request for Production No. 26

All marketing agreements between the Defendant, The Sklover Group, Inc., Federal Insurance Company, and/or American Express Company.

Objection and Response to Request No. 26

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue.

Subject to this objection and its General Objections, and without waiving any of them, HealthExtras states that American Express Company has produced, subject to a confidentiality stipulation and order, a copy of the Marketing Agreement between American Express Company and HealthExtras.

Request for Production No. 27

All claim letters and Complaints received by the Defendant on or prior to December 25, 2002 in which a purchaser of the Accidental Disability Plan asserts that the manner in which the Defendant marketed and/or advertised the Accidental Disability Plan was misleading, unfair or deceptive.

Objections to Request No. 27

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue. HealthExtras further objects to this request on the ground that it seeks confidential documents the disclosure of which will violate the privacy rights of other individuals.

Request for Production No. 28

All claim letters and Complaints received by the Defendant on or prior to December 25, 2002 in which a purchaser of any substantially similar plan asserts that the manner in which the Defendant marketed and/or advertised any substantially similar plan was misleading, unfair or deceptive.

Objections to Request No. 28

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue. HealthExtras further objects to this request on the ground that it seeks confidential documents the disclosure of which will violate the privacy rights of other individuals.

Request for Production No. 29

All claim letters and Complaints received by the Defendant after December 25, 2002 in which a purchaser of the Accidental Disability Plan asserted that the plan was unconscionable or that its coverage was illusory.

Objections to Request No. 29

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue. HealthExtras further objects to this request on the ground that it seeks confidential documents the disclosure of which will violate the privacy rights of other individuals. HealthExtras further objects to this request on the ground that, in this context, the terms "unconscionable" and "illusory" are vague and ambiguous.

Request for Production No. 30

All claim letters and Complaints received by the Defendant after December 25, 2002 in which a purchaser of any substantially similar plan asserted that the plan was unconscionable or that its coverage was illusory.

Objections to Request No. 30

HealthExtras objects to this request on the ground that it seeks documents that are not relevant to any claim or defense in this action; specifically, documents that were never sent to the plaintiff and therefore could not have had any bearing on plaintiff's purchase or understanding of the Accidental Disability Plan at issue, and documents concerning time periods that are not in issue. HealthExtras further objects to this request on the ground that it seeks confidential documents the disclosure of which will violate the privacy rights of other individuals. HealthExtras further objects to this request on the ground that, in this context, the terms "unconscionable" and "illusory" are vague and ambiguous.

HEALTHEXTRAS, INC.,

By its attorney,

Donald R. Pinto, Jr., BBO No. 548421
RACKEMANN, SAWYER & BREWSTER
One Financial Center
Boston, Massachusetts 02111
(617) 542-2300

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a true copy of the foregoing document on all other counsel of record by mail.

Donald R. Pinto, Jr.

Dated: September 18, 2006

12

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALTAGRACIA PEGUERO,      ) | |
|          ) | |
|     Plaintiff,       ) | |
|          ) | Civil Action No. 05-10995-RCL |
|     v.          ) | |
|          ) | |
| AMERICAN EXPRESS COMPANY    ) | |
| and HEALTHEXTRAS, INC.,      ) | |
|          ) | |
|     Defendants.     ) | |

## ANSWERS OF DEFENDANT HEALTHEXTRAS, INC.
## TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Rule 33 of the Federal Rules of Civil Procedure and Rule 33.1 of the Local

Rules of the U.S. District Court for the District of Massachusetts, defendant HealthExtras, Inc.

("HealthExtras") answers the plaintiff's first set of interrogatories (the "Interrogatories") as set

forth below.

### General Objection

HealthExtras objects to the Interrogatories to the extent they purport to define the term

"Accidental Disability Plan" as a plan that was "arranged," "underwritten," and "marketed" by

various parties.  In these answers, when using the term "Accidental Disability Plan,"

HealthExtras refers to the plan purchased by the plaintiff that is the subject of this case.

### Individual Objections and Answers

Interrogatory No. 1

Please identify the person answering these interrogatories on behalf of the Defendant.

