UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
ALTAGRACIA J. PEGUERO,           )
    Plaintiff,               )      Civil Action No. 05-10995-RCL
                             )
    v.                       )      **PLAINTIFF'S OPPOSITION**
                             )      **TO DEFENDANT HEALTHEXTRAS'**
AMERICAN EXPRESS COMPANY, and )      **MOTION FOR A PROTECTIVE ORDER**
HEALTHEXTRAS, INC.,              )
    Defendants.              )
_____)

    The Plaintiff, Altagracia J. Peguero ("Ms. Peguero")

submits this memorandum in opposition to the Motion for

Protective Order filed by the Defendant, HealthExtras, Inc.

("HealthExtras").  The information sought by Ms. Peguero is

central to her claims that the Defendants devised a scheme to

collect premiums without paying benefits and unfairly and

deceptively marketed a so-called Accidental Disability Plan (the

"Plan") with benefits so minimal that no properly informed

consumer would ever purchase it.[1]

**I.  FACTS**

    HealthExtras is in "the business of promoting, selling, and

providing to consumers" programs like the Plan in question here.

See Marketing Agreement between HealthExtras and American

Express dated September 17, 1999 (the "Marketing Agreement").[2]

---

[1] The Plaintiff is no longer pursuing her interrogatories and document requests seeking the _identity_ of the consumers who purchased the Plan or who were paid the promised $1.5 Million benefit.  The Plaintiff is still seeking information regarding, among other things, the number of policies sold, claims made, and claims paid.

[2] A copy of the Marketing Agreement was filed under seal on June 14, 2006.

Pursuant to the Marketing Agreement, HealthExtras and American Express have shared responsibilities with respect to the creation and dissemination of "Promotional Materials" "designed to solicit customers to subscribe to the Accidental Disability Plan and become enrolled."  According to information provided in HealthExtras' Motion for Protective Order, between 1997 and 2002 more than 250,000 consumers enrolled in the Plan.  HealthExtras has been involved for years in marketing virtually identical "accident disability plans" with other credit card companies and marketing partners.

Ms. Peguero became an enrollee in the Plan in August, 2002. As the single mother of two children, and the sole supporter of her family, Ms. Peguero was concerned about her financial security.  In the summer of 2002, Ms. Peguero, a dentist trained in the Dominican Republic then working as a dental hygienist in Boston, received a solicitation from American Express with her American Express bill promising her, in blue, oversized print, "**Financial Security**" and "up to $1.5 Million if an accident leaves you permanently disabled."  The solicitation further stated that at "American Express, we understand that our Cardmembers need for financial security and peace-of-mind is a step above the ordinary . . . With the Accidental Disability

Plan from *American Express* you can prevent a personal tragedy from becoming a financial tragedy."

The solicitation also contained a photograph of the late Christopher Reeve, the movie star rendered quadriplegic in a horseback riding accident, and a quote from him stating "Most people don't think about disability coverage until it is too late. Please don't put this off." The solicitation does not state whether Mr. Reeve was paid for his endorsement. On the back of the solicitation, in small print intended to obscure the information contained therein, the extraordinary limitations of the policy are listed. [3] A copy of a sample solicitation of the type received by Ms. Peguero is attached as Exhibit A.

Based upon her belief that she would be paid $1.5 Million if she became totally disabled, Ms. Peguero purchased the policy. Thereafter, on December 25, 2002, Ms. Peguero became totally disabled in an automobile accident in which she lost her right, dominant arm. When Ms. Peguero applied for the $1.5 Million benefit, she was informed that she was not disabled even though she could never return to her work and that the Plan only provided coverage of $500 for the loss of her arm.

---

[3] To be permanently disabled under the Plan, an insured must lose both hands or both feet, or one hand and one foot, or sight in both eyes, or hearing in both ears, or the ability to speak, and be prevented from returning to work. Under this definition, even Mr. Reeve himself, because he was still capable of working as an actor and pitchman, would not qualify for the promised $1.5 Million.

Ms. Peguero brought claims against American Express, Federal Insurance Company (the underwriter), The Sklover Group, Inc. (the broker), and HealthExtras asserting causes of action for fraud/deceit, promissory estoppel, violation of M.G.L. c.175, §110, violation of M.G.L. c.93A, and breach of contract, alleging that the Defendants unfairly, deceptively and intentionally tricked her into buying a valueless product.

On or about September 5, 2006, HealthExtras was served with a Re-Notice of Taking F.R.C.P. 30(b)6 Deposition in which 17 matters for examination were listed. HealthExtras responded by stating it would respond only to items 1-3 and 16. HealthExtras subsequently filed a Motion for Protective Order. Ms. Peguero is pressing her right to conduct discovery with respect to matters for examinations numbers 5-14 and the interrogatories and document requests previously served regarding these matters.

