UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALTAGRACIA PEGUERO, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 05-10995-RCL |
| AMERICAN EXPRESS COMPANY and HEALTHEXTRAS, INC., | ) |
| Defendants. | ) |

DEFENDANT HEALTHEXTRAS, INC.'S REPLY BRIEF
IN FURTHER SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER

Defendant HealthExtras, Inc. ("HealthExtras") respectfully submits this brief in reply to the arguments of plaintiff Altagracia Peguero ("Ms. Peguero") in opposition to HealthExtras' Motion for Protective Order.

**Argument**

I. Ms. Peguero's Theory – That Information About The Number Of Insurance Claims Received And Paid By Federal Is Relevant To Her Claims Against The Remaining Defendants – Is Baseless

Ms. Peguero claims she was "led to believe she was purchasing a disability policy that would provide financial security if she became disabled . . . ." Opposition at 7. However, nothing in the marketing materials that Ms. Peguero received suggested that she would receive $1.5 million if she became slightly disabled, or seriously disabled, or even mostly disabled. Rather, the marketing materials state that enrollees may receive "up to" $1.5 million if an accident leaves them with a "total permanent disability." The marketing materials specify that "total permanent disability" means the "entire and irrevocable loss of use" of <u>at least two</u> specified body parts (or loss of the ability to speak), such that the enrollee cannot return to

work.[1]  The limited nature of this insurance is reinforced – in the very first sentence introducing it – by reference to the Plan as "one of the most affordable <u>catastrophic</u> accidental disability plans available today." (Emphasis added).

When Ms. Peguero's discovery requests are considered in light of the type of insurance at issue, the flaw in her reasoning becomes apparent.  Because this insurance is specifically designed to provide coverage for "catastrophic" accidents resulting in the insured's "total permanent disability," it should come as no surprise if, in any given year, relatively few claims are filed.  Ms. Peguero seizes on this inherent feature of the insurance she purchased (for which she paid a total annual premium of $155.40), and suggests that a low number of claims would be evidence that the insurance is "illusory."  This is nonsense.  The fact that in a given year – or over a given period of years – a relatively small number of enrollees will be involved in a catastrophic accident that leaves them totally and permanently disabled not only does not support Ms. Peguero's claim that the coverage is "illusory," <u>it bears no logical connection to that claim</u>.  The insurance does precisely what it is intended (and advertised) to do:  provide the insured with financial security in what is an exceedingly unlikely event.  The unlikelihood that the insured event will occur does not render the coverage illusory.  Considering Ms. Peguero's own unfortunate situation, had her accident occurred in a slightly different way, such that, in addition to losing her right arm, she lost the use of her left hand, or either foot, Federal very well may

---

[1] As set forth in HealthExtras' initial memorandum, such definitions are a staple not only of private disability insurance policies but of state workers' compensation statutes and federal social security disability regulations.  HealthExtras' Memorandum at 2 and authorities cited. Definitions like this are necessary because of the myriad ways in which a person can be injured, and the myriad types and degrees of resulting disability.  Like legislators and government agencies, private insurers must draw lines to establish the types and degrees of disability that will be deemed "total."

have determined that she was totally disabled and entitled to the maximum $1.5 million benefit.[2]

In her opposition, Ms. Peguero baldly asserts that if only a small number enrollees ever receive the maximum $1.5 million benefit under the Plan, such evidence would "go[ ] to the heart of [her] claims that the policy was essentially worthless," and "would strongly bolster both her claims of deception and that the coverage provided by the Plan was illusory." Opposition at 6-7. However, Ms. Peguero offers no explanation of how or why this is so. Equally unhelpful is the one authority Ms. Peguero cites on this point: a 2003 order in a case called <u>Carrizal v. HealthExtras, Inc., et al.</u>, No. EP-03-CA-063-FM (W.D. Tex. Dec. 23, 2003). In that case, the court deemed information about the number of claims made and paid under a similar plan "clearly relevant" without a <u>single</u> <u>word</u> of analysis or explanation.[3] Moreover, unlike the instant case, the plaintiff in <u>Carrizal</u> claimed to have lost the use of both feet, and the insurer's denial of coverage was based not on the plaintiff's failure to meet the policy's threshold injury requirements, but, apparently, on the plaintiff's ability to return to work notwithstanding his injury. Slip op. at 2-3.

---

[2]HealthExtras is left to speculate not only as to how Federal would have handled such a hypothetical claim, but as to how Federal <u>in fact</u> handled Ms. Peguero's <u>actual</u> claim. Until Ms. Peguero filed this lawsuit, HealthExtras was not even aware that Ms. Peguero had submitted a claim to Federal for the maximum $1.5 million benefit and that Federal had denied that claim. To this day, HealthExtras has not seen the materials that Ms. Peguero submitted to Federal in support of her claim, or any documents explaining the basis for Federal's position that Ms. Peguero was not entitled to the maximum benefit.

[3]Ms. Peguero fails to note the specific context of the court's ruling, which was the plaintiff's motion to compel discovery <u>from the insurer</u>. The sentence at issue reads in full, "[p]laintiff's discovery requests are clearly relevant <u>to his claims against Federal Insurance Company</u>." Slip op. at 7 (emphasis added). As set forth below, this is the same insurer that Ms. Peguero sued here, but chose to settle with to avoid arbitration, and from which she could have and should have sought the information now at issue, if it were relevant, which it is not.

