UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 05-10995-RCL

_____
ALTAGRACIA J. PEGUERO,           )
    Plaintiff,                    )
                                 )
    v.                            )    **PLAINTIFF'S OPPOSITION TO**
                                 )    **MOTION TO STRIKE PLAINTIFF'S**
AMERICAN EXPRESS COMPANY, and    )    **DISCLOSURE OF A NEW EXPERT**
HEALTHEXTRAS, INC.,              )
    Defendants.                   )
_____)

The Plaintiff, Altagracia J. Peguero, hereby opposes the attempt of the Defendant, HealthExtras, Inc., to strike her expert witness, Glendon B. Nickerson, Jr., CLU.

## I.   INTRODUCTION

In this case, the Plaintiff, a right-handed dentist who lost her right arm as a passenger in a SUV rollover accident, alleges, among other things, that the Defendants fraudulently and in violation of M.G.L. c.93A sold her a so-called "disability" policy based upon false and misleading advertisements and promotional materials.  The promotional materials promised to pay the Plaintiff $1.5 Million if she became disabled and unable to work.  Following the accident, the Plaintiff was offered $500.00 under the policy for the loss of her arm.

The Plaintiff, pursuant to F.R.C.P.26 (a)(2)(B), has disclosed an expert, Glendon B. Nickerson, CLU, who will testify

regarding the vast differences between what the subject policy truly is (supplemental disability insurance) and what it was marketed to be (traditional disability insurance).

The Defendant has moved to strike this disclosure asserting that the disclosure is late. The Defendant's motion should be denied because 1) the disclosure is not late, 2) the proffered expert testimony is based upon newly-disclosed evidence, 3) the expert testimony will greatly assist the jury in the fair evaluation of this claim, 4) the Defendant has not in any way been unfairly prejudiced by the disclosure, and 5) the disclosure will not in any way delay the resolution of this matter or otherwise impede the efficient and economical administration of justice.

## II.   PROCEDURAL BACKGROUND

On September 22, 2005, a scheduling conference was held and the Court issued an order setting scheduling deadlines, including the following:

>     Fact Discovery by 6/15/06
>     Plaintiff to Disclose Expert 7/14/06
>     Defendant to Disclose Expert 8/15/06
>     Discovery Due by 9/15/06
>     Motions Due by 10/2/06

According to this schedule, Plaintiff's expert disclosure was due one month after the closure date of fact discovery. The

Defendant's expert disclosure was due one month later, and after that an additional month was available for expert depositions.

On June 26, 2006, the Court scheduled a second case management conference at which the following dates were set:

> Fact discovery due by 11/3/06
> Plaintiff's Expert Disclosure by 10/6/06
> Defendants' Expert Disclosure by 11/3/06
> Supplemental Expert Reports by 1/16/07
> Discovery to be completed by 1/31/07
>
> See Exhibit A.

According to this schedule, Plaintiff was to provide expert disclosure by 10/6/06, approximately one month before expiration of fact discovery, but would be afforded the opportunity to provide supplemental expert reports up until 1/16/07 (as would the Defendants), 73 days after the close of fact discovery. This schedule recognizes the need - - which was explicitly discussed at the case conference - - to have the final deadline for expert disclosure _after_ the close of fact discovery.

Thereafter, on November 27, 2006, the Court granted a Motion to Extend Discovery Deadlines filed due to an outstanding discovery dispute, and ordered:

> Factual Discovery to be completed 75 days
> after the final disposition of the Rulings
> of the Defendants' Motions for Protective
> Orders and further extending all subsequent
> scheduled deadlines by the same number of
> days as the discovery deadline.
>
> See Exhibit B.

The Court ruled on Defendant's Motion for Protective Orders on December 13, 2006.  Accordingly, pursuant to the November 27, 2004 Order, the deadlines were extended as follows:

>     Fact Discovery due by 2/26/07
>     Supplemental Expert Reports by 5/10/07
>     Discovery to be completed by 5/25/07

On February 8, 2007, the parties jointly requested an additional 45 days up to and including April 12, 2007 to complete all fact discovery.  This motion was allowed by the Court.  See Exhibit C.