EXHIBIT B

Answer to Interrogatory No. 1

      Joanna Ficklin, Vice President
      HealthExtras, Inc.
      800 King Farm Boulevard, 4th Floor
      Rockville, Maryland

Interrogatory No. 2

Identify the person(s) from the Defendant who in 1998, 1999, 2000, 2001 and 2002 was (were):

(a)    primarily responsible for the marketing and/or advertising of the Accidental Disability Plan;

(b)    primarily responsible for the written description of the Accidental Disability Plan in the Defendant's promotional materials, solicitations, plan summaries and plan descriptions;

(c)    primarily responsible for any analysis relating to underwriting issues concerning the Accidental Disability Plan; and

(d)    primarily responsible for responding to any claims, complaints, or letters written by or on behalf of consumers relating to the manner in which the Accidental Disability Plan was marketed and/or advertised.

Answer to Interrogatory No. 2

    HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action; specifically, information concerning time periods that are not in issue.

    Subject to this objection and the General Objection, and without waiving either of them, HealthExtras answers as follows:

    (a)    no one from HealthExtras was primarily responsible for marketing or advertising the Accidental Disability Plan; however, HealthExtras provided funding and other support for these activities for a limited period that ended well prior to the plaintiff's enrollment in the Plan; Joanna Ficklin of HealthExtras has knowledge of HealthExtras' role in this regard.

    (b)    no one from HealthExtras was primarily responsible for any written description of the Accidental Disability Plan;

    (c)    no one from HealthExtras was primarily responsible for any such analysis; and

(d)    no one from HealthExtras was primarily responsible for responding to any such claims, complaints or letters.

Interrogatory No. 3

With respect to the Accidental Disability Plan, describe in detail the role or the following entities in the years 1998, 1999, 2000, 2001, and 2002 in connection with its development, underwriting, marketing, advertising, distribution, administration, and claims resolution:

(a)    the Defendant;

(b)    Federal Insurance Company;

(c)    The Sklover Group, Inc.; and

(d)    American Express Company

Objection and Answer to Interrogatory No. 3

HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action; specifically, information concerning time periods that are not in issue.

Subject to this objection and the General Objection, and without waiving either of them, HealthExtras answers as follows:

(a)    HealthExtras' role was post-enrollment customer service, which principally involved sending enrollees a "Welcome Packet" (consisting of a plan summary and plan description), and, upon request, providing enrollees with claim forms;

(b)    Federal Insurance Company's role was underwriting, regulatory approvals including marketing and advertising content, and claims handling;

(c)    The Sklover Group, Inc.'s role was as broker of record and insurance agent; and

(d)    American Express Company was the financial institution that "private-labeled" and offered the plan to its cardmembers.

Interrogatory No. 4

Identify the person(s), if any, at the Sklover Group, Inc. who had any role in the advertisement, marketing, and/or written description of the Accidental Disability Plan in promotional materials, solicitations, plan summaries or plan descriptions in 1998, 1999, 2000, 2001 and 2002, and describe in detail any such role.

3

<u>Objections and Answer to Interrogatory No. 4</u>

HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action; specifically, information concerning time periods that are not in issue. HealthExtras further objects to this interrogatory on the ground that the phrase "any role" is vague, ambiguous and overly broad.

Subject to these objections and the General Objection, and without waiving any of them, HealthExtras states that it does not know the identity of the person(s) at The Sklover Group, Inc. that had any such role. Further answering, HealthExtras incorporates by reference part A of its previously-filed Initial Disclosures of Third-Party Defendant HealthExtras, Inc., in which HealthExtras identifies an individual that HealthExtras believes has such information.

<u>Interrogatory No. 5</u>

Identify the person (s), if any, at Federal Insurance Company who had any role in the advertisement, marketing, and/or written description of the Accidental Disability Plan in promotional materials, solicitations, plan summaries, or plan descriptions in 1998, 1999, 2000, 2001 and 2002, and describe in detail any such role.

<u>Objections and Answer to Interrogatory No. 5</u>

HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action; specifically, information concerning time periods that are not in issue. HealthExtras further objects to this interrogatory on the ground that the term "any role" is vague, ambiguous and overly broad.

Subject to these objections and the General Objection, and without waiving any of them, HealthExtras states that it does not know the identity of the person(s) at Federal Insurance Company that had any such role. Further answering, HealthExtras incorporates by reference part A of its previously-filed Initial Disclosures of Third-Party Defendant HealthExtras, Inc., in which HealthExtras identifies an individual that HealthExtras believes has such information.