## II.  LEGAL ARGUMENT

### IIA. HEALTHEXTRAS HAS FAILED TO MEET ITS' BURDEN OF SHOWING THE INFORMATION SOUGHT IS NOT RELEVANT

"Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." F.R.C.P.26(b)(1). Discovery is permitted on any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 388 (1947).

4

Moreover, courts are encouraged to apply a liberal construction of "relevance", <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389 (1978), and a party opposing discovery has the burden of proving lack of relevance.  <u>McLeod, Alexander, Powel & Apfel, P.C. v. Quarles</u>, 849 F.2d 1482, 1485 (5th Cir.1990).

Here, HealthExtras has not, and cannot, show that the information sought by Ms. Peguero is not relevant to her claims.

### IIB. THE INFORMATION SOUGHT BY MS. PEGUERO IS HIGHLY RELEVANT

1.    <u>Financial/Underwriting Information</u>

In her 30(b)(6) deposition notice to HealthExtras, Ms. Peguero has listed the following topics for examination:

5.    Actuarial, statistical, and/or underwriting analysis or projections created in 1998, 1999, 2000, 2001, or 2002 relating to the Accidental Disability Plan or any Substantially Similar Plans.

6.    The number of consumers who purchased the Accidental Disability Plan or any Substantially Similar Plan in 1998, 1999, 2000, 2001, and 2002.

7.    The number of claims made under the Accidental Disability Plan or any Substantially Similar Plan in 1998, 1999, 2000, 2001, or 2002.

8.    The reserves set for claims projected to be made in 1998, 1999, 2000, 2001 and 2002 in connection with the Accidental Disability Plan or any Substantially Similar Plan.

9.    The number and dollar amount of claims paid in 1998, 1999, 2000, 2001, and 2002 in connection with the

Accidental Disability Plan or any Substantially
Similar Plan.

10. The number of consumers who have been paid $1.5
Million pursuant to the Accidental Disability Plan or
any Substantially Similar Plan in 1998, 1999, 2000,
2001 or 2002.

Likewise, in her interrogatories and documents requests,
Ms. Peguero has sought financial and underwriting information
relating to the Plan including information regarding the number
of policies sold, the number of claims made, and the number of
claims paid with respect to the Plan in question and
substantially similar plans.

Contrary to HealthExtras' assertions, this information is
"clearly relevant."  See "Order Granting Plaintiff's First
Motion to Compel," Ernest Carrizal, Jr. v. HealthExtras, Inc.
and Federal Insurance Company, EP-03-CA-063-FM, United States
District Court for the Western District of Texas, El Paso
Division (December 23, 2003) (involving  a nearly identical
discovery dispute as here), a copy of which is attached as
Exhibit B.

In fact, the information sought goes to the heart of Ms.
Peguero's claims that the policy was essentially worthless, and
that the Promotional Materials provided to her were unfair and
deceptive and intentionally misleading.  To prove she was
deceived, Ms. Peguero is entitled to know how often, if ever,

6

the plan has provided "financial security" to anyone and how
often, if ever, the promised $1.5 million has actually been
paid.

Ms. Peguero alleges that she was led to believe she was
purchasing a disability policy that would provide financial
security if she became disabled; in fact, she alleges, she
received a valueless product with a definition of disability so
restrictive that no one or virtually no one would ever qualify
for the promised benefits.

The solicitation promised Ms. Peguero "up to $1.5 Million"
if she became permanently disabled; if, in fact, not one or only
a small number of the 250,000 enrollees from 1997 through 2002
had ever received $1.5 Million in connection with this Plan,
such evidence would strongly bolster both her claims of
deception and that the coverage provided by the Plan was
illusory.

The financial/underwriting information is also relevant to
the issue of whether, and the extent to which, American Express
and/or HealthExtras <u>knew</u> it was misrepresenting the policy.
This is central to the fraud/deceit and M.G.L. c.93A claims.  To
prevail on her claim of fraud, Ms. Peguero must establish that
the Defendants intended to deceive her.  <u>Harris v. Delco
Products, Inc.</u>, 305 Mass. 362, 25 N.E.2d 740 (1940); and a

"knowing or willful" violation of M.G.L. c.93A would expose the Defendants to double or triple damages. M.G.L. c. 93A, §9. Accordingly, what these Defendants knew about the number of claims made and paid and when they knew it is critical to establishing both the Plaintiff's claims for fraud/deceit and her entitlement to double or treble damages under M.G.L. c.93A.

By the time Ms. Peguero received her solicitation, HealthExtras had the financial records and underwriting analysis to know exactly how often anyone received $1.5 Million under the Plan. Again, if the information turns out to be that $1.5 Million is never paid out or almost never paid out, it will tend to show that HealthExtras knew or should have known that its Promotional Materials were misleading.