For similar reasons, the Underwriting and Financial Information that Ms. Peguero seeks is totally irrelevant to her claims. Assuming, arguendo, that this information would show that Federal anticipated receiving relatively few claims for the maximum $1.5 million benefit in any given year, and that, in a year in which few such claims were received, it anticipated making (or in fact made) a substantial profit, this does not show – or even tend to show – that the coverage provided by the policy was illusory or "essentially worthless." Again, the policy is just what it was represented to be: an inexpensive policy designed to provide a substantial lump-sum benefit in the very unlikely event that the insured is in a catastrophic accident and suffers a "total permanent disability" within the meaning of a definition commonly used by other insurers, many states and the federal government.

II.     Ms. Peguero Is Attempting To Avoid The Consequences Of Her Strategic Decision To Settle With Federal

Ms. Peguero's claims in this case are principally directed at conduct for which the insurer, Federal, is responsible. As the insurer, Federal is plainly responsible for the content of its insurance policy. Parties like HealthExtras and American Express, who are not in the business of insurance, rely on parties like Federal, who are in that business, to produce lawful (i.e. non-illusory) policies, and to have them reviewed and approved by the appropriate regulatory authorities. In addition to the insurance policy itself, the marketing materials that Ms. Peguero received, and that she claims to have been misled by, are Federal's responsibility as insurer. Ms. Peguero's own expert – a former insurance commissioner – states with respect to marketing materials such as those at issue here, "[i]rrespective of the source of an advertisement, regulators hold insurers liable for compliance with the [applicable state regulations]." See highlighted excerpt from Rule 26(a)(2)(B) Report of Tim Ryles, Ph.D., attached as Exhibit A.

4

In recognition of the insurer's central role, Ms. Peguero named Federal and its agent, Sklover, along with American Express, as defendants in her initial complaint.[4] Shortly thereafter, Federal moved to dismiss the complaint and compel arbitration pursuant to an arbitration clause in its policy. Ms. Peguero opposed Federal's motion on the ground, among others, that she could not afford arbitration. In its response, Federal agreed to pay the full cost of the arbitration. Before Federal's motion to compel arbitration could be heard by the court, even before the parties' initial scheduling conference with the court, and without having taken a shred of discovery, Ms. Peguero settled with Federal and Sklover.

Having entered into a hasty settlement with the principal defendant, Federal (apparently to avoid her contractual obligation to resolve her claims through arbitration), Ms. Peguero is left to press her claims against the remaining defendants, HealthExtras and American Express. This is Ms. Peguero's right, at least until the court decides HealthExtras' planned summary judgment motion. In the meantime, however, Ms. Peguero should not be permitted to impose on the remaining defendants the burden of her apparent unwillingness (or inability) to seek discovery from Federal – a choice she has made for her own strategic reasons. Virtually all of the discovery requests as to which HealthExtras and American Express now seek a protective order – requests for information concerning hundreds of thousands of other enrollees in the Plan, insurance claims made by these other enrollees and paid by Federal, actuarial data, underwriting analyses, claims projections and loss reserves – is information generated and maintained by Federal in the ordinary course of its business as an insurer. If Ms. Peguero truly believes that this large volume of insurance information is relevant to her claims against the remaining defendants, she should be required to seek that information – if at all – from Federal.

---

[4]HealthExtras did not become a party until early 2006, when American Express filed a third-party complaint. Thereafter, Ms. Peguero filed a pleading styled "Direct Claims of Plaintiff Against HealthExtras, L.L.C."

> III. HealthExtras Has Not Sought A Protective Order With Respect To Requests For Information Concerning Other Claims And Lawsuits Asserting That The Plan's Marketing Materials Are Misleading Or That Federal's Disability Policy Is Illusory

For the reasons set forth in its initial memorandum and elaborated above, HealthExtras submits that other claims and lawsuits asserting that the Plan's marketing materials are misleading, or that Federal's disability policy is illusory, are irrelevant to Ms. Peguero's claims in the instant case. Nevertheless, and without waiver of its position in this regard, HealthExtras' motion for protective order <u>does not include</u> Ms. Peguero's requests for such information. HealthExtras is in the process of searching its records for documents responsive to Ms. Peguero's Document Request Nos. 27-30, and will produce any responsive documents in its files that are not privileged or otherwise protected from discovery. Likewise, subject to and without waiving its objections, HealthExtras will permit its Rule 30(b)(6) designee to answer deposition questions within the scope of Ms. Peguero's Matters on Which Examination is Requested Nos. 12-14.

Similarly, HealthExtras' motion for protective does not include Ms. Peguero's requests for information concerning the change in the Plan's name from "Accidental Disability Plan" to "Accident Protection Plan." Again, subject to and without waiving its objections, HealthExtras will search for and produce documents (if any) that are responsive to Ms. Peguero's Document Request No. 21 and are not privileged or otherwise protected, and will permit its Rule 30(b)(6) designee to answer depositions questions within the scope of Ms. Peguero's Matter on Which Examination is Requested No. 11.

HEALTHEXTRAS, INC.,

By its attorney,

_____
Donald R. Pinto, Jr., BBO No. 548421
RACKEMANN, SAWYER & BREWSTER
One Financial Center
Boston, Massachusetts  02111
(617) 542-2300