The Plaintiff had originally scheduled a 30(b)6 deposition of a corporate designee of Defendant HealthExtras on May 12, 2006, which was then postponed until June 7, 2006, and then again postponed at the Defendant's request due to the deponent's imminent childbirth and maternity leave.  The 30(b)6 deposition was subsequently scheduled for September 26, 2006 but again was postponed, this time due to the Defendant's Motion for a Protective Order.  Finally, on February 2, 2007, the 30(b)6 deposition of HealthExtras took place.

At the deposition, the Plaintiff learned for the first time that HealthExtras intended the insurance policy at issue to be a "supplemental" policy for people who already had traditional disability insurance in place.  This fact is not even remotely

mentioned in its promotional materials, which instead refer to it as an "accidental disability plan."[1]

On January 26, 2007, HealthExtras filed a Motion to Compel seeking the disclosure of information and documents concerning the accident in which the Plaintiff lost her arm. In a discussion with Defendant's counsel regarding the potential relevancy of such information and documents, which Plaintiff's counsel could not perceive, the Defendant disclosed for the first time that, even though the Plaintiff was not driving the car in which she was injured and therefore could not have caused her own injury, it intended to argue she would not be eligible for benefits under its "accidental disability plan" because she had been drinking alcohol on the night she was injured. Such an interpretation is at great variance from a traditional disability policy. This was the first time the Plaintiff learned that the Defendant would make such an argument.[2]

These two new developments - - 1) the fact the policy was intended to be a supplement to, not a replacement for, traditional disability insurance and 2) that the Defendant's argument that the Plaintiff's consumption of alcohol on the night in question would disqualify her from disability coverage

---

[1] The insurance has since been re-named as an "Accident Protection Plan."
[2] While the Plaintiff still considers the Defendant's policy interpretation preposterous, she conceded that the Defendant had a theory of the case pursuant to which the details of how the accident happened might be relevant and accordingly agreed to produce the requested information and documents.

- - highlighted the need for expert testimony regarding the vast disparity between the subject policy and traditional disability policies.  This is critical to the case because the promotional materials do not disclose that the policy is not a traditional disability policy, but rather supplemental insurance. Accordingly, on March 2, 2007 the Plaintiff disclosed Mr. Nickerson as an additional expert witness to testify regarding the differences between the two types of insurance policies.

### LEGAL ARGUMENT

### IIIA.    The Disclosure Is Not Late

As set forth above, pursuant to the second Case Management Conference on June 26, 2006, the final deadline for expert reports was January 16, 2007, 73 days after the close of fact discovery on November 3, 2006. The deadline for fact discovery was subsequently extended to February 26, 2007, with "all subsequent scheduled deadlines" also further extended commensurately.  Accordingly, the final deadline for expert reports was explicitly extended from January 16, 2007 to May 10, 2007 pursuant to the Court's November 27, 2006 Order.

Plaintiff's disclosure of Mr. Nickerson's testimony was sent on March 2, 2007, well before this deadline.

### IIIB.  The Need For Mr. Nickerson's Testimony Is Based Upon Newly-Discovered Information

The thrust of Mr. Nickerson's proposed testimony involves the vast disparity between the Defendant's "disability" policy and traditional disability policies.  The importance of this type of testimony only recently came to light.

First, the Plaintiff learned for the first time, on or about January 26, 2007 that even though the Plaintiff was a passenger in the rollover accident, the Defendant intended to argue that her consumption of alcohol that night precluded her from the receipt of their disability benefits.  Such an interpretation of a disability policy is extraordinary, vastly different than the position of traditional disability insurers, which typically exclude benefits, if at all, when a potential claimant's injuries are caused by their own drunk driving.  To the extent the Defendant pursues this defense, it is critical that the Plaintiff be allowed to provide evidence that this is an unusual interpretation of a disability contract and not one that a reasonable consumer would expect.