<u>Interrogatory No. 6</u>

Identify the person(s), if any, at American Express Company who had any role in the advertisement, marketing, and/or written description of the Accidental Disability Plan in promotional materials, solicitations, plan summaries, or plan descriptions in 1998, 1999, 2000, 2001 and 2002, and describe in detail any such role.

Objections and Answer to Interrogatory No. 6

HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action; specifically, information concerning time periods that are not in issue. HealthExtras further objects to this interrogatory on the ground that the phrase "any role" is vague, ambiguous and overly broad.

Subject to these objections and the General Objection, and without waiving any of them, HealthExtras states that it does not know the identity of the person(s) at American Express Company that had any such role. Further answering, HealthExtras incorporates by reference part A of its previously-filed Initial Disclosures of Third-Party Defendant HealthExtras, Inc., in which HealthExtras identifies several individuals that HealthExtras believes have such information.

Interrogatory No. 7

Prior to December 25, 2002, had any purchaser of the Accidental Disability Plan, or any substantially similar plan, asserted in a claim letter to the Defendant or in a lawsuit against the Defendant that the manner in which the Defendant marketed and/or advertised the Accidental Disability Plan or any substantially similar plan was misleading, unfair or deceptive?

Objection and Answer to Interrogatory No. 7

HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action.

Subject to this objection and the General Objection, and without waiving either of them, HealthExtras states that it did not market or advertise the Accidental Disability Plan to the plaintiff.

Interrogatory No. 8

If the answer to Interrogatory No. 7 is "yes," please identify:

(a)     each such purchaser;

(b)     the date the Defendant received each such claim letter or Complaint;

(c)     each such purchaser's attorney, if any;

(d)     if applicable, the court and docket number of each such lawsuit.

Answer to Interrogatory No. 8

No answer required.

Interrogatory No. 9

Since December 25, 2002, has any purchaser of the Accidental Disability Plan or any substantially similar plan, other than the Plaintiff, asserted in a claim letter to the Defendant or in a lawsuit against the Defendant that the manner in which the Defendant marketed and/or advertised the Accidental Disability Plan or any substantially similar plan was misleading, unfair or deceptive?

Objection and Answer to Interrogatory No. 9

HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action.

Subject to this objection and the General Objection, and without waiving either of them, HealthExtras states that it did not market or advertise the Accidental Disability Plan to the plaintiff.

Interrogatory No. 10

If the answer to Interrogatory No. 9 is "yes," please identify:

(a)     each such purchaser;

(b)     the date the Defendant received each such claim letter or Complaint;

(c)     each such purchaser's attorney, if any;

(d)     if applicable, the Court and docket number of each such lawsuit.

Answer to Interrogatory No. 10

No answer required.

Interrogatory No. 11

Prior to December 25, 2002, had any purchaser of the Accidental Disability Plan, or any substantially similar plan, asserted in a claim letter to the Defendant or in a lawsuit against the Defendant that the Accidental Disability Plan, or any substantially similar plan, was unconscionable or that it provided illusory coverage?

Objections to Interrogatory No. 11

HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action.  HealthExtras further objects to this interrogatory on the ground that, in this context, the terms "unconscionable" and "illusory" are vague and ambiguous.

Interrogatory No. 12

If the answer to interrogatory 11 is "yes," please identify:

(a)    each such purchaser;

(b)    the date the Defendant received each such claim letter or Complaint;

(c)    each such purchaser's attorney; if any;

(d)    if applicable, the Court and docket number of each lawsuit.

Answer to Interrogatory No. 12

No answer required.

Interrogatory No. 13

State the number of years the Defendant has been involved in the marketing of the "Accidental Disability Plan" and the total number of plans purchased by consumers over those years.

Objection to Interrogatory No. 13

HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action.

Interrogatory No. 14

Has any claimant ever received a payment of $1.5 million under the Accidental Disability Plan?  If the answer is "yes," please state the number of claimants receiving said amount.

Objection to Interrogatory No. 14

HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action.

Interrogatory No. 15

Identify all claimants, if any, who have ever received a payment of $1.5 million under the Accidental Disability Plan.

Objections to Interrogatory No. 15

HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action. HealthExtras further objects to this interrogatory on the ground that it seeks confidential information the disclosure of which will violate the privacy rights of other individuals.

Interrogatory No. 16

State the number of years the Defendant has been involved in the marketing of substantially similar plans to the Accidental Disability Plan and the total number of such plans purchased by consumers over these years.

Objection to Interrogatory No. 16

HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action.

Interrogatory No. 17

Has any claimant ever received a payment of $1.5 million under a substantially similar plan? If the answer is "yes," please state the number of claimants receiving said amount.

Objection to Interrogatory No. 17

HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action.

Interrogatory No. 18

Identify all claimants, if any, who have ever received a payment of $1.5 million under a substantially similar plan.

Objection to Interrogatory No. 18

HealthExtras objects to this interrogatory on the ground that it seeks information that is not relevant to any claim or defense in this action.

Interrogatory No. 19

Please identify each person the Defendant expects to call as an expert witness at the trial of this action, setting forth:

(a)    the subject matter on which each such person is expected to testify;

(b)    the substance of all facts about which each such person is expected to testify;

    (c)      the substance of all opinions of each such person about which each person may testify;

    (d)      a summary of the grounds for each such opinion and the substance of all facts on which such opinions are based; and

    (e)      his/her professional degrees and qualifications.

## Answer to Interrogatory No. 19

HealthExtras has not yet determined whether it expects to call any expert witnesses at the trial of this action.

## Interrogatory No. 20

State the basis for, and identify all documents on which the Defendant relies in support of, the defendants':

    (a)      First Affirmative Defense that the Plaintiff's claims are barred by the statute of limitations;

    (b)      Third Affirmative Defense that the Plaintiff's claims are barred by the doctrine of accord and satisfaction;

    (c)      Fourth Affirmative Defense of waiver;

    (d)      Fifth Affirmative Defense that the Plaintiff's claims are barred under the doctrine of estoppel;

    (e)      Sixth Affirmative Defense of laches; and

    (f)      Eleventh Affirmative Defense that the Defendant's claims are barred because the form and content of the policy was approved by the commissioner of insurance.

## Objections and Answer to Interrogatory No. 20

HealthExtras objects to this interrogatory to the extent it seeks information that is protected by the common law work product doctrine and Rule 26(b)(3) of the Federal Rules of Civil Procedure. HealthExtras further objects to this interrogatory on the ground that HealthExtras' investigation of this matter is ongoing, discovery remains open, and HealthExtras has not yet received the plaintiff's documents, interrogatory responses and deposition testimony. Accordingly, HealthExtras is unable, at this time, to definitively state all bases for, and identify all documents on which it relies (or will rely) in support of, its referenced affirmative defenses. HealthExtras reserves the right to supplement its answer to this interrogatory to the extent required or permitted by the Federal Rules of Civil Procedure.

Subject to these objections and the General Objection, and without waiving any of them, HealthExtras answers as follows:

(a)    Among the bases for this affirmative defense are (a) the plaintiff's receipt, in July, 2002, of a "Welcome Packet" containing, among other documents, a one-page plan summary and a detailed, 22-page benefit plan description, and (b) the receipt by plaintiff's counsel in January, 2003 (more than three years before the plaintiff filed her claims against HealthExtras), of copies of these same materials. Among the documents on which HealthExtras relies are the Welcome Packet and records of HealthExtras' communications with the plaintiff and her counsel in 2002 and early 2003.

(b)    Among the bases for this affirmative defense are (a) the plaintiff's receipt of a check from Federal Insurance Company ("Federal") representing the benefit to which Federal determined the plaintiff was entitled under the applicable insurance policy, and (b) the plaintiff's recent settlement with, and dismissal with prejudice of her claims against, Federal. Among the documents on which HealthExtras relies are the benefit check that Federal sent to the plaintiff and documents concerning the plaintiff's recent settlement with Federal.

(c)    Among the bases for this affirmative defense are (a) the plaintiff's receipt of the aforementioned Welcome Packet, (b) the plaintiff's unlimited opportunity to read and understand the terms of the coverage she had purchased, (c) the plaintiff's regular, monthly payments for the coverage she had purchased, and (d) the plaintiff's recent settlement with Federal. Among the documents on which HealthExtras relies are the Welcome Packet and documents concerning the plaintiff's recent settlement with Federal.

(d)    Among the bases for this affirmative defense are (a) the plaintiff's receipt of the aforementioned Welcome Packet, (b) the plaintiff's unlimited opportunity to read and understand the terms of the coverage she had purchased, (c) the plaintiff's regular, monthly payments for the coverage she had purchased, and (d) the plaintiff's recent settlement with Federal. Among the documents on which HealthExtras relies are the Welcome Packet and documents concerning the plaintiff's recent settlement with Federal.

(e)    Among the bases for this affirmative defense are the plaintiff's delay of over three years in asserting her claims against HealthExtras, and any resulting prejudice to HealthExtras. Among the documents on which HealthExtras relies are the aforementioned Welcome Packet and records of HealthExtras' communications with the plaintiff and her counsel in 2002 and early 2003.

(f)    Among the bases for this affirmative defense are Federal's filing with the Massachusetts Insurance Commissioner of the policy form at issue.  Among the documents on which HealthExtras relies are that policy form and any related documents that Federal so filed.

## VERIFICATION

The undersigned states, on behalf of HealthExtras, Inc. and not individually, that she has read the foregoing interrogatories and answers, and that the facts set forth in the answers are true to the best of her knowledge, information and belief.

Signed under the penalties of perjury this 18th day of September, 2006.


HEALTHEXTRAS, INC.,

By:


Joanna Ficklin, Vice President



AS TO OBJECTIONS ONLY:


Donald R. Pinto, Jr., BBO No. 548421
RACKEMANN, SAWYER & BREWSTER
One Financial Center
Boston, Massachusetts  02111
(617) 542-2300

*Attorney for HealthExtras, Inc.*

11

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a true copy of the foregoing document on all other counsel of record by mail.

_____
Donald R. Pinto, Jr.

Dated:  September 22, 2006

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ALTAGRACIA J. PEGUERO,<br>    Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | Civil Action No. 05-10995-RCL |
| AMERICAN EXPRESS COMPANY,<br>THE SKLOVER GROUP, INC.<br>and FEDERAL INSURANCE COMPANY,<br>    Defendants. | )<br>)<br>)<br>) | **RE-NOTICE OF TAKING<br>F.R.C.P. 30(b)6<br>DEPOSITION** |
| AMERICAN EXPRESS COMPANY,<br>    Third-Party Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | |
| HEALTHEXTRAS, L.L.C.,<br>    Third-Party Defendant. | )<br>)<br>) | |

TO:    John F. Farraher, Jr., Esq.      H. Christopher Boehning, Esq.
           Greenberg & Traurig            Paul, Weiss, Rifland, Wharton &
           One International Place           Garrison, LLP
           20th Floor                  1285 Avenue of the Americas
           Boston, MA  02110           New York, NY  10019-6064

           Donald R. Pinto, Jr., Esq.        Allison M. O'Neil, Esq.
           Rackemann, Sawyer & Brewster,   Craig & Macaulay, P.C.
           P.C.                      Federal Reserve Plaza
           One Financial Center         600 Atlantic Avenue
           Boston, MA  020111         Boston, MA  02210

        The Plaintiff, Altagracia J. Peguero, pursuant to

F.R.C.P. 30(b)6, hereby notifies you that at 9:00 a.m. on

September 26, 2006, the Plaintiff, by and through her attorney,

will take the deposition of the person(s) to be designated by

HealthExtras, L.L.C. to testify on its behalf regarding the

**EXHIBIT C**

matters set forth in Exhibit A before a Notary Public or a person authorized to administer oaths by the Commonwealth of Massachusetts.  The deposition will take place at the Law Offices of Kevin Donius, P.C., 500 Granite Avenue, Milton, MA 02186.

The designated deponents are further requested to bring with them the documents listed in Exhibit B.

You are invited to attend and cross-examine.

THE PLAINTIFF,
By her Attorney,

Kevin Donius, Esquire
Law Offices of Kevin Donius, P.C.
500 Granite Avenue
Milton, MA 02186
TEL (617) 296-4900
FAX (617) 696-6704
BBO#: 551298

Dated:  September 5, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail / by hand.

Date: 9/5/.06

## EXHIBIT A

This Exhibit incorporates by reference the Uniform Definitions In Discovery Requests set forth in Local Rule 26.5.

"Accidental Disability Plan" means the Accidental Disability Plan, arranged by The Sklover Group, Inc., underwritten by Federal Insurance Group, and marketed through American Express, which is the subject of the Complaint.

"American Express" means American Express Company.

"Federal Insurance" means Federal Insurance Company.

"HealthExtras" means HealthExtras, L.L.C.

"Sklover" means The Sklover Group, Inc.

"Substantially Similar Plan" means any plan offered by American Express with the same or substantially the same term and conditions, regardless of the identity of the underwriter or the plan's name.

"The Plaintiff" means Altragracia J. Peguero.

### MATTERS ON WHICH EXAMINATION IS REQUESTED PURSUANT TO F.R.C.P. 30(B)6

1.  Documents mailed to the Plaintiff by or on behalf of American Express, Federal Insurance, Sklover, and/or HealthExtras relating to the Accidental Disability Plan.

2.  The contractual agreements and obligations between and among American Express, Federal Insurance, Sklover, and/or HealthExtras relating to the development, underwriting, marketing, distribution, and/or administration of the Accidental Disability Plan.

3.  The marketing, promotion, and advertisement of the Accidental Disability Plan between January 1, 1998 and December 25, 2002.

4.  Documents related to the Accidental Disability Plan filed with any agency or department of the Commonwealth of Massachusetts.

5.  Actuarial, statistical, and/or underwriting analysis or projections created in 1998, 1999, 2000, 2001, or 2002 relating to the Accidental Disability Plan or any Substantially Similar Plans.

6.  The number of consumers who purchased the Accidental Disability Plan or any Substantially Similar Plan in 1998, 1999, 2000, 2001, and 2002.

7.  The number of claims made under the Accidental Disability Plan or any Substantially Similar Plan in 1998, 1999, 2000, 2001, or 2002.

8.  The reserves set for claims projected to be made in 1998, 1999, 2000, 2001, and 2002 in connection with the Accidental Disability Plan or any Substantially Similar Plan.

9.  The number and dollar amount of claims paid in 1998, 1999, 2000, 2001, and 2002 in connection with the Accidental Disability Plan or any Substantially Similar Plan.

10. The number of consumers who have been paid $1.5 million pursuant to the Accidental Disability Plan or any Substantially Similar Plan in 1998, 1999, 2000, 2001 or 2002.

11. The reason for the change in name of the policy from "Accidental Disability Plan from American Express Company" to "Accident Protection Plan from American Express Company."

12. Claim letters, complaints, lawsuits, and/or notice of any kind received by American Express, Sklover, Federal Insurance, and/or HealthExtras in which a purchaser of the Accidental Disability Plan or a Substantially Similar Plan, or someone on their behalf, asserts the manner in which the Defendant marketed and/or advertised said plan was misleading, unfair or deceptive.

13. Claim letters, complaints, lawsuits, and/or notice of any kind received after December 25, 2002 by American Express, Sklover, Federal Insurance, and/or HealthExtras in which a purchaser of the Accidental Disability Plan or a Substantially Similar Plan, or someone on their behalf,

A-2

asserts the manner in which the Defendant marketed and/or advertised said plan was misleading, unfair or deceptive.

14. Claims letters, complaints, lawsuits, and/or notice of any kind received by American Express, Sklover, Federal Insurance, and/or HealthExtras before December 25, 2002 in which a purchaser of the Accidental Disability Plan or any Substantially Similar Plan, or anyone on their behalf, asserts that said plan was unconscionable or that its coverage was illusory.

15. Claims letters, complaints, lawsuits, and/or notice of any kind received by American Express, Sklover, Federal Insurance, and/or HealthExtras after December 25, 2002 in which a purchaser of the Accidental Disability Plan or any Substantially Similar Plan, or anyone on their behalf, asserts that said plan was unconscionable or that is coverage was illusory.

16. The claim file and customer service records relating to the Plaintiff's claim under the Accidental Disability Plan.

17. Each and every allegation in the Amended Complaint in this matter, and any defenses thereto.

A-3

## EXHIBIT B

This Exhibit incorporates by reference the Uniform Definitions In Discovery Requests set forth in Local Rule 26.5.

"Accidental Disability Plan" means the Accidental Disability Plan, arranged by The Sklover Group, Inc., underwritten by Federal Insurance Group, and marketed through American Express, which is the subject of the Complaint.

"American Express" means American Express Company.

"Federal Insurance" means Federal Insurance Company.

"HealthExtras" means HealthExtras, L.L.C.

"Sklover" means The Sklover Group, Inc.

"Substantially Similar Plan" means any plan offered by American Express with the same or substantially the same term and conditions, regardless of the identity of the underwriter or the plan's name.

"The Plaintiff" means Altragracia J. Peguero.

### DOCUMENT REQUESTS

1.    All documents mailed to the Plaintiff by or on behalf of American Express, Federal Insurance, Sklover, and/or HealthExtras relating to the "Accidental Disability Plan".

2.    Exemplars of all documents mailed to the Plaintiff by or on behalf of American Express, Federal Insurance, Sklover, and/or HealthExtras relating to the "Accidental Disability Plan".

3.    Exemplars of documents, including, but not limited to, all promotional materials and advertising documents, relating to the "Accidental Disability Plan" mailed to consumers in 1998, 1999, 2000, 2001, or 2002.

4.    All drafts of all documents, including, but not limited to, promotional materials and advertising documents, relating to the "Accidental Disability Plan" created in 1998, 1999, 2000, 2001, or 2002.

B-1

5. All documents relating to the "Accidental Disability Plan" filed with any agency or department of the Commonwealth of Massachusetts.

6. All contracts, agreements, and other documents which concern, constitute, evidence or reflect the contractual obligations by, between and among American Express, Federal Insurance, Sklover, and/or HealthExtras with respect to the development, underwriting, marketing, distribution, and/or administration of the "Accidental Disability Plan".

7. All actuarial or statistical analysis or projections created in connection with the "Accidental Disability Plan" or any Substantially Similar Plan in 1998, 1999, 2000, 2001, or 2002.

8. All documents concerning, evidencing or relating to the payment of $1.5 Million to any claimant at any time in connection with the "Accidental Disability Plan" or any Substantially Similar Plan.

9. All documents, concerning, evidencing or relating to the gross revenues, and/or net profit generated by the sale of the "Accidental Disability Plan" or any Substantially Similar Plan in 1998, 1999, 2000, 2001, or 2002.

10. All documents created in 1998, 1999, 2000, 2001 or 2002 concerning, evidencing or relating to the number of claims made and/or the number of claims paid in connection with the "Accidental Disability Plan" or any Substantially Similar Plan.

11. All documents concerning, evidencing, or relating to reserves set for claims made or expected to be made in 1998, 1999, 2000, 2001, or 2002 under the Accidental Disability Plan or any Substantially Similar Plan.

12. All documents created in 1998, 1999, 2000, 2001, and 2002 concerning, evidencing or relating to the total dollar amount of claims paid under the Accidental Disability Plan or any Substantially Similar Plan.

13. All documents which identify the consumers who purchased the "Accidental Disability Plan" or any Substantially Similar Plan in 1998, 1999, 2000, 2001, or 2002.

14.  All documents which identify the consumers living in
     Massachusetts who purchased the "Accidental Disability
     Plan" or any Substantially Similar Plan in 1998, 1999,
     2000, 2001, or 2002.

15.  All documents created in 1998, 1999, 2000, 2001, or 2002
     in connection with the "Accidental Disability Plan" or
     any Substantially Similar Plan relating to underwriting
     estimates, analysis, projections, accounting, or
     reserves.

16.  All correspondence and communications in 1998, 1999,
     2000, 2001, and 2002 by, between, and/or among American
     Express Company, Federal Insurance Company, The Sklover
     Group, Inc., and/or Health Extras relating to the
     "Accidental Disability Plan" or any Substantially Similar
     Plan.

17.  All documents relating to the promotion, marketing,
     and/or advertisement of the "Accidental Disability Plan"
     or any Substantially Similar Plan in 1998, 1999, 2000,
     2001, and/or 2002.

18.  The "Accidental Disability Plan."

19.  The "Accidental Disability Plan" summary.

20.  The Benefit Plan description relating to the "Accidental
     Disability Plan".

21.  All documents discussing or relating to the change in
     name from "Accidental Disability Plan from American
     Express Company" to "Accident Protection Plan from
     American Express Company."

22.  All correspondence and communications by and between the
     Plaintiff and American Express, Sklover, Federal
     Insurance, or HealthExtras relating to her claims for
     benefits pursuant to the "Accidental Disability Plan".

23.  All correspondence and communications by and between
     American Express, Sklover, Federal Insurance, and/or
     HealthExtras relating to the Plaintiff's claims for
     benefits pursuant to the "Accidental Disability Plan".

24. All customer service records relating to the Plaintiff and the Accidental Disability Plan.

25. All claims files relating to the Plaintiff and the Accidental Disability Policy.

26. All marketing agreements between and/or among American Express, Sklover, Federal Insurance, and/or HealthExtras

27. All claim letters, complaints, lawsuits, or notice of any kind received by American Express, Sklover, Federal Insurance, and/or HealthExtras on or prior to December 25, 2002 in which a purchaser of the Accidental Disability Plan, or someone on the purchaser's behalf, asserts that the manner in which the Defendant marketed and/or advertised the Accidental Disability Plan was misleading, unfair or deceptive.

28. All claim letters, complaints, lawsuits or notice of any kind received by American Express, Sklover, Federal Insurance, and/or HealthExtras on or prior to December 25, 2002 in which a purchaser of any Substantially Similar Plan asserts that the manner in which the Defendant marketed and/or advertised any Substantially Similar Plan was misleading, unfair or deceptive.

29. All claim letters, complaints, lawsuits or notice of any kind received by American Express, Sklover, Federal Insurance, and/or HealthExtras after December 25, 2002 in which a purchaser of the Accidental Disability Plan asserted that the plan was unconscionable or that its coverage was illusory.

30. All claim letters, complaints, lawsuits or notice of any kind received by American Express, Sklover, Federal Insurance, and/or HealthExtras after December 25, 2002 in which a purchaser of any Substantially Similar Plan asserted that the plan was unconscionable or that its coverage was illusory.

# RACKEMANN, SAWYER & BREWSTER

PROFESSIONAL CORPORATION

C O U N S E L L O R S   A T   L A W

ESTABLISHED 1886

**ONE FINANCIAL CENTER**

**BOSTON, MASSACHUSETTS 02111-2659**

TELEPHONE 617-542-2300

FACSIMILE 617-542-7437

www.rackemann.com

DONALD R. PINTO, JR.
(617) 951-1118
drp@rackemann.com

September 15, 2006

BY FACSIMILE and MAIL

Kevin Donius, Esq.
Law Offices of Kevin Donius, P.C.
500 Granite Avenue
Milton, MA   02186

> Re:   Peguero v. American Express, et al.
>        USDC C. A. No.  05-10995-RCL

Dear Kevin:

This letter will serve as my formal designation of a witness to testify on behalf of HealthExtras, Inc. in response to your September 5, 2006 notice of deposition under Rule 30(b)(6).  It will also serve as my formal objection to the list of Matters on Which Examination is Requested and the Document Requests contained in Exhibits A and B to your notice.

HealthExtras designates Joanna Ficklin, Vice President, to testify on its behalf.  Generally, Ms. Ficklin will testify concerning the documents that HealthExtras mailed to the plaintiff and HealthExtras' limited role in the creation of those documents.  Ms. Ficklin also will testify about HealthExtras' customer service records relating to the plaintiff's claim under the Accidental Disability Plan.  With specific reference to your list of Matters on Which Examination is Requested (Exhibit A), Ms. Ficklin will testify in response to Matter Nos. 1-3 and 16, but only as they relate to the plaintiff and her claim. Ms. Ficklin will not testify in response to Matter Nos. 4-15 or 17.  HealthExtras objects to:  Matter Nos. 1-3 and 16 to the extent that they seek testimony that is unrelated to the plaintiff and her claim; Matter No. 4 on the ground that HealthExtras has no personal knowledge concerning that subject; Matter Nos. 5-15 on the ground that they seek testimony that is not relevant to any claim or defense in this action; and Matter No. 17 on the ground that it is overly broad and apparently seeks testimony concerning many subjects about which

**EXHIBIT D**

RACKEMANN, SAWYER & BREWSTER

Kevin Donius, Esq.
September 15, 2006
Page 2


HealthExtras has no personal knowledge and testimony concerning legal claims and defenses that are not proper subjects for a Rule 30(b)(6) deposition.

With reference to your Document Requests (Exhibit B), HealthExtras incorporates by reference its objections to the substantially identical requests contained in your client's First Request for Production of Documents served on July 20, 2006. I e-mailed a draft copy of HealthExtras' response to that document request (including HealthExtras' objections) on September 11, 2006, and will serve a signed original on Monday, September 18, 2006.

I anticipate filing, next week, a motion for a protective order establishing the parameters of permissible discovery in this action.

Very truly yours,

Donald R. Pinto, Jr.

DRP/mo
Enclosures

cc:    John F. Farraher, Jr., Esq.
       Louis Smith, Esq.
       Danielle Aguirre, Esq.
       Allison M. O'Neill, Esq.