It is important to note that information sought is readily available in reports created by HealthExtras. Pursuant to the Marketing Agreement, HealthExtras was obligated to provide monthly reports to American Express regarding, among other things, the number of enrollees, paid and open claims, and the Plan's loss ratio.

    2.   Claim Letters and Lawsuits

The 30(b)(6) deposition notice to HealthExtras also lists the following as topics for examination:

12. Claim letters, complaints, lawsuits, and/or notice of any kind received by American Express, Sklover, Federal Insurance, and/or HealthExtras in which ha purchaser of the Accidental Disability Plan or a Substantially Similar Plan, or someone on their behalf, asserts the manner in which the Defendant marketed and/or advertised said plan was misleading, unfair or deceptive.

13. Claim letters, complaints, lawsuits, and/or notice of any kind received after December 25, 2002 by American Express, Sklover, Federal Insurance, and/or HealthExtras in which a purchaser of the Accidental Disability Plan or a Substantially Similar Plan, or someone on their behalf, asserts the manner in which the Defendant marketed and/or advertised said plan was misleading, unfair or deceptive.

14. Claims letters, complaints, lawsuits, and/or notice of any kind received by American Express, Sklover, Federal Insurance, and/or HealthExtras before December 25, 2002 in which a purchaser of the Accidental Disability Plan or any Substantially Similar Plan, or anyone on their behalf, asserts that said plan was unconscionable or that its coverage was illusory.

Ms. Peguero seeks information regarding claim letters received and lawsuits filed against HealthExtras in which the allegation was made that the policy was marketed and/or advertised deceptively and/or that its coverage was illusory for two reasons. First, this information is critical to the central issue, as discussed previously, of whether HealthExtras and/or American Express knew or should have known that its marketing was deceptive.

Second, access to other cases and attorneys who have handled similar cases in the past is very likely to lead to the

discovery of admissible evidence.  Pleadings and discovery produced in other cases may well reveal prior inconsistent statements, documents, interrogatory answers and deposition transcripts which may be admissible at trial.

    3.   <u>Information Relating To Plan Name Change</u>

The 30(b)(6) deposition notice to HealthExtras also lists the following as a topic for examination:

> 11.  The reason for the change in name of the policy from "Accidental Disability Plan from American Express Company" to "Accident Protection Plan from American Express Company."

In her claims against HealthExtras, Ms. Peguero asserts that the name of the Plan was misleading in that it is not really a "disability" policy since such a tiny fraction of disabled persons could actually qualify for benefits.  Ms. Peguero believes the name of the Plan was changed exactly for this reason.  If this is true, there are likely to be documents which are highly relevant to her claim.  Accordingly, Ms. Peguero is entitled to inquire as to why the name of the Plan was changed.

### III. <u>CONCLUSION</u>

For all the foregoing reasons, Ms. Peguero respectfully requests that HealthExtras' Motion for Protective Order be denied and that this Honorable Court issue an order compelling

HealthExtras to respond to all discovery requests, including interrogatories and document requests, relating to the matters for Examinations listed in the 30(b)6 Deposition Notice as items 5, 6, 7, 8, 9, 10, 11, 12, 13 and 14.

                    THE PLAINTIFF,
                    Altagracia J. Peguero,
                    By her Attorney,


                    /s/ Kevin Donius
                    _____
                    Kevin Donius, Esquire
                    Law Offices of Kevin Donius, P.C.
                    424 Adams Street, Suite 100
                    Milton, MA 02186
                    TEL (617) 296-4900
                    FAX (617) 296-4990
                    BBO#: 551298


                    CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on this date.

                    /s/ Kevin Donius
                    _____
                    Kevin Donius, Esquire


Dated: October 12, 2006

**EXHIBIT A**



**Cards**

B021:0001

Sample A. Sample
1044 Pulinski Road
Ivyland, PA 18974-1552

# Financial
## Security

You're covered with

up to **$1.5 Million**

if an accident leaves you

permanently disabled.

Dear Sample A. Sample:

You've worked hard to achieve the lifestyle you enjoy today. At American Express, we understand that our Cardmembers' need for financial security and peace-of-mind is a step above the ordinary.

That's why we are pleased to offer you one of the most affordable catastrophic accidental disability plans available today. The Accidental Disability Plan *from* American Express provides you with **$1 million** in one lump sum if you are permanently disabled due to an accident and can't return to work. For just $9.95 a month, you can help guarantee your financial security now and in the future. And, as a special offer, you can increase your coverage to $1.5 million for only $3 more per month.

Acceptance is easy. To start your coverage, simply fill out the form below and send it in. Within 10 days, you will receive a Plan Summary and a complete Benefit Plan Description. Review the Plan materials at your leisure. If you are not satisfied for any reason, you may cancel within the first 90 days and receive a full refund of Plan fees. There's absolutely no risk.

With the Accidental Disability Plan *from* American Express you can prevent a personal tragedy from becoming a financial tragedy. Enroll now, and for as little as $9.95 a month, you can rest assured that you are protected.

Sincerely,

*Anne Schepp*

Anne Schepp
Insurance Officer

**AE 00062**

P.S. Take a look at this valuable plan for 90 days – risk-free.

**THESE ADDITIONAL VALUABLE BENEFITS ARE INCLUDED WITH YOUR PLAN:**

**$2,500 Emergency Accident & Sickness Medical Expense Benefit** (per family) — If you, your spouse, or your dependent children are 100 miles or more from your home and suddenly require medical attention as a result of an accident or an illness, we will reimburse you up to $2,500 ($500 maximum per family member) per year for co-insurance and/or deductible expenses. If you do not have health insurance, up to $100 per day of medical care will be paid directly to you instead to a maximum of $500 per family member per year. Should you use this benefit even once, it could amount to hundreds of dollars in savings.

**Medical Care Coordination Benefit** — In the event you become permanently disabled, a medical care coordinator will be available to help you evaluate care options and provide guidance and assistance in obtaining appropriate medical treatment.

**IMPORTANT DISCLOSURE:**

Please read carefully. The accidental disability policy provides you with a $1 million or $1.5 million benefit (based on your selection) for catastrophic accident disability situations only and includes a $1,000 Accidental Death and Dismemberment benefit. Accidental Permanent Total Disability: All benefits subject to the terms, conditions, definitions, limitations and exclusions, including pre-existing condition provisions, as set forth in master policy no. 6475 26 11 issued by Federal Insurance Company (Rated "A++" (Superior) by A.M. Best) to Citizens Bank of Rhode Island, as Trustees for G.A.R.D. Trust for the account of HealthExtras/American Express, and as summarized in the American Express Accidental Disability Plan Benefit Plan Description. Written proof of a total permanent disability resulting from an accidental injury which (1) commences within 365 days of the date of the accidental injury, (2) continues without interruption for at least a year from the date the total permanent disability commences, (3) results in the entire and irrecoverable loss of use of both hands or both feet, or one hand and one foot, or the sight of both eyes, or the hearing of both ears, or the ability to speak, and (4) prevents the insured from returning to work must be provided. *Must be over age 18 and less than 70 to be eligible. There is no insurance coverage at age 70 or over. Exclusions: This insurance does not cover loss resulting from: an insured's emotional trauma, mental or physical illness, disease, pregnancy, childbirth or miscarriage; bacterial or viral infection (except bacterial infection caused by an accident or from accidental consumption of a substance contaminated by bacteria), or bodily malfunctions; suicide, attempted suicide or intentionally self-inflicted injuries; declared or undeclared war. This insurance also does not apply to an accident occurring while: an insured is in, entering or exiting any aircraft while acting or training as a pilot or crew member; participating in military service; committing or attempting to commit a criminal act; being intoxicated or under the influence of any narcotic unless taken on the advice of a physician; participating in any professional sport; or participating in parachute jumping from an aircraft. Pre-existing Condition: This insurance does not apply to Loss caused by or resulting from an illness, disease or accidental injury of the insured person for which medical advice, diagnosis, care or treatment was recommended or received within 6 months prior to the effective date of coverage. A pre-existing condition will not be excluded after 12 months has elapsed from the effective date of the insured's coverage. Additional Program Benefits: A $2,500 Emergency Accident and Sickness Medical Expense Benefit and a Medical Care Coordination Benefit will be provided in your benefit package. Other Disclosures: The $2,500 Emergency Accident and Sickness Medical Expense Benefit is underwritten by Virginia Surety Company, Inc. (Rated "A+" (Superior) by A.M. Best) under Travel Protection Policy HTP00137. Insurance offered through The Sklover Group, Inc., 400 Post Avenue, Westbury, NY 11590. Not a Medicare Supplement. Program may not be available in all states. Coverage is effective on the first day of the month following receipt of payment from you. Program available through HealthExtras, 2273 Research Boulevard, Rockville, MD 20850. Annuity Options: At the time of benefit payment, you may elect an annuity option arranged by HealthExtras: For $1 million benefit - a $500,000 cash payment plus $5,000 a month for 20 years for a total of $1.7 million; or for $1.5 million benefit - a $500,000 cash payment plus $7,500 a month for 20 years, totaling $2.3 million. Payments made for endorsement. This literature is descriptive only. Actual coverage is subject to the language of the master policy as issued.

Program subject to change. This program may be modified, suspended, cancelled or otherwise terminated with notice.

CT.0302



**Cards**

AE 00063

**EXHIBIT B**

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

EL PASO DIVISION

ERNESTO CARRIZAL, JR.,      §
                            §
        Plaintiff,          §
                            §
v.                          §              NO. EP-03-CA-063-FM
                            §
HEALTHEXTRAS, INC. and      §
FEDERAL INSURANCE COMPANY,  §
                            §
        Defendants.         §

## ORDER GRANTING PLAINTIFF'S FIRST MOTION TO COMPEL

On this day came on for consideration Plaintiff's Motion to Compel and the Court,

having considered the same, is of the opinion that the following order should be entered.

I.

## Procedural Background

On January 3, 2003, Plaintiff filed his Original Petition in the 327th District Court of

El Paso County, Texas. (Dkt. 1, Ex. A). Defendants timely removed the case to federal

court on February 19, 2003, based on diversity jurisdiction. (Dkt. 1). On or about May 19,

2003, Plaintiff served his Second Set of Interrogatories and Second Set of Requests for

Production on Defendant Federal Insurance Company. (Dkt. 12, Ex. A). Defendant served

its responses and objections to these discovery requests on June 19, 2003. Id. On August

13, 2003, Plaintiff filed the instant Motion to Compel. (Dkt. 12). Defendant filed its

response on August 25, 2003. (Dkt. 17). On October 9, 2003, a discovery hearing was

held where Steve James appeared for the Plaintiff and H. Keith Myers appeared for the

1



Defendant. On October 22, 2003, Defendant submitted a post-hearing letter brief with exhibits. On October 28, 2003, Plaintiff submitted a reply in the form of a letter brief. This matter is now ripe for decision.

## II.
## Statement of Facts

Plaintiff bought a disability insurance policy from the Defendant which Plaintiff claims provides only illusory benefits. On or about July 1, 1999, Plaintiff received a certificate of coverage for permanent disability insurance. According to Plaintiff, he was led to believe that "after 12 months of continuing and permanent disability caused by an accident — including the inability to work" he would receive a lump sum benefit of $1,000,000. (Pl's. Second Amended Complaint, Dkt. 15, ¶ 6). On April 13, 2001, Plaintiff received severe injuries when he fell from a roof. He promptly notified the insurance company of the injury and made a claim once the 12-month waiting period had expired. Although he "lost the normal use of both legs and feet" and was unable to work, his benefits claim was denied by the Defendant. Id.

Plaintiff claims the coverage and benefits of the policy were misrepresented, e.g., a person claiming loss of use of both feet also has to be prevented from engaging in any gainful occupation for which they are qualified or could be qualified by reason of education, training experience or skill. In his Second Amended Original Petition, Plaintiff alleges: (a) violations of the Texas Deceptive Trade Practices Act-Consumer Protection Act based on unconscionable course of action, misrepresentations, including failure to disclose information, and breach of express warranties; (b) violations of Texas Insurance Code; (c) bad faith; and, (d) breach of the policy. In its Response to Plaintiff's Motion to Compel,

2

Defendant contends the Plaintiff is not disabled as provided by the terms and conditions of the policy and, thus, is not entitled to benefits.

### III.
### Discovery In Dispute

A. <u>Interrogatories</u>

Defendant objects to the four interrogatories contained in Plaintiff's Second Set of Interrogatories. (Pl's. Motion to Compel, Dkt. 12, Ex. A). These interrogatories seek: (1) the number of policyholders in the years 2000, 2001 and 2002 for the same type of policy as Plaintiff's; (2) the number of claims for permanent total disability in the years 2000, 2001 and 2002 for the same type of policy as Plaintiff's; (3) the number of the aforementioned claims that were paid and the number that were rejected; and, (4) the percentage of all insureds with the same type of policy as Plaintiff's who have ever received payment for a permanent total disability.

As to each question, the Defendant poses the same objections:

a. Irrelevant and not reasonably calculated to lead to the discovery of admissible evidence;
b. Overly broad and unduly burdensome;
c. Beyond the scope of discovery set forth in Fed. R. Civ. P. 26(b)(1);
d. The burden or expense of providing the proposed discovery outweighs its likely benefit;
e. The interrogatory is vague and ambiguous;
f. The interrogatory seeks information that is proprietary and/or confidential and/or a trade secret of this defendant.

(Pl's. Motion to Compel, Dkt. 12, Ex. A).

B. <u>Requests for Production</u>

The Plaintiff's five requests for production seek documentary evidence of: **(1)** the total of all premiums received on all similar policies since January 1, 2000; (2) the total

3

amount paid on all claims for all similar policies since January 1, 2000; (3) the comparison

between premiums received and claims paid on all similar policies since January 1, 2000;

(4) analysis of profitability since January 1, 2000 for the type of policy sold to Plaintiff; and,

(5) the manner in which claims for permanent total disability under the type of policy

purchased by Plaintiff are to be handled or considered. (Pl's. Motion to Compel, Dkt. 12,

Ex. B).

Defendant's objects to each request on the following grounds:

a.  Irrelevant and not reasonably calculated to lead to the discovery of admissible evidence;
b.  Overly broad and unduly burdensome;
c.  Beyond the scope of discovery set forth in Fed. R. Civ. P. 26(b)(1);
d.  The burden or expense of providing the proposed discovery outweighs its likely benefit;
e.  The request is vague and ambiguous;
f.  The request seeks information that is proprietary and/or confidential and/or a trade secret of this defendant.
g.  The request seeks disclosure of privileged attorney-client communications.

Defendant poses an additional objection to Request for Production Number 5:

h.  This request includes production of materials privileged as attorney-client work product (sic), as defined by Tex. R. Civ. P. 192.5(a) and incorporated by Fed. R. Evid. 501.

(Pl's. Motion to Compel, Dkt. 12, Ex. B).

## IV.
## Standard of Review

The purpose of discovery is to permit the parties "... to develop fully and crystalize

concise factual issues for trial." **Burns v. Thiokol Chemical Corp.**, 483 F.2d 300, 304

(5th Cir. 1973).  To accomplish this purpose, courts are encouraged to apply a liberal

construction of "relevance". **Oppenheimer Fund, Inc. v. Sanders**, 437 U.S. 340, 351, 98

S.Ct. 2380, 2389 (1978); **Wyatt v. Kaplan**, 686 F.2d 276, 284 (5th Cir. 1982).  That is,

4

discovery is permitted on any matter that bears, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case. **Id., citing Hickman v. Taylor**, 329 U.S. 495, 501, 67 S.Ct. 385, 388 (1947). However, consistent with the notice-pleading system, discovery is not limited to issues raised in the pleadings because it is the purpose of discovery to foster the definition and clarification of the issues. **Id., citing Hickman v. Taylor,** 329 U.S. 495, 501, 67 S.Ct. 385, 388 (1947). Moreover, the party opposing discovery has the burden of proving lack of relevance. **McLeod, Alexander, Powel & Apfell, P.C. v. Quarles**, 894 F.2d 1482, 1485 (5th Cir. 1990); **see also Jones v. Hamilton County Sheriff's Dept.**, ___ F. Supp. ___, 2003 WL 21383332 (S.D. Ind., June 12, 2003); **RTC Mortgage Trust 1994-S3 by Trotter Kent, Inc. v. Guadalupe Plaza**, 918 F.Supp. 1441, 1450 (D. N.M. 1996); **Aramburu v. Boeing Co.**, 885 F.Supp.1434, 1437 (D. Kan. 1995); **Zucker v. Sable**, 72 F.R.D. 1, 3 (S.D.N.Y. 1975).

## V.
## Application to the Facts

### A. Relevance

Defendant Federal Insurance Company argues that the disputed discovery is an "unwarranted fishing expedition" into matters not relevant to Plaintiff's claims. Plaintiff counters that the information sought is relevant to whether the policy is illusory (essentially providing no coverage at all) and whether it was deceptively marketed based on misrepresentations to Plaintiff. According to Defendant, Plaintiffs claims for allegedly deceptive representations " have nothing to do with Federal Insurance Company" because Federal Insurance Company was not the original underwriter of the policy at the time it was issued in 1999. Plaintiff's policy was not converted to coverage through Federal Insurance

5

Company until March or April of 2001.

Plaintiff alleges, *inter alia*, causes of action for violations of the Texas Deceptive Trade Practices Act-Consumer Protection Act ("DTPA" or "Act") based on unconscionable course of action, misrepresentations, including failure to disclose information, and breach of express warranties. Only a "consumer" has standing to maintain a private cause of action under the DTPA. **Knight v. International Harvester Credit Corp.**, 627 S.W.2d 382, 388 (Tex. 1982). Plaintiff has the burden to show he is a consumer under the Act. **Precision Sheet Metal Mfg. Co., Inc. v. Yates**, 794 S.W.2d 545, 551 (Tex. App. –Dallas 1990, writ denied). The law is clear that Plaintiff is not required to show he sought services or goods from Federal Insurance Company in order to meet the statutory definition of a consumer. **Cameron v. Terrell & Garrett, Inc.**, 618 S.W.2d 535, 538 (Tex. 1981). "A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant. The only requirement is that the goods or services sought or acquired by the consumer form the basis of his complaint." **Flenniken v. Longview Bank and Trust Co.**, 661 S.W.2d 705, 707 (Tex. 1983), citing **Cameron v. Terrell & Garrett, Inc.**, 618 S.W.2d at 539. Plaintiff is a consumer as to all parties who sought to enjoy the benefits of the allegedly deceptively induced sale. **Flenniken v. Longview Bank and Trust Co.**, 661 S.W.2d at 707.

Discovery is appropriate as to all information which is relevant to Plaintiff's allegations. A party may obtain discovery of any matter, not privileged, which is relevant to the subject matter involved in the pending action. Fed. R. Civ. P. 26(b)(1). Relevance is construed broadly and "encompass[es] any matter that bears on, or that reasonably

6

could lead to other matter that could bear on, any issue that is or may be in the case."

**Coughlin v. Lee**, 946 F.2d 1152, 1159 (5th Cir. 1991) quoting **Oppenheimer Fund Inc. v.**

**Sanders**, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389 (1978).  It is not ground for objection

that the information sought will be inadmissible at trial if the information sought appears to

be reasonably calculated to lead to the discovery of admissible evidence.  Fed. R. Civ. P.

26(b)(1) & 34(a).  Plaintiff's discovery requests are clearly relevant to his claims against

Federal Insurance Company. Accordingly, Defendant's objections based on relevance and

the scope of Rule 26(b)(1) are overruled.

B. Overbroad

   Defendant objects to all interrogatories and requests as overbroad because Plaintiff

seeks information for a three-year period without any geographic limitation.  Defendant

argues conduct outside of Texas is not relevant, because a "basic principle of federalism

is that each State may make its own reasoned judgment about what conduct is permitted

or proscribed within its borders." **State Farm Mutual Automobile Ins. Co. v. Campbell**,

538 U.S. 408, 123 S.Ct. 1513, 1523 (2003). However, that case did not involve discovery

issues.  Rather, it involved a $145 million dollar punitive damage award in a $1 million

bad-faith failure to settle suit.  The Court reversed the punitive damage award as

excessive, in part, because it was  based on evidence spanning  a 20-year period of the

insurer's out-of-state conduct that was not similar to the conduct which harmed the

plaintiffs. **Id.**, 123 S.Ct. at 1521-24.

   In the present case, Plaintiff alleges Federal Insurance Company  participated with

HealthExtras and profited from deceptive acts and practices used to induce the purchase

of an illusory policy. Discovery of Defendant's out-of-state conduct involving the nationwide sale of the same type of allegedly illusory policy as that purchased by Plaintiff is relevant to Plaintiff's claims and to the specific harm he allegedly suffered, particularly as it pertains to the deliberateness and culpability of the Defendant's action. **See id.,**123 S.Ct. at 1522. Therefore, the Court does not find the disputed interrogatories and requests for production to be overbroad.

C. Burdensomeness

Defendant objects to all requests on the ground that the burden or expense of providing the proposed discovery outweighs its likely benefit. In support, Defendant relies on the Wilton Estes affidavit. (Dkt. 17, Def.'s Response, Ex. 3). Mr. Estes' affidavit establishes the closed claim files are maintained on site for approximately 6 months after which they are archived at a separate location. In order to acquire records contained in the archived files, a search would have to be made to identify the claim and locate the corresponding file. No specifics are provided regarding the number of files that would have to be located, the time needed to gather them or the cost involved. Conclusory allegations, such as those contained in Mr. Estes' affidavit, are not enough to support the denial of the motion to compel. **See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles**, 894 F.2d 1482, 1485 (5th Cir. 1990), citing **Panola Land Buyers Ass'n v. Shuman**, 762 F.2d 1550, 1559 (11th Cir. 1985). The Defendant has not carried its burden to show the discovery requests are unduly burdensome.

D. Vagueness

Defendant objects that the language in each discovery request that refers to "the

8

type of policy Mr. Carrizal had" is vague and ambiguous in that Defendant cannot determine from this description whether Plaintiff is seeking information regarding the specific group policy at issue, disability policies having the same coverage, policies issued as a result of the same solicitation, or some other criteria. The Court agrees with Defendant that while the language used to describe the referenced policies may be somewhat vague, it is not so vague or ambiguous that Defendant cannot reasonably be expected to respond. As explained in Plaintiff's Reply, he wants to know "...how many people bought this exact same type of policy over a limited three year period, how many claims there were for Permanent Total Disability (for the $1 Million benefit promised), how many claims were paid, how many were rejected and what percentage of all such Accountholders ever received the $1 Million benefit." (Dkt. , ¶ 8). Clearly, "the type of policy Mr. Carrizal had" is intended to refer to all policies, with the same benefits ($1 million dollar catastrophic injury and disability benefit) and the same exclusions. Accordingly, the objections based on vagueness and ambiguity are overruled.

## E. Trade Secrets

Defendant objects to each interrogatory and request for production on the ground that disclosure of the information sought by Plaintiff constitutes trade secrets[1] and/or confidential and/or proprietary information. According to Defendant, this information might be acquired by Defendant's competitors and result in giving the competitors an unfair advantage. In support of this position, Defendant offers the affidavit of Kirk Voisin,

---

[1]   A trade secrets is a formula, pattern, device or compilation of information used in a business which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it. **Taco Cabana Intern., Inc. v. Two Pesos, Inc.,** 932 F.2d 1113, 1115 (5th Cir. 1991), **aff'd,** 505 U.S. 763, 112 S.Ct. 2753 (1992).

9

National Practice Leader for Alternative Markets and Vice President of Chubb & Son[2], and the affidavit of Wilton Estes, Specialty Claims Manager and Assistant Vice President for Chubb & Son.

There is no absolute privilege for trade secrets or other similar confidential information. **See Federal Open Mkt. Comm. of Federal Reserve System v. Merrill**, 443 U.S. 340, 362, 99 S.Ct. 2800, 2813 (1979)(citations omitted). However, the federal courts have long recognized a qualified evidentiary privilege for trade secrets and other confidential commercial information. **See e.g., E. I. du Pont de Nemours Powder Co. v. Masland**, 244 U.S. 100, 103, 37 S.Ct. 575, 576 (1917). Rule 26(c)(7) provides similar qualified protection for trade secrets and confidential commercial information in the discovery context. Fed. R. Civ. P. 26(c)(7). The rule allows the Court to fashion an appropriate protective order on motion of a party when good cause is shown. In this case, the affidavit of Mr. Voisin states the information regarding account holders, claims data, payments, premiums and profitability are all highly confidential and are treated as such by Federal Insurance Company and its employees. Mr. Voisin states the information sought by Plaintiff would be highly valuable to competitors because it would  assists the competitors in targeting Federal's clients.    (Dkt. 17, Ex. 2). The affidavit of Mr. Estes establishes the information contained in claim files includes confidential medical information and other personal data of the insured. These files are kept confidential and are not disclosed to third parties unless required to resolve the insured's claim. (Dkt. 17, Ex. 3).

---

[2] Chubb & Son is a division of Federal Insurance Company.

10

Plaintiff is an insured, not a competitor. Therefore, the risk that Defendant will be harmed by the dissemination of its trade secrets is significantly reduced. Nonetheless, the Court agrees with Plaintiff that the confidentiality of the information sought can be maintained by an appropriate protective order. Therefore, the Court will enter a Protective Order simultaneously with the granting of this motion.

F. Claims of Privilege

Defendant objects to Requests for Production numbers 1 through 4 on the ground that these requests seek disclosure of privileged attorney-client communications. Defendant objects to Request for Production number 5 (seeking documentary evidence of the manner in which all permanent total disability claims are considered) on the ground that it seeks production of materials privileged as "attorney-client work product". The Court construes the objection to Request for Production number 5 as raising two separate, though often related, claims of privilege: the attorney-client privilege and the work product privilege. In support of this objection, Defendant cites to Texas Rule of Civil Procedure 192.5 and Federal Rule of Evidence 501, neither of which are applicable here[3].

Federal Rule of Civil Procedure 26 sets forth the general provisions for governing discovery in a civil suit in federal court. Rule 26 does not provide for the withholding of otherwise discoverable information based upon a blanket claim of privilege. Instead, when a party claims certain information is privileged or subject to protection as trial preparation material, Rule 26 directs the party to make such a claim expressly, describing the nature

---

[3]Although Texas substantive law governs this diversity suit, the Federal Rules of Civil Procedure govern discovery disputes. **See Erie Railroad v. Tompkins,** 304 U.S. 64, 58 S.Ct. 817 (1938); Fed. R. Civ. P. 1. Federal Rule of Evidence 501 is inapplicable as it deals with the privilege of a witness not to testify.

of the documents, communications or other things not produced or disclosed in a manner that will not reveal the information, but will enable the other party to assess the applicability of the privilege or protection.    Fed. R. Civ. P. 26(b)(5).   Accordingly,   Defendant is ORDERED to respond to Requests for Production 1 through 5. If Defendant claims any documents in the file are protected by a privilege, Defendant is ORDERED to provide a privilege log to Plaintiff in accordance with Rule 26(b)(5).

### VI.
### Conclusion

Based on the foregoing, the Court enters the following orders:

It is therefore ORDERED that Plaintiff's Motion to Compel be, and it is hereby, GRANTED.

It is further ORDERED that Defendant Federal Insurance Company shall serve its responses to Plaintiff's Second Set of Interrogatories (1through 4) no later than January 23, 2004.

It is finally ORDERED that Defendant Federal Insurance Company serve documents responsive to Plaintiff's Second Set of Requests for Production (1 through 5) no later than January 23, 2004.  To the extent Defendant Federal Insurance Company claims any responsive documents are protected by a privilege, Defendant is ORDERED to provide a privilege log to Plaintiff in accordance with Rule 26(b)(5) no later than January 20, 2004.

SIGNED and ENTERED this ___23ed___ day of December, 2003.

Ruloud P. Mesa

RICHARD P. MESA
UNITED STATES MAGISTRATE JUDGE

12