Secondly, on February 2, 2007, when HealthExtras' 30(b)6 deponent testified that this product was intended only as a supplement to traditional disability insurance.  The Plaintiff contends that this product was not marketed as a supplemental insurance but as a disability policy and therefore it is

critical to highlight the distinction between what the product really is (supplemental insurance) and what it was marketed to be (traditional disability insurance).  Mr. Nickerson's testimony serves this purpose.

      **IIIC.   The Proffered Testimony Will Greatly Assist The Jury, Does Not Prejudice The Defendants, And Will Not Delay The Resolution Of This Matter**

For the reasons set forth above, the proffered testimony will greatly assist the jury in evaluating the differences between the Defendant's insurance product and a traditional disability policy, and thus to evaluate whether it was fairly marketed and promoted or whether the Plaintiff, as a reasonable consumer, was misled about the product she was buying.

The Defendant asserts, without explanation, that it has been prejudiced.  The Defendant does not explain how it has been prejudiced because it has not been.  The Defendant cannot show that the report, which was disclosed before the Plaintiff was deposed, will somehow unfairly alter its defense of this case.  Presumably, the Defendant, which sells this product, has employees who could testify regarding how its product compares to traditional disability policies and to rebut Mr. Nickerson's testimony.  If it does not have any person so qualified in its employ, it may hire an expert to do so. If the Defendant needs

extra time to retain an expert to counter Mr. Nickerson's proposed testimony, the Plaintiff would not object.

Finally, no trial date has been set. The Plaintiff will not object to any timeframe suggested by the Defendant or set by the Court for the Defendant to disclose rebuttal expert testimony and, if necessary to avoid any delay in the adjudication of this matter, the Plaintiff would also agree to waive her rights to depose any such expert.

### IV.   CONCLUSION

For all the reasons set forth above, the Defendant's Motion should be denied.

                              THE PLAINTIFF,
                              ALTAGRACIA J. PEGUERO,
                              By her Attorney,


                              /s/ Kevin Donius
                              Kevin Donius, Esquire
                              Law Offices of Kevin Donius, P.C.
                              424 Adams Street, Suite 100
                              Milton, MA 02186
                              TEL (617) 296-4900
                              FAX (617) 296-4990
                              BBO#: 551298

Dated:  March 27, 2007

**EXHIBIT A**

**Full docket text:**
ElectronicClerk's Notes for proceedings held before Judge Reginald C. Lindsay : Case Management Conference held on 6/26/2006. Fact discovery due by 11/3/06. Plaintiff's expert disclosure due by 10/6/06. Defendants' expert disclosure due by 11/3/06. Supplemental expert reports due by 1/16/07. Discovery to be completed by 12/29/2006. Motions due by 1/31/2007. (Court Reporter None Present.) (Hourihan, Lisa)

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 03/22/2007 13:05:39 | | | |
| PACER Login: | kd1090 | Client Code: | |
| Description: | History/Documents | Search Criteria: | 1:05-cv-10995-RCL |
| Billable Pages: | 1 | Cost: | 0.08 |

**EXHIBIT B**

**Full docket text:**
Judge Reginald C. Lindsay : Electronic ORDER entered granting [79] Motion to Extend Discovery Deadlines. Factual discovery to be completed 75 days after the final disposition of the rulings of the Defendants' Motions for Protective Orders and further extending all subsequent scheduled deadlines by the same number of days as the discovery deadline. (Hourihan, Lisa)

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 03/22/2007 12:56:44 | | | |
| **PACER Login:** | kd1090 | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 1:05-cv-10995-RCL |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

EXHIBIT C

**Full docket text:**
Judge Reginald C. Lindsay : Electronic ORDER entered granting [88] Motion for Extension of Time to Complete Discovery Discovery to be completed by 4/12/2007. (York, Steve)

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/22/2007 12:58:15 | | | |
| **PACER Login:** | kd1090 | **Client Code:** | |
| **Description:** | History/Documents | **Search Criteria:** | 1:05-cv-10995-RCL |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |